# EXHIBIT  1

1  UNITED STATES BANKRUPTCY COURT

2  DISTRICT OF SOUTH CAROLINA

3  Case No. 24-02019-EG

4  - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  FAMULUS HEALTH, LLC,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  King and Queen Building

13                  145 King Street, Room 225

14                  Charleston, SC 29401

15

16                  August 20, 2024

17                  2:05 PM

18

19

20

21  B E F O R E :

22  HON ELISABETTA GASPARINI

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

1 HEARING re Continued Motion to Dismiss Case Filed by Michael
2 Conrady on behalf of Famulus Health, LLC. (07/01/2024) (Doc.
3 73)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 Transcribed by: Sonya Ledanski Hyde

1 A P P E A R A N C E S :
2
3 CAMPBELL LAW FIRM, PA
4     Attorneys for Debtor
5     PO Box 684
6     Mount Pleasant, SC 29465
7
8 BY: KEVIN CAMPBELL (TELEPHONICALLY)
9
10 WEIL GOTSHAL & MANGES LLP
11     Attorneys for GoodRx
12     767 Fifth Avenue
13     New York, NY 10153
14
15 BY: DAVID COHEN (TELEPHONICALLY)
16     DAVID LENDER (TELEPHONICALLY)
17
18 ROGERS TOWNSEND, LLC
19     Attorneys for GoodRx
20     1221 Main Street
21     Columbia, SC 29201
22
23 BY: MICHAEL WEAVER (TELEPHONICALLY)
24
25

1 UNITED STATES DEPARTMENT OF JUSTICE
2     Attorneys for The United States Trustee
3     Strom Thurmond Federal Building
4     1835 Assembly Street
5     Columbia, SC 29201
6
7 BY: KEITH POSTON (TELEPHONICALLY)
8
9 FOX ROTHSCHILD LLP
10     Attorneys for Prime Therapeutics, LLC
11     33 S. Sixth Street, Suite 3600
12     Minneapolis, MN 55402
13
14 BY: ELLIE J. BARRAGRY (TELEPHONICALLY)
15
16 FOX ROTHSCHILD LLP
17     Attorneys for Prime Therapeutics, LLC
18     2 W. Washington Street, Suite 1100
19     Greenville, SC 29601
20
21 BY: M. KEVIN McCARRELL (TELEPHONICALLY)
22
23 ALSO PRESENT TELEPHONICALLY:
24 MICHAEL SZWAJKOS, Debtor's Representative
25

1         P R O C E E D I N G S
2         CLERK: All, rise. The United States Bankruptcy
3 Court for the District of South Carolina is now in session.
4 The Honorable Elisabetta G.M. Gasparini presiding.
5         THE COURT: Good afternoon. We're here this
6 afternoon on the case of Famulus Health, LLC. It's a
7 Chapter 11 case and it is Case Number 24-02019, and it's a
8 Motion to Dismiss the case. The Court held an evidentiary
9 hearing on August 16th, which was Friday, and the Court is
10 ready to rule on the matter orally on the docket -- on the -
11 - at today's hearing.
12         I know that the courtroom deputy had asked for
13 appearances. I'm going to read the names of who, we
14 believe, is on. And if there's anyone I don't call, please
15 state your name. Kevin Campbell for Debtor, Mr. Szwajkos
16 for the Debtor's representative, Mr. David Lender, Mr. David
17 Cohen and Mr. Michael Weaver for GoodRx. Also, Kevin
18 McCarrell and Ellie Barragry. I believe they're with Prime.
19 Keith Poston from the United States Trustee's Office. First
20 of all, can anyone not hear me okay? All right. I assume
21 everybody can hear, and anyone whose name I have not called
22 who is on the line? All right.
23         The Court is now ready to read into the record the
24 ruling. This matter is before the Court on the Motion to
25 Dismiss the case filed by the Debtor, Famulus Health, LLC,

1 on July 1, 2024. GoodRx, Inc. filed a Response to the
2 Motion and a Motion to Convert the case on July 22, 2024.
3 Letters in support of a dismissal have been filed by
4 Unsecured Creditors, CloudHesive and Michelle Frank. The
5 Court notes that Ms. Frank is an insider and thus has given
6 the correspondence the appropriate weight. Prime
7 Therapeutics, LLC, which the Court will refer herein as
8 "Prime", filed a Response in support of a Motion to Dismiss
9 the case on August 2, 2024. The Debtor filed a Reply to
10 GoodRx's Response on August 5th and the parties filed a
11 Joint Statement of Dispute on August 12, 2024. The Court
12 then, as I stated earlier, held a hearing on the Motion to
13 Dismiss the case on August 16th, during which the Debtor
14 presented the testimony of its manager, Mr. Michael
15 Szwajkos, and the parties presented the following exhibits
16 into the record: GoodRx Exhibits 1, 5, 6 7, and 8 and
17 Debtor's Exhibit A.
18        The Court makes the following findings of fact and
19 conclusions of law: the record reflects that Debtor is a
20 healthcare technology services company founded in 2020 under
21 the laws of South Carolina. It was created to build and
22 code custom solutions or technology applications for health
23 plans, pharmacy benefits, managers and employer groups to
24 lower drug prices for their members in the United States.
25 Debtor offers its members organizations to technologies,

1 Echo and Fast. The Echo technology platform provides data
2 and analytics to member organizations while the Fast
3 technology is a cloud-based pharmacy switch application that
4 provides real-time pharmacy benefit processing.
5        In or around June 2020, Debtor and GoodRx entered
6 into a Services Agreement effective as of July 1, 2020. It
7 has been alleged in prior pleadings filed with this Court
8 that pursuant to the Services Agreement, in exchange for
9 GoodRx's disclosure of certain confidential information, the
10 Debtor agreed to exclusively distribute GoodRx's integrated
11 Cash Solution technology to pharmacy benefits managers. In
12 return, GoodRx disclosed confidential information to Debtor.
13 The Services Agreement included certain confidentiality and
14 exclusivity provisions. Shortly after the parties entered
15 into the Services Agreement, GoodRx has asserted that Debtor
16 began to breach the agreements, confidentiality and
17 exclusivity provision by misusing GoodRx's confidential
18 information to implement a competing integrated cash
19 solution, the Fast technology, to compete against GoodRx,
20 which had then proceeded to offer and eventually sold to
21 Prime -- and eventually sell to Prime Therapeutics, LLC.
22 GoodRx filed a demand for Arbitration on February 10, 2023,
23 seeking, among other things, excuse me, February 10, 2024 --
24 no, excuse me, 2023, seeking, among other things, to enjoin
25 Debtor from violating the exclusivity obligations under the

1 Agreement and the parties engaged in arbitration of their
2 dispute. The final arbitration hearing was conducted, in
3 person, from November 27th through December 1st, 2023.
4        On February 15, 2024, the arbitrator issued the
5 arbitration award finding that Debtor breached his
6 confidentiality and exclusivity obligations owed to GoodRx
7 under the Services Agreement, granted GoodRx expectation
8 damages of close to $56 million, as well as a permanent
9 injunction enjoining Debtor from designing, developing,
10 manufacturing, marketing, selling or licensing any
11 technology or services similar or identical to what is
12 referred in the Injunction Order as the "Solution".
13 According to the terms of the arbitration award, the
14 injunction was to take effect immediately and remain in
15 effect unless there is further action by the arbitrator or a
16 court of competent jurisdiction.
17        On February 21, 2024, the Debtor moved to vacate
18 their arbitration award in District Court, commencing Case
19 Number 24-CV-00886. The next day, on February 22, 2024,
20 GoodRx filed a Petition to Confirm the arbitration award in
21 the District Court, commencing Case Number 24-MC-00126.
22 GoodRx subsequently moved to consolidate the two actions,
23 and the District Court entered an order on April 12, 2024,
24 consolidating them. Extensive motion practice ensued
25 afterwards. The District Court consolidated all the motions

1 filed by the parties and heard argument on April 30, 2024.
2 Soon after GoodRx's Motion to Confirm the arbitration award,
3 the Debtor's Motion to Vacate it, were fully briefed, excuse
4 me, soon after GoodRx's Motion to Confirm the arbitration
5 award and Debtor's Motion to Vacate it were fully briefed
6 and heard by the District Court and taken under advisement.
7        The Debtor filed this bankruptcy case on June 3rd.
8 GoodRx filed a Motion for Relief from Stay on June 10, 2024,
9 and Debtor objected to the Motion. At that point, Debtor
10 determined it would be better to let the District Court
11 affirm or vacate the arbitration award and deal with the
12 consequences outside of bankruptcy. Accordingly, prior to
13 the hearing on the Stay Relief Motion, Debtor filed the
14 current motion on July 1, 2024, seeking to dismiss this
15 case. The Court entered an Order on July 2, 2024, modifying
16 the Automatic Stay to allow the District Court to adjudicate
17 the parties' Motions to Confirm, Vacate or Modify the
18 arbitration award. The District Court reopened its case by
19 Order entered on July 26, 2024, but has taken no further
20 action as of this date.
21        At the hearing on this Motion to Dismiss this
22 case, Debtor presented the testimony of Mr. Szwajkos in
23 support of the dismissal of the case, as opposed to
24 conversion. According to Mr. Szwajkos, in February of 2024,
25 Debtor's business was significantly affected by a data

1 breach at United Healthcare. Mr. Szwajkos testified that
2 the data breach required them to shut down operations for a
3 couple of months. In the months following this brief shut
4 down and the entry of the arbitration award, Debtor has
5 operated its business as usual, as directed by its counsel,
6 and has continued to use both the Echo and Fast technologies
7 and offer those technologies to new customers. Mr. Szwajkos
8 testified the bankruptcy case was filed for two purposes,
9 (1) to address debts resulting from the shutdown, and (2) to
10 attempt to reach a resolution with GoodRx regarding the
11 arbitration award through a Chapter 11 reorganization.
12      After the filings of the Stay Relief Motion, Mr.
13 Szwajkos stated that it became apparent that GoodRx was not
14 willing to work out a resolution in the bankruptcy case and
15 would not agree to a plan of reorganization. Mr. Szwajkos
16 further explained that Debtor's income is derived from two
17 primary business contracts, the first with Prime,
18 representing approximately 65 percent of its business, and
19 the second with CVS, representing approximately 35 percent
20 of its business. He further testified that the business
21 with CVS launched in December of 2023 and is growing
22 rapidly. CVS is playing a pivotal role in Debtor's going
23 forward strategy. He further stated that the CVS technology
24 is unrelated to the Fast technology used by Prime.
25 According to Mr. Szwajkos, even without the Prime contract,

1 Debtor is still a healthy and successful technology company
2 moving forward with its CVS contract.
3      If the case were dismissed, Mr. Szwajkos testified
4 that Debtor has sufficient funds in its operating account
5 and from operational income using both technologies to pay
6 all its creditors except the contingent debt of GoodRx in
7 full, outside of bankruptcy within 90 days, or at least by
8 the end of the year. GoodRx's claim currently remains
9 contingent and will not become liquidated until the District
10 Court affirms the arbitration award. It is not entirely
11 clear to the Court whether there is a further appellate
12 process the Debtor would be entitled to if the District
13 Court were to affirm the arbitration award. Regardless, if
14 the case was converted to a Chapter 7, Mr. Szwajkos stated
15 that Debtor would be required to shut down all operations
16 which would lead to the termination of even the revenue
17 generating CVS contract. Mr. Szwajkos believes that there
18 would be no value to Debtor's technology if the case was
19 converted, and further, that consumers would be adversely
20 affected. No other entity could step in and operate that
21 technology, as he testified. In addition, there would be a
22 security risk for patient healthcare information currently
23 under Debtor's control and the Chapter 7 Trustee would have
24 to take measures to protect that information.
25      Debtor seeks voluntary dismissal of its case

1 pursuant to Section 1112 of the Bankruptcy Code on the
2 grounds that it will not be able to formulate a confirmable
3 plan. Debtor argues that continuing with the Chapter 11
4 process is not in its best interests or in the best
5 interests of the Creditors. Debtor believes that dismissing
6 the case and allowing it to resume business operations as
7 the existed pre-petition is the best interest of the estate
8 and all its creditors. Two of Debtor's Unsecured Creditors,
9 as I stated, have indicated their support for dismissal and
10 its customer, Prime, also filed a response in support of
11 dismissal.
12      GoodRx opposes dismissal and argues in favor of
13 converting the case to Chapter 7. GoodRx argues that the
14 Court should continue the preference of creditors,
15 especially its preference, excuse me, given that it is the
16 largest creditor in the case. GoodRx contends that this
17 case was filed for the sole purpose of frustrating the
18 efforts of the District Court to confirm the arbitration
19 award so that Debtor could continue to use its confidential
20 information. It asserts that Debtor has engaged and
21 continues to engage in knowing misconduct. By continuing to
22 operate using its confidential information, GoodRx argues
23 that Debtor continues to violate the injunction and incur
24 post-petition damages. Thus, GoodRx posits that conversion
25 is appropriate because (1) Debtor is deeply insolvent and

1 has no going concern operations, no assets and material
2 value and no prospect of financial rehabilitation, (2)
3 Debtor's only material income stream is derived exclusively
4 from misusing GoodRx's confidential information, and (3)
5 this case needs a trustee to pursue a state claims and
6 causes of action and distribute any remaining cash and
7 proceeds to creditor, including possible avoidable transfers
8 of approximately $2 million made within the preference
9 periods. It further argues that conversion is appropriate
10 to ensure that the Debtor isn't able to sidestep the
11 absolute priority rule by distributing preferential payments
12 to a select group of preferred creditors outside of Chapter
13 11. GoodRx claims it would be prejudiced by dismissal of
14 the case because no independent body would be monitoring
15 Debtor's activities and Debtor would likely continue to
16 violate the injunction and incur more claims against it.
17      Finally, it argues that conversion will maximize
18 recoveries for creditors by allowing the Chapter 7 Trustee
19 to liquidate the assets and make distributions to creditors
20 in an efficient manner. In its reply, Debtor states that it
21 has two main sources of income used to fund its operation,
22 Prime and CVS. Debtor asserts that it would be able to
23 continue to operate with just the proceeds from its contract
24 with CVS, even if the injunction was confirmed and would be
25 able to pay its creditors, in full, from current operations

1 solely under the -- from current operations. Debtor asserts
2 that conversion would cause its business operations to
3 immediately cease, which would negatively affect hundreds of
4 thousands of consumers for a cutoff from its services. It
5 also notes that there would be significant security risks to
6 a Chapter 7 Trustee if the Trustee was responsible for
7 securing substantial sensitive information relating to
8 consumer's healthcare information and the Trustee would
9 likely be ill equipped to incur the expense to secure this
10 data and unwilling to accept possibly this responsibility.
11 Finally, Debtor argues that the conversion of the case to a
12 Chapter 7 would have the effect of affirming the arbiter's
13 initial decision and would impose a restraining order on its
14 use of the Prime technology and cause Debtor to have to
15 cease all operations. Debtor believes that continuing its
16 business is in the best interests of the estate and its
17 creditors. Prime also requests that the Court dismiss the
18 case rather than convert and the United States Trustee did
19 not file an objection or response to the motion.
20     As to the conclusions of law, the Debtor has
21 conceded they would not be able to formulate a confirmable
22 plan and is unable to reorganize in a Chapter 11. The
23 parties agree that this case should not continue in Chapter
24 11 and should either be dismissed or converted. The issue
25 is whether dismissal or conversion is in the best interests

1 of the creditors in the estate and this decision falls
2 within the sound discretion of the Court. See Loop Corp.
3 vs. U.S. Trustee, 379 F.3d 511 (8th Circuit 2004).
4 Conversion or dismissal of a Chapter 11 case is governed by
5 Section 1112, which provides that, except as provided in
6 Paragraph 2 in Subsection C, on request of a party in
7 interest and after notice and a hearing, the Court shall
8 convert a case under this Chapter to a case under Chapter 7
9 or dismiss the case under this Chapter, whichever is in the
10 best interests of creditors and the estate for cause unless
11 the Court determines that the appointment under Section
12 1104(a) of a trustee or an examiner is in the best interests
13 of creditors and the estate. The Court turns to the
14 determination of which remedy, dismissal or conversion, is
15 in the best interests of the creditors and the estate.
16     The parties disagree as to whether conversion or
17 dismissal is best. The only party seeking conversion is
18 GoodRx, while some creditors have joined Debtor to indicate
19 their support for dismissal. However, as the Fourth Circuit
20 found in Rolex Corp. vs. Associated Materials, In Re
21 Superior Siding and Windows, 14 F.3d, 240, which is once
22 again, a Fourth Circuit 1994 case, majority rule is not the
23 test. The Fourth Circuit has stated its belief that the
24 policy of equality among creditors fundamental to the
25 bankruptcy law is one of the factors to be considered in

1 determining the best interests of the creditors under
2 1112(b) and it is not served by merely tallying the votes of
3 the unsecured creditors and yielding to the majority
4 interest.
5     As the Fourth Circuit noted in Superior Siding,
6 where the parties agree on a course of action, the Court
7 should accommodate their desire. However, where the parties
8 disagree, the Court must consider the interests of all
9 creditors, and choose the alternative that is most
10 beneficial to the parties and the estate as a whole. To do
11 so, the Fourth Circuit has instructed that, among other
12 considerations, the Court must assert the impact on the
13 creditors and the estate of each of the options by comparing
14 the creditors' interest in bankruptcy with those that would
15 have under state law. And I'm citing to Superior Siding at
16 Page 243. The Bankruptcy Code does not provide factors for
17 the Court to consider when making this determination, but
18 Colliers has set forth ten factors that may be considered to
19 fashion an appropriate remedy, and those factors have been
20 adopted by courts such as Lakefront Investors, LLC vs.
21 Clarkson, 484 B.R. 72, District of Maryland (2012), In Re
22 Helmers, 361 B.R. 190, Bankruptcy District of Kansas (2007),
23 and In Re Pettengill Enterprises (2013), Westlaw 5350789,
24 which is a Bankruptcy District of New Mexico case from 2013.
25 And these factors are, (1) whether some creditors receive

1 preferential payments and whether equality of distribution
2 would be better served by conversion rather than dismissal,
3 (2) whether there would be a loss of rights granted in the
4 case if it were dismissed rather than converted, (3) whether
5 the debtor would simply file a further case upon dismissal,
6 (4) the ability of the trustee in a Chapter 7 case to reach
7 assets for the benefit of the creditors, (5) in assessing
8 the interest of the estate, whether conversion or dismissal,
9 would maximize the estate's values and economic enterprise,
10 (6) whether any remaining issues would be better resolved
11 outside the bankruptcy forum, (7) whether the estate
12 consists of a single asset, (8) whether the debtor had
13 engaged in misconduct and whether creditors are in need of a
14 Chapter 7 case to protect their interests, (9) whether a
15 plan had been confirmed and whether any property remains in
16 the estate to be administered and (10) whether the
17 appointment of a trustee is desirable to supervise the
18 estate and address possible environmental and safety
19 concerns.
20     The Court has taken each factor, to the extent
21 applicable to the facts of this case, into consideration.
22 The first factor states whether some creditors receive
23 preferential payments and whether equality of distribution
24 would be better served by conversion rather than dismissal.
25 As stated in the schedules filed by the Debtor, there is

5 (Pages 14 - 17)

1 evidence that some creditors in this case receive
2 preferential payments. If the case was converted, the
3 Chapter 7 Trustee could pursue those preferential transfers
4 and proceed -- excuse me, and proceeds from any of these
5 actions to the extent they prove successful, would be
6 distributed pro rata, with GoodRx as the largest Unsecured
7 Creditor, receiving the highest percentage of the amounts
8 recovered. According to Debtor's Statement of Financial
9 Affairs, there were transfers of approximately $2 million
10 made within the preference periods that could potentially be
11 avoided. However, the Court notes that some of those
12 transfers, $693,236.00 to be exact, according to the
13 Statement of Financial Affairs, were made to CloudHesive
14 within the 90 days prior to the bankruptcy case.
15 CloudHesive is a creditor listed on Debtor's Schedule F, and
16 therefore, any recovery against it in this case may be
17 subject to claims for setoff.
18      Moreover, as the Court decided in the In Re Ashley
19 Oaks Development Corp. case at 558 B.R. 280, Bankruptcy
20 District of South Carolina (2011), the costs associated with
21 pursuing preference actions and collectability must also be
22 considered. The Chapter 7 Trustee wouldn't necessarily
23 incur administrative expenses to pursue this action, which
24 would, in itself, decrease the funds available for
25 distribution for creditors. The downside, however, is that

1 upon conversion, Debtor would be required to cease
2 operations, and it is unlikely that a Chapter 7 Trustee
3 would opt to seek relief to continue operations for a short
4 period of time while liquidating. Such cessation of
5 operations would benefit GoodRx because Debtor would no
6 longer be using the disputed technology, and the Chapter 7
7 Trustee would proceed to liquidate Debtor's assets.
8 However, upon conversion, there may be additional claims
9 arising from the cessations of Debtor's business operations,
10 including potential breach of contract claims by Prime and
11 other executory contract holders.
12      Moreover, at this juncture, the Court does not
13 know how the District Court will rule. While acknowledging
14 that the bar to vacate or modify an arbitration award is one
15 of the highest hurdles to surpass, the Court cautiously
16 notes that to convert the case would be tantamount to
17 shutting down the entire company and the evidence indicates
18 that all technology software assets would, in essence,
19 become worthless. The testimony indicated that there would
20 not even be a market for the technology use for the CVS
21 contract, which does not appear to be in violation of the
22 arbitrator's injunction if the case were to cease its
23 operations because no other entity, but the Debtor could
24 step in and operate that technology.
25      If the case were dismissed, on the other hand,

1 Debtor asserts that all creditors, except possibly GoodRx,
2 would be paid in full through ongoing operations. The
3 testimony showed that Debtor has funds available from its
4 operation to pay the remaining creditors other than GoodRx.
5 Nevertheless, GoodRx would still have options available to
6 pursue repayment of its claim once determined by the
7 District Court. GoodRx could pursue repayment outside of
8 bankruptcy through the normal mechanisms available to
9 judgment lien creditors. GoodRx and Debtor could reach an
10 agreement regarding the repayment plan from the ongoing
11 revenue stream from the technology now subject to a possible
12 injunction -- or excuse me, to the injunction that is to be
13 affirmed or vacated. While dismissal would appear to not be
14 as beneficial to GoodRx as conversion would be, it is
15 important to note that GoodRx's claim, as stated, remains
16 contingent at this time and all other creditors would
17 clearly benefit from the dismissal. Accordingly, this
18 factor weighs in favor of dismissal.
19      The second factor is whether there would be a loss
20 of rights granted in the case if it were dismissed rather
21 than converted. If the case was dismissed, no independent
22 body would be regularly monitoring Debtor's activities and
23 Debtor would continue to, possibly, violate the injunction
24 currently in place through its operation until the District
25 Court confirms the arbitration award, unless the arbitration

1 award were vacated. GoodRx would have to pursue further
2 litigation to enforce its injunction, and it is unclear how
3 or when GoodRx would receive any recovery. Nevertheless,
4 GoodRx's rights under the arbitration award would be
5 preserved unless the District Court vacated the arbitration
6 award. If the District Court were to modify or vacate the
7 arbitration award, then Debtor's business would continue as
8 usual. If the District Court were, on the other hand,
9 affirm the arbitration award, GoodRx would have options
10 available to it, under state law, to pursue recovery of any
11 final judgment determined by the District Court, federal or
12 state law, I should add, including seeking emergency relief
13 to ensure that the injunction is complied with or possibly
14 even the appointment of a receiver or an independent party
15 or may even seek to put the Debtor into an involuntary
16 Chapter 7 case if the light hurdles were met.
17      If the Court dismisses a case and the District
18 Court subsequently affirms the arbitration, then GoodRx's
19 claim for damages would have continued to increase as post-
20 petition damages would have accrued and that claim could
21 possibly dwarf any remaining creditors' claims. However,
22 Debtor would have the benefit of its continued revenue
23 stream from the technology which does not appear to be in
24 violation of the injunction, including the CVS contract
25 which would ultimately be used to pay creditors and benefit

6 (Pages 18 - 21)

1 all parties. But even if the whole entity would eventually
2 have to be shut down, GoodRx could still pursue its remedies
3 in state court or federal court. If the case was converted
4 and Debtor required to cease operations, that would
5 effectively ratify the arbitration award and injunction
6 granted therein, and in essence, remove that decision, at
7 least as it applies to the injunction portion of the
8 arbitration award from the District Court to this court.
9 Debtor would lose its opportunity to pursue an order
10 vacating the arbitration award because the conversion would
11 cause Debtor's operation to cease and cause, among other
12 things, the termination of the CVS contract prior to any
13 decision by the District Court is reached. The Court is now
14 ready to do so, as they must consider the interests of all
15 the creditors. As previously mentioned, to rule in favor of
16 conversion now would be a gamble on what the District Court
17 would do and would completely wreck the enterprise to the
18 detriment of creditors and the estate as a whole.
19       The third factor is whether the Debtor would
20 simply file a further case upon dismissal. It appears
21 unlikely that Debtor would file a further case upon
22 dismissal since Debtor admits that it could not propose a
23 confirmable plan and oppose this conversion to a Chapter 7.
24 The fourth factor is the ability of the Trustee in a Chapter
25 7 case to reach assets for the benefit of the creditors. As

1 an initial matter, the Court notes the Debtor's Schedule
2 inaccurately states that it has $3,679,312.86 in assets.
3 According to the Court's calculations, the total of Debtor's
4 assets is $2,672,218.86 -- excuse me, let me try that again,
5 $2,672,218.86, and it appears there is non-exempt equity in
6 these assets which could be sold for the benefit of
7 creditors. Debtor's total liabilities are $62,013,508.03,
8 according to the schedules, with its largest unsecured
9 Creditor being GoodRx, holding a contingent debt of
10 approximately $56 million. According to Debtor's Statement
11 of Financial Affairs, as indicated earlier, there are
12 avoidable transfers of approximately $2 million made within
13 preference periods to insiders. However, the Court notes
14 that some of these transfers were made to CloudHesive within
15 90 days prior to the bankruptcy case and the creditor --
16 which is a creditor in this case, and therefore, may be
17 subject to set off.
18       Most likely, the preference recovery would be the
19 only assets of any possible value if the case were
20 converted. Aside the technology software, the other assets
21 listed in Debtor's schedule of any value are the accounts
22 receivables outstanding as of the Petition date. But any
23 such asset may have been used or, as with any ARs (accounts
24 receivable), their collectability is not guaranteed. If the
25 case is converted and the operation ceased, there would be a

1 lot more rejection damages and claims. The Court, in fact,
2 notes that in Schedule G, there are 33 contracts with
3 various entities, and such would diminish recovery for
4 GoodRx's claim to the extent it eventually becomes
5 liquidated.
6       It further appears that the software would be
7 completely valueless if the case were converted due to the
8 pending injunction litigation which would make it unlikely
9 that a purchaser would want to buy these assets when they're
10 subject to the arbitration award or there is no-one willing
11 to explain how the technology operates or how to maintain
12 it. Therefore, this factor also favors dismissal. In
13 assessing -- the fifth factor is then, in assessing the
14 interest of the estate, whether conversion or dismissal
15 would maximize the estate's value as an economic enterprise.
16 Debtor contends the dismissal would maximize the estate's
17 value because it could pay off its other creditors through
18 continued operations and it could continue to grow its
19 business. The testimony demonstrated that Debtor had funds
20 on hand to pay all creditors except GoodRx and
21 continue to earn income through other business with CVS that
22 is not impacted by the injunction.
23       To reiterate what has already been concluded, if
24 the case is dismissed and the District Court affirms the
25 arbitration award, it is not entirely clear how GoodRx would

1 be paid. But there are avenues of recovery available to it
2 under non-bankruptcy law, and potentially under the
3 Bankruptcy Code if creditors wish to later file an
4 involuntary proceeding. GoodRx asserts that Chapter 7 would
5 allow an independent third-party to investigate potential
6 estate claims and causes of action to maximize value for
7 creditors. However, the evidence indicates that the
8 potential recovery for the remaining creditors in this case
9 would be minimal in a Chapter 7 as GoodRx would receive the
10 largest percentage of any recovery and there would be
11 administrative costs associated with such recovery.
12       The sixth factor is whether any remaining issues
13 would be better resolved outside the bankruptcy forum. This
14 case is essentially a two-party dispute between Debtor and
15 GoodRx. The Court has already granted relief from stay to
16 allow the District Court to resolve the issues between
17 GoodRx and Debtor relating to the arbitration award. In
18 granting such relief, the Court has necessarily concluded
19 that the issues between these parties would be better
20 resolved in the District Court. The eighth factor is
21 whether the Debtor had engaged in misconduct and whether
22 creditors are in need of Chapter 7 case to protect their
23 interests. While the evidence indicates that other
24 creditors, aside GoodRx, would benefit from payment through
25 Debtor's continued operations if the case were dismissed, it

7 (Pages 22 - 25)

1 appears that GoodRx's interests would be better protected in
2 a Chapter 7 case, especially if the District Court
3 ultimately confirmed the arbitration award. Conversion to a
4 Chapter 7 would ensure Debtor is unable to sidestep absolute
5 priority rule by distributing preferential payments to a
6 select group of preferred creditors outside Chapter 11.
7　　　　However, as the Court has noted, at this time, the
8 issue whether the arbitration award is to be affirmed,
9 vacated or modified, is in front of the District Court, and
10 to convert the case would, in essence, lead to unnecessarily
11 ceasing all operations of the Debtor, even ones that may not
12 even be implicated by future approval of the arbitration
13 award. The rest of the factors that were outlined earlier
14 appear inapplicable in this case. At the hearing GoodRx
15 suggested for the first time that the appointment of a
16 Chapter 11 Trustee may be appropriate as an alternative to
17 converting the case. The Court notes that such an argument
18 was not included as one of the issues to be decided in the
19 joint statement of Dispute. Regardless, the Court notes
20 that Section 1112(b)(1) itself indicates that the case
21 should be dismissed or converted if cause exists, and I'm
22 quoting, "Unless the Court determines that the appointment
23 of a Chapter 11 Trustee or an examiner is in the best
24 interest of creditors." The Court, however, does not find
25 that such an appointment would be in anyone's interest.

1 Appointing a Chapter 11 Trustee would add another layer of
2 administrative costs at this time and all parties
3 acknowledge that there could not be a confirmable Chapter 11
4 plan without GoodRx's agreement, which currently does not
5 exist.
6　　　　Under the circumstances, the Court finds there
7 would be no benefit to the estate to appoint a Chapter 11
8 Trustee in this case and it would only result in additional
9 expenses. Taking into consideration the evidence admitted
10 into the record, the testimony of Mr. Szwajkos, the
11 pleadings filed in the case and the arguments of the parties
12 at the hearing, and applying the factors adopted by the
13 courts in this district and determining whether a case
14 should be dismissed rather than converted, to the
15 circumstances in this case, the Court finds that the weight
16 of the evidence supports a finding that the interest of all
17 creditors in the estate would be better served by dismissal
18 of the Chapter 11 proceeding rather than by converting it to
19 a Chapter 7. Dismissing the case would put the parties back
20 in the position they would have been prior to this
21 bankruptcy being filed and creditors would be left with the
22 recourse they would have had or have under non-bankruptcy
23 law. But at least the revenue stream that is not subject to
24 the current injunction imposed by the arbitration award
25 would not be cut off and lost.

1　　　　Therefore, it is ordered that this case is hereby
2 dismissed. The Court will enter a short order this
3 afternoon just indicating that, based on the ruling and the
4 findings of fact and conclusions of law, the case will be
5 dismissed. With nothing further for this afternoon, and the
6 ruling having been delivered, the Court is in recess until
7 the next session. Thank you.
8　　　　CLERK: All, rise.
9　　　　(Whereupon these proceedings were concluded at
10 2:39 PM)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1　　　　　　　　　I N D E X
2
3　　　　　　　　　RULINGS
4　　　　　　　　　　　　　Page　　Line
5　Case dismissed　　　　　　　28　　　1
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
1              CERTIFICATION
2
3      I, Sonya Ledanski Hyde, certified that the foregoing
4  transcript is a true and accurate record of the proceedings.
5
6  Sonya L. Ledanski Hyde
7
8  Sonya Ledanski Hyde
9
10
11
12
13
14
15
16
17
18
19
20  Veritext Legal Solutions
21  330 Old Country Road
22  Suite 300
23  Mineola, NY 11501
24
25  Date:  August 26, 2024
```

| & | | |
|---|---|---|
| **&** 3:10 | | |

**0**

**00126** 8:21
**00886** 8:19
**07/01/2024** 2:2

**1**

**1** 6:1,16 7:6
9:14 10:9
12:25 16:25
26:20 29:5
**10** 7:22,23 9:8
17:16
**10153** 3:13
**11** 5:7 10:11
12:3 13:13
14:22,24 15:4
26:6,16,23
27:1,3,7,18
**1100** 4:18
**1104** 15:12
**1112** 12:1 15:5
16:2 26:20
**11501** 30:23
**12** 6:11 8:23
**12151** 30:6
**1221** 3:20
**14** 15:21
**145** 1:13
**15** 8:4
**16th** 5:9 6:13
**1835** 4:4
**190** 16:22
**1994** 15:22
**1st** 8:3

**2**

**2** 4:18 6:9 9:15
10:9 13:2,8
15:6 17:3 18:9
23:12
**2,672,218.86**
23:4,5
**20** 1:16
**2004** 15:3
**2007** 16:22
**2011** 18:20
**2012** 16:21
**2013** 16:23,24
**2020** 6:20 7:5,6
**2023** 7:22,24
8:3 10:21
**2024** 1:16 6:1,2
6:9,11 7:23 8:4
8:17,19,23 9:1
9:8,14,15,19
9:24 30:25
**21** 8:17
**22** 6:2 8:19
**225** 1:13
**24** 8:19,21
**24-02019** 1:3
5:7
**240** 15:21
**243** 16:16
**26** 9:19 30:25
**27th** 8:3
**28** 29:5
**280** 18:19
**29201** 3:21 4:5
**29401** 1:14
**29465** 3:6

**29601** 4:19
**2:05** 1:17
**2:39** 28:10

**3**

**3** 13:4 17:4
**3,679,312.86**
23:2
**30** 9:1
**300** 30:22
**33** 4:11 24:2
**330** 30:21
**35** 10:19
**3600** 4:11
**361** 16:22
**379** 15:3
**3rd** 9:7

**4**

**4** 17:6
**484** 16:21

**5**

**5** 6:16 17:7
**511** 15:3
**5350789** 16:23
**55402** 4:12
**558** 18:19
**56** 8:8 23:10
**5th** 6:10

**6**

**6** 6:16 17:10
**62,013,508.03**
23:7
**65** 10:18
**684** 3:5
**693,236.00**
18:12

**7**

**7** 6:16 11:14,23
12:13 13:18
14:6,12 15:8
17:6,11,14
18:3,22 19:2,6
21:16 22:23,25
25:4,9,22 26:2
26:4 27:19
**72** 16:21
**73** 2:3
**767** 3:12

**8**

**8** 6:16 17:12
**8th** 15:3

**9**

**9** 17:14
**90** 11:7 18:14
23:15

**a**

**ability** 17:6
22:24
**able** 12:2 13:10
13:22,25 14:21
**absolute** 13:11
26:4
**accept** 14:10
**accommodate**
16:7
**account** 11:4
**accounts** 23:21
23:23
**accrued** 21:20
**accurate** 30:4
**acknowledge**
27:3

acknowledgi... 19:13
action 8:15 9:20 13:6 16:6 18:23 25:6
actions 8:22 18:5,21
activities 13:15 20:22
add 21:12 27:1
addition 11:21
additional 19:8 27:8
address 10:9 17:18
adjudicate 9:16
administered 17:16
administrative 18:23 25:11 27:2
admits 22:22
admitted 27:9
adopted 16:20 27:12
adversely 11:19
advisement 9:6
affairs 18:9,13 23:11
affect 14:3
affected 9:25 11:20
affirm 9:11 11:13 21:9

affirmed 20:13 26:8
affirming 14:12
affirms 11:10 21:18 24:24
afternoon 5:5 5:6 28:3,5
agree 10:15 14:23 16:6
agreed 7:10
agreement 7:6 7:8,13,15 8:1,7 20:10 27:4
agreements 7:16
alleged 7:7
allow 9:16 25:5 25:16
allowing 12:6 13:18
alternative 16:9 26:16
amounts 18:7
analytics 7:2
anyone's 26:25
apparent 10:13
appear 19:21 20:13 21:23 26:14
appearances 5:13
appears 22:20 23:5 24:6 26:1
appellate 11:11
applicable 17:21

application 7:3
applications 6:22
applies 22:7
applying 27:12
appoint 27:7
appointing 27:1
appointment 15:11 17:17 21:14 26:15,22 26:25
appropriate 6:6 12:25 13:9 16:19 26:16
approval 26:12
approximately 10:18,19 13:8 18:9 23:10,12
april 8:23 9:1
arbiter's 14:12
arbitration 7:22 8:1,2,5,13 8:18,20 9:2,4 9:11,18 10:4 10:11 11:10,13 12:18 19:14 20:25,25 21:4 21:5,7,9,18 22:5,8,10 24:10,25 25:17 26:3,8,12 27:24
arbitrator 8:4 8:15
arbitrator's 19:22

argues 12:3,12 12:13,22 13:9 13:17 14:11
argument 9:1 26:17
arguments 27:11
arising 19:9
ars 23:23
ashley 18:18
aside 23:20 25:24
asked 5:12
assembly 4:4
assert 16:12
asserted 7:15
asserts 12:20 13:22 14:1 20:1 25:4
assessing 17:7 24:13,13
asset 17:12 23:23
assets 13:1,19 17:7 19:7,18 22:25 23:2,4,6 23:19,20 24:9
associated 15:20 18:20 25:11
assume 5:20
attempt 10:10
attorneys 3:4 3:11,19 4:2,10 4:17
august 1:16 5:9 6:9,10,11,13

30:25
**automatic** 9:16
**available** 18:24
20:3,5,8 21:10
25:1
**avenue** 3:12
**avenues** 25:1
**avoidable** 13:7
23:12
**avoided** 18:11
**award** 8:5,13
8:18,20 9:2,5
9:11,18 10:4
10:11 11:10,13
12:19 19:14
20:25 21:1,4,6
21:7,9 22:5,8
22:10 24:10,25
25:17 26:3,8
26:13 27:24

**b**

**b** 1:21 16:2
26:20
**b.r.** 16:21,22
18:19
**back** 27:19
**bankruptcy**
1:1,11,23 5:2
9:7,12 10:8,14
11:7 12:1
15:25 16:14,16
16:22,24 17:11
18:14,19 20:8
23:15 25:2,3
25:13 27:21,22
**bar** 19:14

**barragry** 4:14
5:18
**based** 7:3 28:3
**began** 7:16
**behalf** 2:2
**belief** 15:23
**believe** 5:14,18
**believes** 11:17
12:5 14:15
**beneficial**
16:10 20:14
**benefit** 7:4
17:7 19:5
20:17 21:22,25
22:25 23:6
25:24 27:7
**benefits** 6:23
7:11
**best** 12:4,4,7
14:16,25 15:10
15:12,15,17
16:1 26:23
**better** 9:10
17:2,10,24
25:13,19 26:1
27:17
**body** 13:14
20:22
**box** 3:5
**breach** 7:16
10:1,2 19:10
**breached** 8:5
**brief** 10:3
**briefed** 9:3,5
**build** 6:21
**building** 1:12
4:3

**business** 9:25
10:5,17,18,20
10:20 12:6
14:2,16 19:9
21:7 24:19,21
**buy** 24:9

**c**

**c** 3:1 5:1 15:6
30:1,1
**calculations**
23:3
**call** 5:14
**called** 5:21
**campbell** 3:3,8
5:15
**carolina** 1:2
5:3 6:21 18:20
**case** 1:3 2:1 5:6
5:7,7,8,25 6:2
6:9,13 8:18,21
9:7,15,18,22
9:23 10:8,14
11:3,14,18,25
12:6,13,16,17
13:5,14 14:11
14:18,23 15:4
15:8,8,9,22
16:24 17:4,5,6
17:14,21 18:1
18:2,14,16,19
19:16,22,25
20:20,21 21:16
21:17 22:3,20
22:21,25 23:15
23:16,19,25
24:7,24 25:8
25:14,22,25

26:2,10,14,17
26:20 27:8,11
27:13,15,19
28:1,4 29:5
**cash** 7:11,18
13:6
**cause** 14:2,14
15:10 22:11,11
26:21
**causes** 13:6
25:6
**cautiously**
19:15
**cease** 14:3,15
19:1,22 22:4
22:11
**ceased** 23:25
**ceasing** 26:11
**certain** 7:9,13
**certified** 30:3
**cessation** 19:4
**cessations** 19:9
**chapter** 5:7
10:11 11:14,23
12:3,13 13:12
13:18 14:6,12
14:22,23 15:4
15:8,8,9 17:6
17:14 18:3,22
19:2,6 21:16
22:23,24 25:4
25:9,22 26:2,4
26:6,16,23
27:1,3,7,18,19
**charleston**
1:14

choose 16:9
circuit 15:3,19
 15:22,23 16:5
 16:11
circumstances
 27:6,15
citing 16:15
claim 11:8 20:6
 20:15 21:19,20
 24:4
claims 13:5,13
 13:16 18:17
 19:8,10 21:21
 24:1 25:6
clarkson 16:21
clear 11:11
 24:25
clearly 20:17
clerk 5:2 28:8
close 8:8
cloud 7:3
cloudhesive
 6:4 18:13,15
 23:14
code 6:22 12:1
 16:16 25:3
cohen 3:15
 5:17
collectability
 18:21 23:24
colliers 16:18
columbia 3:21
 4:5
commencing
 8:18,21
company 6:20
 11:1 19:17

comparing
 16:13
compete 7:19
competent
 8:16
competing
 7:18
completely
 22:17 24:7
complied 21:13
conceded
 14:21
concern 13:1
concerns 17:19
concluded
 24:23 25:18
 28:9
conclusions
 6:19 14:20
 28:4
conducted 8:2
confidential
 7:9,12,17
 12:19,22 13:4
confidentiality
 7:13,16 8:6
confirm 8:20
 9:2,4,17 12:18
confirmable
 12:2 14:21
 22:23 27:3
confirmed
 13:24 17:15
 26:3
confirms 20:25
conrady 2:2

consequences
 9:12
consider 16:8
 16:17 22:14
consideration
 17:21 27:9
considerations
 16:12
considered
 15:25 16:18
 18:22
consists 17:12
consolidate
 8:22
consolidated
 8:25
consolidating
 8:24
consumers
 11:19 14:4
consumer's
 14:8
contends 12:16
 24:16
contingent
 11:6,9 20:16
 23:9
continue 12:14
 12:19 13:15,23
 14:23 19:3
 20:23 21:7
 24:18,21
continued 2:1
 10:6 21:19,22
 24:18 25:25
continues
 12:21,23

continuing
 12:3,21 14:15
contract 10:25
 11:2,17 13:23
 19:10,11,21
 21:24 22:12
contracts
 10:17 24:2
control 11:23
conversion
 9:24 12:24
 13:9,17 14:2
 14:11,25 15:4
 15:14,16,17
 17:2,8,24 19:1
 19:8 20:14
 22:10,16,23
 24:14 26:3
convert 6:2
 14:18 15:8
 19:16 26:10
converted
 11:14,19 14:24
 17:4 18:2
 20:21 22:3
 23:20,25 24:7
 26:21 27:14
converting
 12:13 26:17
 27:18
corp 15:2,20
 18:19
corresponde...
 6:6
costs 18:20
 25:11 27:2

| | | | |
|---|---|---|---|
| **counsel** 10:5 | 13:19,25 14:17 | **data** 7:1 9:25 | 20:22 21:7 |
| **country** 30:21 | 15:1,10,13,15 | 10:2 14:10 | 22:11 23:1,3,7 |
| **couple** 10:3 | 15:18,24 16:1 | **date** 9:20 23:22 | 23:10,21 25:25 |
| **course** 16:6 | 16:3,9,13,25 | 30:25 | **debts** 10:9 |
| **court** 1:1,11 | 17:7,13,22 | **david** 3:15,16 | **december** 8:3 |
| 5:3,5,8,9,23,24 | 18:1,25 20:1,4 | 5:16,16 | 10:21 |
| 6:5,7,11,18 7:7 | 20:9,16 21:25 | **day** 8:19 | **decided** 18:18 |
| 8:16,18,21,23 | 22:15,18,25 | **days** 11:7 | 26:18 |
| 8:25 9:6,10,15 | 23:7 24:17,20 | 18:14 23:15 | **decision** 14:13 |
| 9:16,18 11:10 | 25:3,7,8,22,24 | **deal** 9:11 | 15:1 22:6,13 |
| 11:11,13 12:14 | 26:6,24 27:17 | **debt** 11:6 23:9 | **decrease** 18:24 |
| 12:18 14:17 | 27:21 | **debtor** 1:9 3:4 | **deeply** 12:25 |
| 15:2,7,11,13 | **creditors'** | 5:15,25 6:9,13 | **delivered** 28:6 |
| 16:6,8,12,17 | 16:14 21:21 | 6:19,25 7:5,10 | **demand** 7:22 |
| 17:20 18:11,18 | **current** 9:14 | 7:12,15,25 8:5 | **demonstrated** |
| 19:12,13,15 | 13:25 14:1 | 8:9,17 9:7,9,9 | 24:19 |
| 20:7,25 21:5,6 | 27:24 | 9:13,22 10:4 | **department** |
| 21:8,11,17,18 | **currently** 11:8 | 11:1,4,12,15 | 4:1 |
| 22:3,3,8,8,13 | 11:22 20:24 | 11:25 12:3,5 | **deputy** 5:12 |
| 22:13,16 23:1 | 27:4 | 12:19,20,23,25 | **derived** 10:16 |
| 23:13 24:1,24 | **custom** 6:22 | 13:10,15,20,22 | 13:3 |
| 25:15,16,18,20 | **customer** | 14:1,11,14,15 | **designing** 8:9 |
| 26:2,7,9,17,19 | 12:10 | 14:20 15:18 | **desirable** 17:17 |
| 26:22,24 27:6 | **customers** 10:7 | 17:5,12,25 | **desire** 16:7 |
| 27:15 28:2,6 | **cut** 27:25 | 19:1,5,23 20:1 | **determination** |
| **courtroom** | **cutoff** 14:4 | 20:3,9,23 | 15:14 16:17 |
| 5:12 | **cv** 8:19 | 21:15,22 22:4 | **determined** |
| **courts** 16:20 | **cvs** 10:19,21,22 | 22:9,19,21,22 | 9:10 20:6 |
| 27:13 | 10:23 11:2,17 | 24:16,19 25:14 | 21:11 |
| **court's** 23:3 | 13:22,24 19:20 | 25:17,21 26:4 | **determines** |
| **created** 6:21 | 21:24 22:12 | 26:11 | 15:11 26:22 |
| **creditor** 12:16 | 24:21 | **debtor's** 4:24 | **determining** |
| 13:7 18:7,15 | | 5:16 6:17 9:3,5 | 16:1 27:13 |
| 23:9,15,16 | **d** | 9:25 10:16,22 | **detriment** |
| **creditors** 6:4 | **d** 5:1 29:1 | 11:18,23 12:8 | 22:18 |
| 11:6 12:5,8,8 | **damages** 8:8 | 13:3,15 18:8 | **developing** 8:9 |
| 12:14 13:12,18 | 12:24 21:19,20 | 18:15 19:7,9 | |
| | 24:1 | | |

development 18:19
diminish 24:3
directed 10:5
disagree 15:16 16:8
disclosed 7:12
disclosure 7:9
discretion 15:2
dismiss 2:1 5:8 5:25 6:8,13 9:14,21 14:17 15:9
dismissal 6:3 9:23 11:25 12:9,11,12 13:13 14:25 15:4,14,17,19 17:2,5,8,24 20:13,17,18 22:20,22 24:12 24:14,16 27:17
dismissed 11:3 14:24 17:4 19:25 20:20,21 24:24 25:25 26:21 27:14 28:2,5 29:5
dismisses 21:17
dismissing 12:5 27:19
dispute 6:11 8:2 25:14 26:19
disputed 19:6

distribute 7:10 13:6
distributed 18:6
distributing 13:11 26:5
distribution 17:1,23 18:25
distributions 13:19
district 1:2 5:3 8:18,21,23,25 9:6,10,16,18 11:9,12 12:18 16:21,22,24 18:20 19:13 20:7,24 21:5,6 21:8,11,17 22:8,13,16 24:24 25:16,20 26:2,9 27:13
doc 2:2
docket 5:10
don't 5:14
downside 18:25
drug 6:24
due 24:7
dwarf 21:21

**e**

e 1:21,21 3:1,1 5:1,1 29:1 30:1
earlier 6:12 23:11 26:13
earn 24:21
echo 7:1,1 10:6

economic 17:9 24:15
ecro 1:25
effect 8:14,15 14:12
effective 7:6
effectively 22:5
efficient 13:20
efforts 12:18
eighth 25:20
either 14:24
elisabetta 1:22 5:4
ellie 4:14 5:18
emergency 21:12
employer 6:23
enforce 21:2
engage 12:21
engaged 8:1 12:20 17:13 25:21
enjoin 7:24
enjoining 8:9
ensued 8:24
ensure 13:10 21:13 26:4
enter 28:2
entered 7:5,14 8:23 9:15,19
enterprise 17:9 22:17 24:15
enterprises 16:23
entire 19:17
entirely 11:10 24:25

entities 24:3
entitled 11:12
entity 11:20 19:23 22:1
entry 10:4
environmental 17:18
equality 15:24 17:1,23
equipped 14:9
equity 23:5
especially 12:15 26:2
essence 19:18 22:6 26:10
essentially 25:14
estate 12:7 14:16 15:1,10 15:13,15 16:10 16:13 17:8,11 17:16,18 22:18 24:14 25:6 27:7,17
estate's 17:9 24:15,16
eventually 7:20 7:21 22:1 24:4
everybody 5:21
evidence 18:1 19:17 25:7,23 27:9,16
evidentiary 5:8
exact 18:12
examiner 15:12 26:23

except 11:6
15:5 20:1
24:20
exchange 7:8
exclusively
7:10 13:3
exclusivity
7:14,17,25 8:6
excuse 7:23,24
9:3 12:15 18:4
20:12 23:4
executory
19:11
exempt 23:5
exhibit 6:17
exhibits 6:15
6:16
exist 27:5
existed 12:7
exists 26:21
expectation 8:7
expense 14:9
expenses 18:23
27:9
explain 24:11
explained
10:16
extensive 8:24
extent 17:20
18:5 24:4

**f**

f 1:21 18:15
30:1
f.3d 15:3,21
fact 6:18 24:1
28:4

factor 17:20,22
20:18,19 22:19
22:24 24:12,13
25:12,20
factors 15:25
16:16,18,19,25
26:13 27:12
facts 17:21
falls 15:1
famulus 1:7
2:2 5:6,25
fashion 16:19
fast 7:1,2,19
10:6,24
favor 12:12
20:18 22:15
favors 24:12
february 7:22
7:23 8:4,17,19
9:24
federal 4:3
21:11 22:3
fifth 3:12 24:13
file 14:19 17:5
22:20,21 25:3
filed 2:1 5:25
6:1,3,8,9,10
7:7,22 8:20 9:1
9:7,8,13 10:8
12:10,17 17:25
27:11,21
filings 10:12
final 8:2 21:11
finally 13:17
14:11
financial 13:2
18:8,13 23:11

find 26:24
finding 8:5
27:16
findings 6:18
28:4
finds 27:6,15
firm 3:3
first 5:19 10:17
17:22 26:15
following 6:15
6:18 10:3
foregoing 30:3
formulate 12:2
14:21
forth 16:18
forum 17:11
25:13
forward 10:23
11:2
found 15:20
founded 6:20
fourth 15:19
15:22,23 16:5
16:11 22:24
fox 4:9,16
frank 6:4,5
friday 5:9
front 26:9
frustrating
12:17
full 11:7 13:25
20:2
fully 9:3,5
fund 13:21
fundamental
15:24

funds 11:4
18:24 20:3
24:19
further 8:15
9:19 10:16,20
10:23 11:11,19
13:9 17:5 21:1
22:20,21 24:6
28:5
future 26:12

**g**

g 5:1 24:2
g.m. 5:4
gamble 22:16
gasparini 1:22
5:4
generating
11:17
given 6:5 12:15
going 5:13
10:22 13:1
good 5:5
goodrx 3:11,19
5:17 6:1,16 7:5
7:12,15,19,22
8:6,7,20,22 9:8
10:10,13 11:6
12:12,13,16,22
12:24 13:13
15:18 18:6
19:5 20:1,4,5,7
20:9,14 21:1,3
21:9 22:2 23:9
24:20,25 25:4
25:9,15,17,24
26:14

**goodrx's** 6:10
7:9,10,17 9:2,4
11:8 13:4
20:15 21:4,18
24:4 26:1 27:4
**gotshal** 3:10
**governed** 15:4
**granted** 8:7
17:3 20:20
22:6 25:15
**granting** 25:18
**greenville** 4:19
**grounds** 12:2
**group** 13:12
26:6
**groups** 6:23
**grow** 24:18
**growing** 10:21
**guaranteed**
23:24

**h**

**hand** 19:25
21:8 24:20
**health** 1:7 2:2
5:6,25 6:22
**healthcare**
6:20 10:1
11:22 14:8
**healthy** 11:1
**hear** 5:20,21
**heard** 9:1,6
**hearing** 2:1 5:9
5:11 6:12 8:2
9:13,21 15:7
26:14 27:12
**held** 5:8 6:12

**helmers** 16:22
**highest** 18:7
19:15
**holders** 19:11
**holding** 23:9
**hon** 1:22
**honorable** 5:4
**hundreds** 14:3
**hurdles** 19:15
21:16
**hyde** 2:25 30:3
30:8

**i**

**identical** 8:11
**immediately**
8:14 14:3
**impact** 16:12
**impacted**
24:22
**implement**
7:18
**implicated**
26:12
**important**
20:15
**impose** 14:13
**imposed** 27:24
**inaccurately**
23:2
**inapplicable**
26:14
**included** 7:13
26:18
**including** 13:7
19:10 21:12,24
**income** 10:16
11:5 13:3,21

24:21
**increase** 21:19
**incur** 12:23
13:16 14:9
18:23
**independent**
13:14 20:21
21:14 25:5
**indicate** 15:18
**indicated** 12:9
19:19 23:11
**indicates** 19:17
25:7,23 26:20
**indicating** 28:3
**information**
7:9,12,18
11:22,24 12:20
12:22 13:4
14:7,8
**initial** 14:13
23:1
**injunction** 8:9
8:12,14 12:23
13:16,24 19:22
20:12,12,23
21:2,13,24
22:5,7 24:8,22
27:24
**insider** 6:5
**insiders** 23:13
**insolvent** 12:25
**instructed**
16:11
**integrated** 7:10
7:18
**interest** 12:7
15:7 16:4,14

17:8 24:14
26:24,25 27:16
**interests** 12:4,5
14:16,25 15:10
15:12,15 16:1
16:8 17:14
22:14 25:23
26:1
**investigate**
25:5
**investors** 16:20
**involuntary**
21:15 25:4
**isn't** 13:10
**issue** 14:24
26:8
**issued** 8:4
**issues** 17:10
25:12,16,19
26:18
**it's** 5:6,7
**i'm** 5:13 16:15
26:21

**j**

**j** 4:14
**joined** 15:18
**joint** 6:11
26:19
**judge** 1:23
**judgment** 20:9
21:11
**july** 6:1,2 7:6
9:14,15,19
**juncture** 19:12
**june** 7:5 9:7,8
**jurisdiction**
8:16

justice 4:1

**k**

kansas 16:22
keith 4:7 5:19
kevin 3:8 4:21
  5:15,17
king 1:12,13
know 5:12
  19:13
knowing 12:21

**l**

lakefront
  16:20
largest 12:16
  18:6 23:8
  25:10
launched 10:21
law 3:3 6:19
  14:20 15:25
  16:15 21:10,12
  25:2 27:23
  28:4
laws 6:21
layer 27:1
lead 11:16
  26:10
ledanski 2:25
  30:3,8
left 27:21
legal 30:20
lender 3:16
  5:16
letters 6:3
liabilities 23:7
licensing 8:10

lien 20:9
light 21:16
likely 13:15
  14:9 23:18
line 5:22 29:4
liquidate 13:19
  19:7
liquidated 11:9
  24:5
liquidating
  19:4
listed 18:15
  23:21
litigation 21:2
  24:8
llc 1:7 2:2 3:18
  4:10,17 5:6,25
  6:7 7:21 16:20
llp 3:10 4:9,16
longer 19:6
loop 15:2
lose 22:9
loss 17:3 20:19
lost 27:25
lot 24:1
lower 6:24

**m**

m 4:21
made 13:8
  18:10,13 23:12
  23:14
main 3:20
  13:21
maintain 24:11
majority 15:22
  16:3

make 13:19
  24:8
makes 6:18
making 16:17
manager 6:14
managers 6:23
  7:11
manges 3:10
manner 13:20
manufacturing
  8:10
market 19:20
marketing
  8:10
maryland
  16:21
material 13:1,3
materials
  15:20
matter 1:5
  5:10,24 23:1
maximize
  13:17 17:9
  24:15,16 25:6
mc 8:21
mccarrell 4:21
  5:18
measures
  11:24
mechanisms
  20:8
member 7:2
members 6:24
  6:25
mentioned
  22:15

merely 16:2
met 21:16
mexico 16:24
michael 2:1
  3:23 4:24 5:17
  6:14
michelle 6:4
million 8:8
  13:8 18:9
  23:10,12
mineola 30:23
minimal 25:9
minneapolis
  4:12
misconduct
  12:21 17:13
  25:21
misusing 7:17
  13:4
mn 4:12
modified 26:9
modify 9:17
  19:14 21:6
modifying 9:15
monitoring
  13:14 20:22
months 10:3,3
motion 2:1 5:8
  5:24 6:2,2,8,12
  8:24 9:2,3,4,5
  9:8,9,13,14,21
  10:12 14:19
motions 8:25
  9:17
mount 3:6
moved 8:17,22

moving 11:2

**n**

n 3:1 5:1 29:1
  30:1
name 5:15,21
names 5:13
necessarily
  18:22 25:18
need 17:13
  25:22
needs 13:5
negatively 14:3
nevertheless
  20:5 21:3
new 3:13 10:7
  16:24
non 23:5 25:2
  27:22
normal 20:8
note 20:15
noted 16:5
  26:7
notes 6:5 14:5
  18:11 19:16
  23:1,13 24:2
  26:17,19
notice 15:7
november 8:3
number 5:7
  8:19,21
ny 3:13 30:23

**o**

o 1:21 5:1 30:1
oaks 18:19
objected 9:9

objection
  14:19
obligations
  7:25 8:6
offer 7:20 10:7
offers 6:25
office 5:19
okay 5:20
old 30:21
once 15:21
  20:6
ones 26:11
ongoing 20:2
  20:10
operate 11:20
  12:22 13:23
  19:24
operated 10:5
operates 24:11
operating 11:4
operation
  13:21 20:4,24
  22:11 23:25
operational
  11:5
operations
  10:2 11:15
  12:6 13:1,25
  14:1,2,15 19:2
  19:3,5,9,23
  20:2 22:4
  24:18 25:25
  26:11
opportunity
  22:9
oppose 22:23

opposed 9:23
opposes 12:12
opt 19:3
options 16:13
  20:5 21:9
orally 5:10
order 8:12,23
  9:15,19 14:13
  22:9 28:2
ordered 28:1
organizations
  6:25 7:2
outlined 26:13
outside 9:12
  11:7 13:12
  17:11 20:7
  25:13 26:6
outstanding
  23:22
owed 8:6

**p**

p 3:1,1 5:1
pa 3:3
page 16:16
  29:4
paid 20:2 25:1
paragraph
  15:6
parties 6:10,15
  7:14 8:1 9:1
  14:23 15:16
  16:6,7,10 22:1
  25:19 27:2,11
  27:19
parties' 9:17
party 15:6,17
  21:14 25:5,14

patient 11:22
pay 11:5 13:25
  20:4 21:25
  24:17,20
payment 25:24
payments
  13:11 17:1,23
  18:2 26:5
pending 24:8
percent 10:18
  10:19
percentage
  18:7 25:10
period 19:4
periods 13:9
  18:10 23:13
permanent 8:8
person 8:3
petition 8:20
  12:7,24 21:20
  23:22
pettengill
  16:23
pharmacy 6:23
  7:3,4,11
pivotal 10:22
place 20:24
plan 10:15
  12:3 14:22
  17:15 20:10
  22:23 27:4
plans 6:23
platform 7:1
playing 10:22
pleadings 7:7
  27:11

pleasant 3:6
please 5:14
pm 1:17 28:10
po 3:5
point 9:9
policy 15:24
portion 22:7
position 27:20
posits 12:24
possible 13:7
  17:18 20:11
  23:19
possibly 14:10
  20:1,23 21:13
  21:21
post 12:24
  21:19
poston 4:7 5:19
potential 19:10
  25:5,8
potentially
  18:10 25:2
practice 8:24
pre 12:7
preference
  12:14,15 13:8
  18:10,21 23:13
  23:18
preferential
  13:11 17:1,23
  18:2,3 26:5
preferred
  13:12 26:6
prejudiced
  13:13
present 4:23

presented 6:14
  6:15 9:22
preserved 21:5
presiding 5:4
previously
  22:15
prices 6:24
primary 10:17
prime 4:10,17
  5:18 6:6,8 7:21
  7:21 10:17,24
  10:25 12:10
  13:22 14:14,17
  19:10
prior 7:7 9:12
  18:14 22:12
  23:15 27:20
priority 13:11
  26:5
pro 18:6
proceed 18:4
  19:7
proceeded 7:20
proceeding
  25:4 27:18
proceedings
  28:9 30:4
proceeds 13:7
  13:23 18:4
process 11:12
  12:4
processing 7:4
property 17:15
propose 22:22
prospect 13:2
protect 11:24
  17:14 25:22

protected 26:1
prove 18:5
provide 16:16
provided 15:5
provides 7:1,4
  15:5
provision 7:17
provisions 7:14
purchaser 24:9
purpose 12:17
purposes 10:8
pursuant 7:8
  12:1
pursue 13:5
  18:3,23 20:6,7
  21:1,10 22:2,9
pursuing 18:21
put 21:15
  27:19

**q**

queen 1:12
quoting 26:22

**r**

r 1:21 3:1 5:1
  30:1
rapidly 10:22
rata 18:6
rather 14:18
  17:2,4,24
  20:20 27:14,18
ratify 22:5
reach 10:10
  17:6 20:9
  22:25
reached 22:13

read 5:13,23
ready 5:10,23
  22:14
real 7:4
receivable
  23:24
receivables
  23:22
receive 16:25
  17:22 18:1
  21:3 25:9
receiver 21:14
receiving 18:7
recess 28:6
record 5:23
  6:16,19 27:10
  30:4
recourse 27:22
recovered 18:8
recoveries
  13:18
recovery 18:16
  21:3,10 23:18
  24:3 25:1,8,10
  25:11
refer 6:7
referred 8:12
reflects 6:19
regarding
  10:10 20:10
regardless
  11:13 26:19
regularly
  20:22
rehabilitation
  13:2

reiterate  24:23
rejection  24:1
relating  14:7
  25:17
relief  9:8,13
  10:12 19:3
  21:12 25:15,18
remain  8:14
remaining  13:6
  17:10 20:4
  21:21 25:8,12
remains  11:8
  17:15 20:15
remedies  22:2
remedy  15:14
  16:19
remove  22:6
reopened  9:18
reorganization
  10:11,15
reorganize
  14:22
repayment
  20:6,7,10
reply  6:9 13:20
representative
  4:24 5:16
representing
  10:18,19
request  15:6
requests  14:17
required  10:2
  11:15 19:1
  22:4
resolution
  10:10,14

resolve  25:16
resolved  17:10
  25:13,20
response  6:1,8
  6:10 12:10
  14:19
responsibility
  14:10
responsible
  14:6
rest  26:13
restraining
  14:13
result  27:8
resulting  10:9
resume  12:6
return  7:12
revenue  11:16
  20:11 21:22
  27:23
right  5:20,22
rights  17:3
  20:20 21:4
rise  5:2 28:8
risk  11:22
risks  14:5
road  30:21
rogers  3:18
role  10:22
rolex  15:20
room  1:13
rothschild  4:9
  4:16
rule  5:10 13:11
  15:22 19:13
  22:15 26:5

ruling  5:24
  28:3,6
rulings  29:3

**s**

s  3:1 4:11 5:1
safety  17:18
sc  1:14 3:6,21
  4:5,19
schedule  18:15
  23:1,21 24:2
schedules
  17:25 23:8
second  10:19
  20:19
section  12:1
  15:5,11 26:20
secure  14:9
securing  14:7
security  11:22
  14:5
see  15:2
seek  19:3 21:15
seeking  7:23
  7:24 9:14
  15:17 21:12
seeks  11:25
select  13:12
  26:6
sell  7:21
selling  8:10
sensitive  14:7
served  16:2
  17:2,24 27:17
services  6:20
  7:6,8,13,15 8:7
  8:11 14:4

session  5:3
  28:7
set  16:18 23:17
setoff  18:17
short  19:3 28:2
shortly  7:14
showed  20:3
shut  10:2,3
  11:15 22:2
shutdown  10:9
shutting  19:17
sidestep  13:10
  26:4
siding  15:21
  16:5,15
signature  30:6
significant
  14:5
significantly
  9:25
similar  8:11
simply  17:5
  22:20
single  17:12
sixth  4:11
  25:12
software  19:18
  23:20 24:6
sold  7:20 23:6
sole  12:17
solely  14:1
solution  7:11
  7:19 8:12
solutions  6:22
  30:20
sonya  2:25
  30:3,8

soon   9:2,4
sound   15:2
sources   13:21
south   1:2 5:3
   6:21 18:20
state   5:15 13:5
   16:15 21:10,12
   22:3
stated   6:12
   10:13,23 11:14
   12:9 15:23
   17:25 20:15
statement   6:11
   18:8,13 23:10
   26:19
states   1:1,11
   4:1,2 5:2,19
   6:24 13:20
   14:18 17:22
   23:2
stay   9:8,13,16
   10:12 25:15
step   11:20
   19:24
strategy   10:23
stream   13:3
   20:11 21:23
   27:23
street   1:13
   3:20 4:4,11,18
strom   4:3
subject   18:17
   20:11 23:17
   24:10 27:23
subsection
   15:6

subsequently
   8:22 21:18
substantial
   14:7
successful   11:1
   18:5
sufficient   11:4
suggested
   26:15
suite   4:11,18
   30:22
superior   15:21
   16:5,15
supervise
   17:17
support   6:3,8
   9:23 12:9,10
   15:19
supports   27:16
surpass   19:15
switch   7:3
szwajkos   4:24
   5:15 6:15 9:22
   9:24 10:1,7,13
   10:15,25 11:3
   11:14,17 27:10

**t**

t   30:1,1
take   8:14 11:24
taken   9:6,19
   17:20
tallying   16:2
tantamount
   19:16
technologies
   6:25 10:6,7
   11:5

technology
   6:20,22 7:1,3
   7:11,19 8:11
   10:23,24 11:1
   11:18,21 14:14
   19:6,18,20,24
   20:11 21:23
   23:20 24:11
telephonically
   3:8,15,16,23
   4:7,14,21,23
ten   16:18
termination
   11:16 22:12
terms   8:13
test   15:23
testified   10:1,8
   10:20 11:3,21
testimony   6:14
   9:22 19:19
   20:3 24:19
   27:10
thank   28:7
therapeutics
   4:10,17 6:7
   7:21
there's   5:14
they're   5:18
   24:9
things   7:23,24
   22:12
third   22:19
   25:5
thousands   14:4
thurmond   4:3
time   7:4 19:4
   20:16 26:7,15

27:2
today's   5:11
total   23:3,7
townsend   3:18
transcribed
   2:25
transcript   30:4
transfers   13:7
   18:3,9,12
   23:12,14
true   30:4
trustee   4:2
   11:23 13:5,18
   14:6,6,8,18
   15:3,12 17:6
   17:17 18:3,22
   19:2,7 22:24
   26:16,23 27:1
   27:8
trustee's   5:19
try   23:4
turns   15:13
two   8:22 10:8
   10:16 12:8
   13:21 25:14

**u**

u.s.   1:23 15:3
ultimately
   21:25 26:3
unable   14:22
   26:4
unclear   21:2
under   6:20
   7:25 8:7 9:6
   11:23 14:1
   15:8,8,9,11
   16:1,15 21:4

21:10 25:2,2
27:6,22
**united** 1:1,11
4:1,2 5:2,19
6:24 10:1
14:18
**unknown** 1:25
**unnecessarily**
26:10
**unrelated**
10:24
**unsecured** 6:4
12:8 16:3 18:6
23:8
**unwilling**
14:10
**use** 10:6 12:19
14:14 19:20
**used** 10:24
13:21 21:25
23:23
**using** 11:5
12:22 19:6
**usual** 10:5 21:8

| v |
|---|

**vacate** 8:17 9:3
9:5,11,17
19:14 21:6
**vacated** 20:13
21:1,5 26:9
**vacating** 22:10
**value** 11:18
13:2 23:19,21
24:15,17 25:6
**valueless** 24:7
**values** 17:9

**various** 24:3
**veritext** 30:20
**violate** 12:23
13:16 20:23
**violating** 7:25
**violation** 19:21
21:24
**voluntary**
11:25
**votes** 16:2
**vs** 15:3,20
16:20

| w |
|---|

**w** 4:18
**want** 24:9
**washington**
4:18
**weaver** 3:23
5:17
**weighs** 20:18
**weight** 6:6
27:15
**weil** 3:10
**westlaw** 16:23
**we're** 5:5
**whichever** 15:9
**willing** 10:14
24:10
**windows** 15:21
**wish** 25:3
**work** 10:14
**worthless**
19:19
**wouldn't** 18:22
**wreck** 22:17

| x |
|---|

**x** 1:4,10 29:1

| y |
|---|

**year** 11:8
**yielding** 16:3
**york** 3:13