UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Famulus Health, LLC,<br><br>                             Plaintiff,<br><br>       v.<br><br>GoodRX, Inc.,<br><br>                          Defendant. | Civil Action No. 2:24-cv-00886-BHH<br>Consolidated Action: 9:24-mc-00126-BHH<br><br>**Opinion and Order** |

     This consolidated case involves cross-motions to vacate and to confirm an arbitration award entered by the American Arbitration Association ("AAA") on February 16, 2024. Famulus Health, LLC ("Famulus") seeks to vacate the award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. (ECF No. 1.) GoodRX, Inc. ("GoodRX") seeks to confirm the award pursuant to 9 U.S.C. § 9. (ECF No. 1 in member case 9:24-mc-126-BHH.) Famulus also seeks to seal various documents from the underlying arbitration. (ECF Nos. 5, 29.) GoodRx partially opposes Famulus's motions to seal.[1] (ECF Nos. 16, 34.) Also before the Court is a motion to intervene filed by a non-party to an underlying arbitration, Prime Therapeutics, LLC ("Prime") (ECF No. 33.) GoodRx opposes Prime's request to intervene in this matter. (ECF No. 44.)

     The pending motions have been fully briefed by the Parties and oral argument was held on April 30, 2024, following which the Court took the motions under advisement. After the hearing, Famulus filed an application to modify or correct the award pursuant to 9

---

[1] While these motions to seal were pending, both parties filed subsequent motions to seal, GoodRX doing so, in large part, out of an abundance of caution due to the live dispute. (*See, e.g.,* ECF Nos. 35, 43, 52, 53.) This Order rules on these pending motions as well.

U.S.C. § 11 ("Application"), as an alternative remedy. (ECF No. 49.) On May 30, 2024, GoodRX filed a memorandum of law in opposition.

Then, on June 4, 2024, Famulus filed a suggestion of bankruptcy, (ECF No. 55), and the Court stayed the case in its entirety pending resolution of Famulus's bankruptcy proceedings. (ECF No. 56.)

On July 2, 2024, however, GoodRX filed a motion to reopen the case after the bankruptcy court granted its motion for relief from the automatic stay to allow this Court to adjudicate the pending motions. (ECF No. 57.) Famulus did not object to GoodRX's motion to reopen the case. (ECF No. 58.) On July 26, 2024, the Court reopened this case, (ECF No. 59,) and it now issues this Order to address the pending motions.

## <u>JURISDICTION</u>

It is apparent to the Court, and the parties do not dispute, that the Court has jurisdiction pursuant to § 9 of the FAA. The parties submitted their dispute to binding arbitration, administered by the American Arbitration Association ("AAA"). The arbitration was conducted by AAA Arbitrator Elizabeth Ray and took place in South Carolina, concluding on December 2, 2023. On February 16, 2024, Arbitrator Ray issued an award in favor of GoodRx.  On February 21, 2024, Famulus sought relief in this Court by filing a petition to vacate – well within the one-year period allowed by the FAA. *See* 9 U.S.C. § 9. (ECF No. 1.) Finally, the parties, based separately in South Carolina/Connecticut (ECF No. 3) and Delaware/California (ECF No. 3 in member case 9:24-mc-126-BHH), are diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## GOVERNING LAW

Under the FAA, 9 U.S.C. § 1 *et seq.*, where a controversy has been arbitrated pursuant to a valid arbitration provision and the arbitrator has made an award, the parties may seek to confirm, *see* 9 U.S.C. § 9, or to vacate, *see* 9 U.S.C. § 10, that award in the appropriate court. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("The Act also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. §§ 9-11.").

Here, both parties seek relief pertaining to the Arbitration Award[2] issued in GoodRX's favor, with GoodRX seeking to enforce it while Famulus seeks to vacate it or, alternatively, modify it. There is an "emphatic federal policy in favor of arbitral dispute resolution." *Fakhri v. Marriot Int'l Hotels*, Inc., 201 F. Supp. 3d 696, 709-10 (D. Md. 2016) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Consequently, "[j]udicial review of an arbitration award in federal court is 'substantially circumscribed.'" *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)). Indeed, given that "full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation," a court's review of an arbitration award "is among the narrowest known at law." *Id.* (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)). "A court sits to 'determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply

---

[2] The "Arbitration Award" as referred to herein includes the Final Award, (Ex. 1 to Am. Petition), the Injunction Order, (Ex. 2 to Am. Petition), and the Costs Order, (Ex. 3 to Am. Petition).

whether he did it.'" *U.S. Postal Serv. v. Am. Postal Workers Union*, *AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (citing *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996)).

Under the terms of § 9, unless an arbitration award has been vacated, modified or corrected pursuant to §§ 10 and 11, if a party files a motion to confirm, "a court 'must' confirm [the] arbitration award[.]" *Hall St. Assocs.*, 552 U.S. at 582 (quoting 9 U.S.C. § 9). Section 9 reads in part as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Under § 10, a district court, in the district where an arbitration award was made, may issue an order vacating the award under certain limited circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. "If there is a valid contract between the parties providing for arbitration, and if the dispute resolved in the arbitration was within the scope of the arbitration clause, then substantive review is limited to those grounds set out in [9 U.S.C. § 10]." *Choice*

*Hotels Int'l, Inc. v. Shriji 2000*, No. DKC-15-1577, 2015 WL 5010130, at \*1 (D. Md. Aug. 21, 2015) (citing *Apex Plumbing*, 142 F.3d at 193).

Additionally, the Fourth Circuit has recognized two permissible common law grounds for vacating an award: when "an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Three S Del., Inc.*, 492 F.3d at 527 (quoting *Patten*, 441 F.3d at 234). A federal court may vacate an award only when the moving party has met its "heavy burden" of showing that one of the statutory or common law grounds has been met. *Id.* "[B]ald faced allegations" are insufficient;[3] evidence of grounds for vacatur "must be direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Consol. Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995) (internal quotation marks and citation omitted); *Trademark Remodeling, Inc. v. Rhines*, No. PWG–11–1733, 2012 WL 3239916, at \*2 (D. Md. Aug. 6, 2012).

As "the party opposing the award," Famulus "bears the burden of proving the existence of grounds for vacating the award." *Choice Hotels Int'l, Inc. v. Austin Area Hosp., Inc.*, No. TDC-15-0516, 2015 WL 6123523, at \*2 (D. Md. Oct. 14, 2015) (citing *Three S Del., Inc.*, 492 F.3d at 527). Accordingly, the Court "must enter an order confirming the Arbitration Award if Famulus has not demonstrated that the Arbitration Award should be vacated instead." *Integrity Nat'l Corp., Inc. v. DSS Servs., Inc.*, No. CV PWG-17-160, 2017 WL 6492718, at \*3 (D. Md. Dec. 19, 2017). *See also* 9 U.S.C. § 9; *Choice Hotels Int'l*, 2015 WL 6123523, at \*2.

---

[3] *Colonna v. Hanners*, No. 08:10–CV–1899–AW, 2011 WL 2175248, at \*4 (D. Md. June 1, 2011) *aff'd*, 455 F. App'x. 295 (4th Cir. 2011).

5

**DISCUSSION**

**INTERVENTION**

This Court is confronted with a threshold question of whether a non-party to the underlying arbitration, Prime Therapeutics, LLC, may intervene in this federal proceeding for the purpose of challenging the validity of the Arbitration Award. Prime argues that it is entitled to intervene as a matter of right because it has a substantial interest in this action – namely, protecting its, its clients', and its members' interests against the enforcement of an award that would render Prime's prescription medication discount program, known as MedsYourWay, unavailable. (ECF No. 33-1 at 15.) Among other arguments, GoodRX counters that because only a party to an arbitration may seek vacatur of an arbitration award, Prime lacks standing to challenge the award. (ECF No. 44 at 10.)

Any analysis regarding Prime's standing to intervene and seek vacatur of the Arbitration Award begins with the text of the FAA. The FAA provides that a court may vacate an arbitration award "upon the application of any party to the arbitration." 9 U.S.C. § 10(a). Under the plain terms of the FAA, Prime is foreclosed from challenging the Arbitration Award. *Meshkin v. Vertrue Inc.,* No. 3:07CV109(CFD), 2007 WL 2462172, at *1 (D. Conn. Aug. 28, 2007) (in interpreting FAA § 10, "[t]his means that a non-party to the arbitration may not seek to overturn its outcome"); *Katir v. Columbia Univ*., 821 F.Supp. 900, 901 (S.D.N.Y. 1993) ("Because [the plaintiff] was not a party to the arbitration, she lacks standing to petition to vacate the Award."); *Dundas Shipping & Trading Co., Ltd. V. Stravelakis Bros., Ltd*., 508 F.Supp. 1000, 1003 (S.D.N.Y. 1981) ("Since [co-petitioner] was not a party to the arbitration, it has no standing to move to vacate the award.").

A limited exception to this general rule arose out of a 1988 Second Circuit opinion, *Ass'n of Contracting Plumbers of City of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus*. ("*Contracting Plumbers*"), 841 F.2d 461 (2d Cir. 1988), on which Prime relies.

*Contracting Plumbers* involved a dispute between the plumbers' union and the pipefitters' union regarding which group had the exclusive right to install combination standpipe-sprinkler risers in New York City buildings. The parties initially submitted their dispute to an internal grievance committee pursuant to a procedure outlined by the union association (the "Association") to which each of them belonged. After a drawn-out internal process awarded the disputed work to the pipefitters' union, the plumbers' union invoked the arbitration clauses in their respective collective bargaining agreements without informing the pipefitters' union or the Association about such arbitrations. Because they were never notified of these arbitrations, both the pipefitters' union and the Association never sought to intervene in those proceedings.

At arbitration, the plumbers' union obtained favorable decisions. The pipefitters' union and the Association only learned of these results when the plumbers' union sought judicial confirmation of the arbitration awards. To intervene in the federal action, the pipefitters' union and the Association obtained the plumbers' union's consent to intervene. The district court then set aside the arbitration awards, finding that "under the [Association's] Constitution, the [plumbers' unions] were not free to arbitrate the question of trade line jurisdiction." *Contracting Plumbers*, 841 F.2d at 466. The case was appealed to the Second Circuit on several grounds, one of which was whether the pipefitters' union and the Association had standing to challenge the arbitration awards.

Finding that there was "little question" that the non-parties had a "substantial interest in the arbitrations," the Second Circuit concluded that the pipefitters' union and the Association "may intervene as of right under Rule 24(a)." *Id.* at 467. The Second Circuit's conclusion that the pipefitters' union and the Association—non-parties to the arbitration—had a substantial interest in the federal action was based on "one of the primary reasons for [the Association's] existence: to avoid trade line jurisdiction disputes between the local unions." *Id*.

The import of *Contracting Plumbers* is that in certain limited situations, a non-party may have so substantial an interest in an arbitration that it should be permitted to intervene as of right in a subsequent federal confirmation proceeding. As an initial matter, the Court notes that neither the Fourth Circuit nor a district court in South Carolina has adopted this rationale. In any event, the Court finds that Prime has not met its burden to show that it may intervene as a matter of right.

 To intervene as of right, Prime must show: (1) timely application;[4] (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede Prime's ability to protect its interest; and (4) that Prime's interest is not adequately represented by the existing parties to the litigation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under [Fed. R. Civ. P.] 24(a) bears the burden of establishing a right to intervene and must do so by satisfying all four requirements." *U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004) (citing *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)). Failure to satisfy even one of these requirements is

---

[4] GoodRX does not challenge the timeliness of Prime's motion. (ECF No. 44 at 21 n.15.)

sufficient to warrant denial of a motion to intervene as a matter of right. *See N.A.A.C.P. v. New York*, 413 U.S. 345, 369 (1973). Here, the Court finds that Prime has failed to satisfy the fourth requirement.

While the burden to demonstrate inadequacy of representation is generally "minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), a more rigorous showing of inadequacy has been required in cases "where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001); *see also Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured.") Indeed, the Fourth Circuit has held that "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).

The fact that Famulus is a party to the contract, pursuant to which it and Prime launched MedsYourWay, there is clearly an identity of interest between Prime and Famulus. Indeed, both entities seek the same outcome – to vacate the Arbitration Award so that they may continue their contractual relationship and avoid harms following from cessation of the MedsYourWay program. Prime has not shown that it seeks any relief other than that which Famulus seeks for itself.  Nor has Prime alleged a conflict of interest or collusion on the part of Famulus. Rather, Prime appears to allege nonfeasance – that

because of Famulus's lack of access it cannot and will not provide "the same evidence that Prime can regarding the impact the Award would have on Prime, its Clients, or pharmacy patient Members." (ECF No. 33-1 at 19.) However, as noted by GoodRX, in the instant matter the sole issue before this Court is whether Famulus has met its heavy burden to show that vacatur of the Arbitration Award is warranted under 9 U.S.C. § 10 or the common-law principle of "manifest disregard" of the law. The Court will not be hearing evidence that was not presented at the underlying arbitration. In any event, upon its review of Famulus's amended petition to vacate, the Court finds that Prime's interests are adequately represented. Indeed, Famulus asserts the very arguments Prime would assert if allowed to intervene – i.e., that the Arbitrator refused to acknowledge and consider the Prime letter and excluded a Prime Representative from testifying at the hearing.

For these reasons, the Court finds that Prime is not entitled to intervene as of right under Rule 24(a)(2). Furthermore, as explained in more detail below, the Court does not believe it would be appropriate to grant Prime permissive intervention under Rule 24(b).

Permissive intervention allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising discretion under Fed. R. Civ. P. 24(b), "the court shall consider whether the intervention will unduly delay or prejudice the application of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). Even if intervention under Rule 24(b)(2) is available in this situation, since Prime asserts the same arguments that have been put forth by Famulus, the Court is persuaded that Prime's intervention will "potentially unduly delay the adjudication of the case on the merits and, generate little, if any, corresponding benefit to the existing parties." *State of*

*South Carolina v. United States,* No. CV 1:16-00391-JMC, 2016 WL 2996644, at *5 (D.S.C. May 25, 2016). *See also* *Brock v. McGee Bros. Co.*, 111 F.R.D. 484, 487 (W.D.N.C. 1986) (holding same and further noting that "it is doubtful . . . the rule was intended to provide for intervention by an applicant who apparently desires merely to assist in asserting the same defense already asserted by the Defendant"). As set forth above, the Court is of the opinion that Famulus will adequately represent Prime's interests, in which Famulus shares. Further, adding Prime would needlessly delay resolution of the present dispute and increase costs. Lastly, the Court is mindful of the fact that, unlike litigation, its judicial review of this matter is substantially circumscribed, and it is charged with bringing this matter to a close as swiftly as possible. Therefore, in its sound discretion, the Court denies the request by Prime to intervene in this action under Fed. R. Civ. P. 24(b). Accordingly, Prime's motion to intervene is denied.

Prime also argues that it should be allowed to file its motion to vacate as *amicus curiae*. (ECF No. 33-1 at 22.) There is no Federal Rule of Civil Procedure that applies to motions for leave to appear as amicus curiae in a federal district court. District courts therefore have discretion whether to grant or deny such leave and often look for guidance to Rule 29 of the Federal Rules of Appellate Procedure, which applies to amicus briefs at the federal appeals level.  Rule 29 indicates that amici should state "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R.App. P. 29(b)(2). As noted by Judge Davis in *Bryant,* "[t]he aid of amici curiae has been allowed at the trial level where they provide helpful analysis of the law, they have a special interest in the subject matter of the suit, or existing counsel is in need of assistance."  *Bryant v. Better Bus. Bureau of Greater Md., Inc.,* 923 F. Supp. 720, 728

(D. Md. 1996). "An amicus curiae is merely a 'friend of the court,' not a party to the action, and to that end, an amicus may not assume the functions of a party, nor may it initiate, create, extend, or enlarge the issues." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Case No. M 02-01486-PJH, 2007 WL 2022026, at *1 (N.D. Cal. July 9, 2007).

The Court finds that Prime's proposed brief would exceed the traditional, limited role of an *amicus curiae*. Prime essentially seeks vacatur of the Arbitration Award, in the guise of an amicus brief, arguing that it should not be bound by the award that directly affects its interests. Accordingly, the Court finds Prime's proposed amicus brief is inappropriate and, in its sound discretion, denies Prime's motion for leave to file a motion to vacate as *amicus curiae.*

## PETITION TO VACATE

### Timing and Deadlines

Arbitrator Elizabeth Ray (hereinafter "the Arbitrator") issued an Arbitration Award in favor of GoodRX on February 21, 2024. Famulus filed a petition to vacate on February 21, 2024. (ECF No. 1.) Famulus filed an amended petition to vacate on March 27, 2024. (ECF No. 30.) There is no dispute that Famulus served its petitions to vacate on GoodRx within the specified three-month period. *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) ("The Federal Arbitration Act requires that motions to vacate be served on the opposing party within three months after the award is filed or delivered.").

### Substantive Review

Substantive review is, as noted, limited to the grounds stated in § 10—that an "award was procured by corruption, fraud, or undue means"; that "there was evident

partiality or corruption" in an arbitrator; that the arbitrators engaged in misconduct prejudicial to a party, such as by "refusing to postpone the hearing, upon sufficient cause shown, or [by] refusing to hear evidence pertinent and material to the controversy"; or that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a); *see also Choice Hotels Int'l, Inc. v. Shriji 2000*, No. DKC-15-1577, 2015 WL 5010130, at *1 (D. Md. Aug. 21, 2015). "The permissible common law grounds for vacating such an award "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Three S Del., Inc.*, 492 F.3d at 527 (quoting *Patten*, 441 F.3d at 234).

Here, Famulus asserts numerous grounds for vacating the Arbitration Award under § 10 and the common law, each of which is addressed in turn, below.

### *Alleged Misconduct*

By its terms, § 10(a)(3) allows courts to vacate arbitration awards only "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Famulus argues that vacatur is appropriate because the Arbitrator engaged in the following acts of misconduct under § 10(a)(3):

(1) Refusing to postpone the hearing upon sufficient cause shown; and
(2) Issuing a serious of erroneous rulings that excluded evidence that was neither cumulative nor irrelevant and/or was so grossly prejudicial that it denied Famulus of its right to a fundamentally fair arbitration hearing, to wit:
    a. Denying Famulus the right to call rebuttal expert and lay witnesses;

      b. excluding former Prime employee, Jarrod Henshaw, and/or a current Prime representative from testifying at the hearing in support of Famulus;

      c. refusing to subpoena certain third parties to the hearing at the request of Famulus;

      d. considering and signing, without modification or explanation, GoodRX's proposed injunction order submitted post-hearing; and

      e. declaring the hearing closed on January 17, 2024, in contravention of AAA R-40(a), and improperly reopening the hearing to allow only GoodRX to submit additional arguments in support of its claims.

(Am. Petition at 34-41.)

<u>Refusing to Postpone Upon Sufficient Cause Shown</u>

Famulus argues that the Arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown under § 10(a)(3). The record reflects that the parties mutually requested a continuance of the arbitration hearing from November 27, 2023, to April 10, 2024, in light of:

> (i) the number and kind of disclosure disputes between the Parties; (ii) the need to take additional fact-witness depositions next week (the week of September 18), the week after (the week of September 25), and potentially in the weeks following; (iii) the dispute with Prime Therapeutics LLC concerning production of the fully executed Prime Agreement and its amendments (about which counsel are currently meeting and conferring); (iv) the need to prepare dispositive motions after the bulk of fact discovery has been completed; (v) the need to prepare affirmative and rebuttal expert reports after fact discovery has been completed; and (vi) the Parties' willingness to attempt to mediate the disputes between them, the Parties and their attorneys have concluded that a continuance of the hearing date is necessary.

(ECF No. 30 at Ex. 24.) The Arbitrator denied the parties' request for a continuance on September 15, 2023, stating:

> Good afternoon, Counsel. In our meeting on 7-19-23, I told you there would be no continuances and you all indicated that you understood. I encourage you to work towards the November hearing dates, even if you need to expand some of the discovery deadlines. I would further suggest you forego a dispositive motion and let the hearing take care of all of the issues.

(*Id.* at Ex. 25.)

For the Court to find the Arbitrator guilty of misconduct sufficient to warrant vacatur under § 10(a)(3), the alleged misconduct must result in serious prejudice to the party. While there is no doubt that both parties desired a continuance, the Court finds that Famulus has not shown that it was prejudiced by the Arbitrator's decision to forge ahead as previously agreed and scheduled, while allowing for some expansion of the discovery deadlines. Thus, because Famulus has not shown misconduct in the Arbitrator's failure to grant this continuance, vacatur is not warranted on this ground.

Famulus also argues that the Arbitrator engaged in misconduct when she denied Famulus's motion for a potential continuance and subsequent expedited motion for reconsideration of her ruling. (*Id.* at Exs. 46, 48.) Famulus's motion for a potential continuance was included in the parties' proposed agenda for their ***final*** status call on November 17, 2023, which was attached to a November 16, 2023, email sent to the Arbitrator. Therein, the parties set forth their respective positions:

> **GoodRx position:** GoodRx does not believe that any delay in the production of documents from WellDyne or Express Scripts warrants a continuance. Pursuant to Section 5(e) of the Amended Scheduling Order, dated October 26, 2023, "late-filed Motions to Compel or discovery disputes are insufficient to cause a postponement of the Final Hearing." On September 8, 2023, counsel for Famulus was directed to revise its subpoenas consistent with the Arbitrator's directives. Famulus waited more than 40 days to submit revised subpoenas which, in Goodrx's view, continued to be inconsistent with the Arbitrator's order. Any delay in failing to submit a subpoena consistent with the Arbitrator's directives does not warrant a continuance. Moreover, Famulus represented to GoodRx and the Arbitrator that WellDyne was "standing ready" to produce documents. GoodRx has yet to see a production of documents. GoodRx does not believe the delay in Famulus seeking and obtaining the subpoenas (over GoodRx's continued objection) or a third-party's permissible resistance to the subpoenas warrants continuation of the hearing.

15

> **Famulus' position:** After much delay in obtaining the executed subpoenas, Famulus served the executed subpoenas by overnight delivery on both WellDyne and Express Scripts the day after they were issued. They were served on each company's respective General Counsel on November 11, 2023 with a November 17, 2023 return date. Famulus has contacted each General Counsel for a status on the delivery of the subpoenaed documents. Express Scripts stated that they had received the subpoena but that "there was no way" the subpoena would even be assigned to an attorney to review until after November 17, 2023. WellDyne's General Counsel is not responding to request even though they have been served. Famulus submits that the hearing may need to be continued if documents requested in the subpoenas are not provided in time for review and the possible retaking of the depositions of GoodRx employees whose names are contained in the documentation. All depositions remained open for this purpose.

(*Id.* at Ex. 47.)

The record reflects that, after reviewing GoodRX's objections to the proposed subpoenas, the Arbitrator advised the parties on August 7, 2023, that

> [she] do[es] not see how the proposed subpoenas to third parties are relevant to the pending causes of action and defenses, nor do[es she] understand what new information they might produce over and above what is already in the possession of the Claimant and Respondent in this case. Perhaps if Respondent could educate me on those topics, I might consider issuing the subpoenas, but as of now, they will not issue.

(*Id.* at Ex. 19.) Famulus responded to the Arbitrator's email the same day, stating that it will send "detailed information tomorrow as to why the Third Party Subpoenas are critically relevant to the adjudication of this case." (*Id.*) The email also stated that none of the documents sought have been provided by GoodRX or are in the possession of Famulus, and that the documents sought will provide a defense to the claims alleged by GoodRX and support Famulus's counterclaims. (*Id.*)

Upon review, however, the Court finds that none of the exhibits attached to Famulus's amended petition to vacate reflect a detailed explanation in support of the subpoenas, as stated in Famulus's August 7, 2023, email. In its amended petition

Famulus next references an email dated August 24, 2023, to the Arbitrator, wherein it provides an update on the status of discovery between the parties. (*Id.* at Ex. 18.) Therein, Famulus's counsel states:

> There are two outstanding non-party document subpoena requests before your honor. One document subpoena for WellDyne and one document subpoena for Express Scripts. The importance of having these document subpoena requests granted was amplified yesterday in Mr. Nagji's deposition where he testified about agreements with Express Scripts. GoodRx has not produced any documents between them and Express Scripts and according to the deposition testimony yesterday, the relationship between GoodRx and Express Scripts as it involves the claims against Famulus is pivotal to this case. We respectfully request that these two non-party documents subpoenas be issued forthwith.

(*Id.*)[5] Thus, it is unclear to the Court from Famulus's amended petition to vacate and the attachments thereto whether Famulus provided more detail to the Arbitrator as she requested. (*See id.* at 18-19.) The Court garners from another exhibit Famulus provided that it made three revisions to the proposed subpoenas to narrow their scope. (*See id.* at Ex. 44.) However, GoodRX's opposition memorandum to Famulus's initial petition to vacate and the attachments thereto paint the rest of the picture culminating in the issuance of the subpoenas. Famulus sent revised subpoenas to the Arbitrator and GoodRX on September 6, 2023, and again, on September 7, 2023, in the format the Arbitrator requested. (Opp. Memo to Petition To Vacate at 13 & Ex. 35). The next day, September 8, 2023, GoodRX noted that the subpoenas had not been narrowly tailored as previously directed by the Arbitrator - i.e., so that they "only seek documents that

---

[5] As to the efforts made by GoodRX to provide Famulus with non-privileged documents in its possession evidencing its communications with these third parties, GoodRX states that it applied various search terms to relevant custodians' files for a certain date range – none of which Famulus objected to – and produced all non-privileged documents that hit on those search terms, including communications between GoodRX and these third parties. (Opp Memo to Pet. To Vacate at 12 & Ex. 33 at 3-4.)

Famulus purportedly needs to support its current claims and defenses" – and the Arbitrator responded that same day that she agreed and, thus, requested that Famulus tailor the subpoenas accordingly. (*Id.* at Ex. 35.) Famulus sent the subpoenas with a narrowed scope to the Arbitrator on October 19, 2023, stating that it chose to wait "until all GoodRX employees['] depositions were completed and transcripts received before doing so "so [it] could confirm that the scope of the subpoenas matched the discussion in the depositions regarding these two non-party entities." (*Id.* at Ex. 36.) GoodRX continued to object to the subpoenas' scope and characterized Famulus's decision to wait more than 40 days and 6 weeks before the hearing to respond as "delay tactics that should not be permitted." (*Id.*) In a November 8, 2023, email to the Arbitrator, Famulus stated that a representative of one of the third parties, WellDyne, confirmed that the requested documentation exists in the archives of WellDyne and that the CEO of WellDyne indicated that it stands willing to respond to the subpoena. (*Id.* at Ex. 37.) On November 10, 2023, the Arbitrator issued the subpoenas, as revised. (*Id.*)

In keeping with the profound deference accorded to arbitral decisions, the threshold for vacatur based on a failure to postpone is high. "Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists." *El Dorado Sch. Dist. # 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (citation omitted). When a postponement results in the exclusion of evidence, the complaining party must show that the exclusion of this evidence "so affects the rights of [the] party that it may be said that [that party] was deprived of a fair hearing." *Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 497 (1st Cir. 2005) (quotation omitted).

The Court finds that Famulus has not shown that the failure to postpone the hearing as requested by Famulus deprived Famulus's of a fair hearing. First, Famulus has not sufficiently explained why the documents it had sought were vital to its defense and counterclaims. As shown above, its arguments regarding the importance of the third-party documents are conclusory, even after being put on notice of the Arbitrator's concern as to their relevancy and materiality. Even then, the Arbitrator issued the subpoenas once narrowed, and Famulus is not completely innocent for the time lag in the Arbitrator doing so. Moreover, there is evidence in the record to strongly suggest that, even with more time, Famulus may not have received the desired documents from these third parties.

Parties opt for arbitration because it is faster and less expensive than standard judicial proceedings. The FAA assists these goals via streamlined procedures that facilitate swift judicial review of arbitral awards. Both the goals of arbitration and the purpose animating the FAA's streamlined procedures might, in some cases at least, be ill-served if arbitral proceedings were stalled pending drawn-out discovery battles over documents that may or may not exist in the custody of third parties, who may or may not willingly respond to a subpoena issued by an arbitrator. To put it another way, the Arbitrator quite reasonably declined to put the hearing on hold at the eleventh hour while Famulus continued to seek documents of questionable materiality. Accordingly, the Court holds that the Arbitrator did not engage in "misconduct in refusing to postpone the hearing." § 10(a)(3). *See also* AAA Rule 31 ("The arbitrator **may** postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.") (emphasis added.)

Refusing to Hear Evidence

Famulus argues that the Arbitrator issued three rulings that excluded evidence and deprived it of its right to a fundamentally fair hearing: 2(a) denying Famulus the right to call rebuttal expert and lay witnesses; 2(b) excluding former Prime employee, Jarrod Henshaw, and/or a current Prime representative from testifying at the hearing in support of Famulus; and 2(c) refusing to subpoena certain third parties to the hearing at the request of Famulus.

An arbitrator retains broad discretion over procedural matters and decisions about the admissibility of evidence. *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 479 (4th Cir. 2012) (citing *Int'l Union, United Mine Workers v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000)). An "arbitrator's procedural ruling may not be overturned unless it was in bad faith or so gross as to amount to affirmative misconduct." *Marrowbone*, 232 F.3d at 390. An arbitrator's unintentional mistake on a procedural matter is not a basis for vacatur. *Wachovia*, 671 F.3d at 479.

Further, "'in making evidentiary determinations,' arbitrators 'need not follow all the niceties observed by the federal courts.'" *White v. Four Seasons Hotel & Resorts*, 244 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 721 (D.C. Cir. 2008)); *Howard Univ. v. Metro. Campus Police Officer's Union*, 519 F. Supp. 2d 27, 36 (D.D.C. 2007) ("It is well settled that the arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding."). "Ultimately, all that is required is that the arbitrator grant the parties a fundamentally fair hearing." *White*, 244 F. Supp. 3d at 5 (internal quotation marks omitted). "A fundamentally fair hearing requires only notice, opportunity to be heard and

to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias." *Id.*

Upon review, the Court finds that Famulus has not shown that the Arbitrator made any error that deprived it of a fundamentally fair hearing. The Court will examine the three rulings raised in turn.

As to the ruling noted at 2(a), above, the record reflects that the Arbitrator allowed, over GoodRX's objection, Famulus to call five rebuttal expert and lay witnesses[6] that she found had not been properly disclosed in discovery so long as Famulus presented them for deposition and bore related costs. (ECF No. 30 at Ex. 37.)

As to the ruling noted at 2(b), above, the record reflects that Famulus sent an email dated November 26, 2023, to the Arbitrator and counsel for GoodRX, providing an updated witness list to include Jarrod Henshaw and/or a representative of Prime Therapeutics. (*Id.* at Ex. 41.) That same day, the Arbitrator was informed that Marci Conlin could be available to testify on behalf of Prime. (*Id.* at Ex. 42.) In response, the Arbitrator first noted that "no motion to late designate a witness was filed by Famulus" but that by adding a new witness "the day before the hearing begins, a 'motion' is to be presumed," and she then ruled that Famulus's "late designated witness [Marci Conlin] will not be allowed to testify."[7] (*Id.* at Ex. 38.)

---

[6] These witnesses were: Joe Feliciani, Jarrod Henshaw, Damon Smith, Shard Kumar, and Ian Fallon. (ECF No. 30 at 16 n.16.)

[7] The Court notes that the Arbitrator had already ruled that Mr. Henshaw could testify if Famulus presented him for deposition and bore the costs. It appears that Famulus chose not to present Mr. Henshaw for deposition.

As to the ruling noted in 2(c), the Arbitrator denied Famulus's November 25, 2023, request that she also issue witness subpoenas to representatives from the third parties to testify at the November 27, 2023, hearing. (*Id.* at Exs. 44, 46.)

As explained above, the Arbitrator has broad discretion to set applicable procedures, and "[i]t is well established that courts must give great deference to arbitrators' discovery and evidentiary rulings." *Wells Fargo Advisors, LLC v. Watts*, 858 F. Supp. 2d 591, 599 (W.D.N.C. 2012), *aff'd in part, rev'd in part*, 540 F. App'x 229 (4th Cir. 2013). *See also* AAA Rule 35(d) ("An arbitrator or other person authorized by law to subpoena witnesses or documents **may** do so upon the request of any party or independently.") (emphasis added). An arbitrator's award should not be set aside "because the arbitrator refused to hear evidence that was immaterial, . . . cumulative, . . . or irrelevant." *Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 390 (4th Cir. 2000). Furthermore, the Court must defer to the Arbitrator's discovery and evidentiary rulings even if the court would have ruled differently. *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) ("Courts are not free to overturn an arbitral result because they would have reached a different conclusion if presented with the same facts.").

The fact that Famulus disagrees with the discovery and evidentiary rulings above is not a ground for vacatur. Rather, the Arbitrator's rulings may not be overturned unless they were in bad faith or so gross as to amount to affirmative misconduct. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987) (reversing the lower court's granting of a motion to vacate because, even assuming "that the arbitrator erred in refusing to consider the disputed evidence, his error was not in bad faith or so

gross as to amount to affirmative misconduct"). The Court finds that Famulus has simply not shown such conduct via these rulings in this case. Rather, these rulings were within the Arbitrator's broad discretion, especially given the late notice and requests by Famulus. Additionally, the Court finds that Famulus has failed to show that it was prejudiced by these rulings. *See, e.g., E.spire Commc'ns., Inc. v. CNS Commc'ns.*, 39 F. App'x 905, 910 (4th Cir. 2022) (agreeing with the district court's finding that "[t]he limitation on CNS's right to present evidence at the hearing did not deprive CNS of a fundamentally fair hearing"; "the limitation was necessary to prevent undue prejudice to e.spire that would have resulted from CNS's failure to disclose its proposed evidence").

<u>GoodRx's Proposed Injunction Order</u>

Famulus contends that the Arbitrator engaged in misconduct by accepting and signing, without modification, GoodRX's proposed injunction order that it submitted post-hearing. However, aside from arguing that **GoodRX's** conduct deviated from the parties' consent scheduling order, Famulus fails to explain why the **Arbitrator's** conduct should be deemed misconduct within the meaning of § 10(a)(3) of the FAA or how it deprived Famulus of a fundamentally fair hearing. Thus, the Court finds that such conduct by the Arbitrator is an insufficient basis to justify vacatur.

<u>Closing & Reopening the Hearing</u>

Famulus argues that the Arbitrator engaged in misconduct when she declared the hearing closed on January 17, 2024, (*see* Ex. 56 to Am. Petition), in contravention of AAA Rule 40(a), which states: "The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing

closed." Famulus contends that the Arbitrator never made this inquiry and, if she had, it would have been able to renew its request that the Arbitrator consider the Prime letter, among other unspecified evidence that was not presented at the hearing. (Am. Petition at 24.)

In response, GoodRX states that Famulus's contention is not true, as the record reflects that the Arbitrator made this inquiry at the close of the hearing and, thus, properly closed the hearing pursuant to Rule 40(a). (Opp. Memo to Am. Petition at 16.) The Court agrees with GoodRX.

The hearing transcript reflects the following exchange:

THE ARBITRATOR: All right. I have a few questions I have to ask you, and I'm going to start with the claimant. Were you given an opportunity to fully introduce any testimony or evidence on behalf of your client, subject to my rulings?

MR. LENDER: Yes, Your Honor.

THE ARBITRATOR: And the same for the respondent: Subject to my rulings, were you able to put on -- introduce testimony and evidence on behalf of your client?

MS. FARNSWORTH: No, Your Honor. Subject to your rulings -- I mean, you mean Express Scripts, WellDyne, Prime?

THE ARBITRATOR: Yes.

MS. FARNSWORTH: Subject to those three, yes, we were.

(Ex. 1 to Opp. Memo to Am. Petition, Hr'g Tr. at 1385:9-24.) Thus, the Court finds the Arbitrator properly closed the hearing.

Lastly, Famulus argues that the Arbitrator committed misconduct by reopening the hearing to allow only GoodRX to submit additional arguments in support of its claims. Specifically, Famulus take issue with the Arbitrator's February 2, 2024, email requesting

that, on the issue of damages, that GoodRX "point to all specifics instances in the record any documentary evidence introduced at the hearing supporting [GoodRX's] position" that it is entitled to certain requested damages had Famulus not breached the parties' agreement. (Ex. 57 to Am. Petition.) Famulus contends that it was deprived of a fundamentally fair hearing within the meaning of § 10(a)(3) because the Arbitrator did not give it an "equal opportunity to provide further argument in support of any of its claims." (Am. Petition at 24.) The Court disagrees.

The Court finds that Famulus mischaracterizes the Arbitrator's request – she did not ask for further or additional argument, but record cites on a specific issue in dispute. Further, Famulus fails to note that the Arbitrator provided Famulus with an opportunity to respond. (Ex. 57 to Am. Petition.) Accordingly, the Court finds such conduct by the Arbitrator is not misconduct within the meaning of § 10(a)(3).

### *Exceeded Her Powers*

Famulus also argues that vacatur is warranted because the Arbitrator exceeded her powers under § 10(a)(4) when she (1) ordered Famulus to pay GoodRX $20,000.00 for the deposition of two of Famulus's witnesses as a sanction for discovery abuses and (2) ordered Famulus to pay the cost of arbitration, including the Arbitrator's fee. Famulus contends that, in doing so, the Arbitrator exceeded her contractually delegated authority because the services agreement between the parties, which contains the arbitration agreement, states that "each Party shall bear its own expenses of the arbitration, including attorneys' fees." (Ex. 6 to Am. Petition at ¶ 13.4.)

In response, GoodRX argues that the above statement in the services agreement did not deprive the Arbitrator of authority to award, at her discretion, costs pursuant to

AAA Rule 49(c),[8] which the parties incorporated into the services agreement, because the arbitration clause is broad. GoodRX relies on *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009), wherein the Second Circuit stated that "[w]here an arbitration clause is broad, arbitrators have the discretion to order such remedies as they deem appropriate." *Id.* at 86. Further, GoodRX states that the Arbitrator had the authority to determine the arbitrability of disputes, that her decision regarding the scope of same is afforded great deference, and that she interpreted the services agreement as allowing an award of costs associated with the Arbitration as sanctions while finding that the agreement did not allow for an award of attorneys' fees. (Opp. Memo to Am. Petition at 20-21. *See* Ex. 1 to Am. Petition at ¶ 53(a) (finding that "[t]he Agreement specifically excludes an award of attorneys' fees" and citing to ¶ 13.4 of the Agreement).)

By its terms, Section 10(a)(4) allows courts to vacate arbitration awards only when arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). As the Supreme Court observed in *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, (2013), a plaintiff seeking relief under this provision bears the "heavy burden" of showing that the arbitrator acted outside the scope of the authority granted by the parties in their contract, by "issuing an award that simply reflects his own notions of economic justice

---

[8] Rule 49(c) states:

> In the final award or any order disposing of all of the case, the arbitrator shall assess the fees, expenses, and compensation provided in Rules R-55, R-56, and R-57. The arbitrator may also assess such fees, expenses, and compensation in any order or award disposing of part of the case. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

AAA, Commercial Rules, CommercialRules_Web_1.pdf (adr.org), effective September 1, 2022.

rather than drawing its essence from the contract." *Id.* at 569 (citations, brackets, and internal quotation marks omitted).

As noted, in the Final Award, the Arbitrator granted GoodRx's motion for costs and ordered Famulus to pay (among other costs) "$20,000 for reasonable and necessary costs in deposing Famulus's late disclosed witnesses." (Ex. 1 to Am. Petition at 35. *See also* Ex. 3 to Am. Petition.) Additionally, she ordered that the "fees and expenses of the [AAA] totaling $56,248.20, as well as the compensation and expenses of the Arbitrator totaling $105,203.78, shall be borne by [Famulus]." (*Id.*)

In sum, Famulus contends that paragraph 13.4 of the services agreement limits the Arbitrator's sanction authority to exclude awards of costs, expenses, and the arbitrator's fees.[9] The Court disagrees. The Fourth Circuit has held that "neither misinterpretation of a contract nor an error of law constitutes a ground on which an award can be vacated." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 861 (4th Cir. 2010) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193-94 (4th Cir. 1998). Additionally, "'[a]s long as the arbitrator [is] even arguably construing or applying the contract,' . . . [its] award[] will not be disturbed." *Id.* (quoting *Norfolk & W. Ry. Co. v. Transp. Commc'ns Int'l Union*, 17 F.3d 696, 700 (4th Cir. 1994).

---

[9] Paragraph13.4 reads in full:

> Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California without giving effect to any principles that provide for the application of the laws of another jurisdiction. Any dispute hereunder that cannot be resolved by and between the Parties shall be submitted to binding arbitration before a single arbitrator in in the domicile of the Party defending an action under this Agreement (without regard to defense of counter claims) in accordance with the Rules of the American Arbitration Association. Judgment upon the arbitration decision may be entered in any court of competent jurisdiction. The Parties agree that the arbitration decision shall be final and binding and that each Party shall bear its own expenses of the arbitration, including attorneys' fees.

(Ex. 6 to Am. Petition at ¶ 13.4.)

Upon review, nothing in paragraph 13.4 addresses or references sanction remedies. Further, the sentence therein that Famulus relies on does not require an opposite result from that reached by the Arbitrator. Accordingly, Famulus has failed to meet its heavy burden of showing that the Arbitrator acted outside the scope of the parties' services agreement in issuing these two rulings.

### *Manifest Disregard*

Lastly, Famulus argues that vacatur is appropriate under the manifest disregard standard. "A court may vacate an arbitration award under the manifest disregard standard only when a plaintiff has shown that: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 442 (4th Cir. 2020).[10]

Famulus argues that it presented the Arbitrator with the four-factor analysis[11] she must consider in determining whether to award injunction relief in its post-hearing brief, thereby satisfying the first prong. As to the second prong, Famulus claims that the Arbitrator knowingly rejected the law by awarding GoodRx duplicative remedies contrary to the evidence. Specifically, Famulus contends that the Arbitrator disregarded GoodRX's burden to show that its remedies available at law, such as monetary damages, are inadequate and, in doing so, ignored the testimony of GoodRX's own damages expert. In addition, it claims that the Arbitrator disregarded GoodRX's burden to show that the public

---

[10] The Fourth Circuit uses the law of the forum in which the case was filed when determining whether an arbitrator has manifestly disregarded the law. *See Apex Plumbing Supply*, 142 F.3d at 193 (applying Maryland and Fourth Circuit law despite contractual choice of law provision specifying the application of Pennsylvania law).

[11] *See* Exhibit 58 to Am. Petition at 17  ("[A] plaintiff [must] demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction" (citing *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017))).

interest would be disserved by an injunction when she refused to consider the Prime letter and testimony from a Prime representative.

GoodRX counters that the Court should reject Famulus's argument that the Arbitrator erred by finding GoodRX carried its burden to prove its entitlement to damages and injunctive relief because such an argument invites traditional appellate review, which is prohibited in this context. It further argues that there is, in fact, nothing duplicative about the award – GoodRX was awarded money damages to remedy *past* breaches and an injunction to remedy *future* breaches. Lastly, GoodRX states that it presented the Arbitrator "with a mountain of evidence" supporting its request for damages and injunctive relief.

"In order to secure judicial relief on [these] grounds, it must be shown that the arbitrator, in making her ruling, was 'aware of the law, understood it correctly, found it applicable to the case before [her], and yet chose to ignore it in propounding [her] decision.'" *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (declining to modify the underlying award) (citing *Remmey*, 32 F.3d at 149). *See also Patten*, 441 F.3d at 236 (vacating the award where the arbitrator explicitly stated that the "Management Agreement contained no explicit time limitation" but "nonetheless determined, however, that the Management Agreement 'necessarily contain[ed] an implied term limit'"); *Trademark Remodeling Inc. v. Rhines*, No. PWG-11-1733, 2012 WL 3239916, at *8 (D. Md. Aug. 6, 2012) (discussing the possibility that an arbitration award could be vacated for disregarding or modifying contract provisions, but finding that the plaintiff "presented no evidence that the arbitrator: (1) failed to discuss critical terminology;

(2) disregarded or modified unambiguous contract provisions; or (3) applied his own personal notions of right and wrong in issuing his award").

Further, the manifest disregard standard "is not an invitation to review the merits of the underlying arbitration." *Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012) (declining to modify the award because the decision whether to apply "the FCPA's procedural requirements is a question that was itself not clearly defined and was certainly subject to debate"). Nor is it used to establish that an arbitrator either misconstrued or misapplied the applicable law. *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). The scope of review means that a court "is limited to determine whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Remmey*, 32 F.3d at 146).

Here, the Court finds that Famulus has failed to show that the Arbitrator ignored the law concerning GoodRx's burden to show that it is entitled to damages and an injunction. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."). Indeed, other circuits have noted the difficulty that one who challenges an award on this ground faces when the arbitrator or panel does not go into detail as to its reasons for making its award. *See Prudential–Bache Sec., Inc. v. Tanner*, 72 F.3d 234, 240 (1st Cir. 1995) (explaining that it is exceedingly difficult for a party to satisfy the requirements for vacatur under a theory of "manifest disregard" where the arbitrators do not explain the reasons behind their award); *O.R. Securities, Inc. v. Professional Planning Assocs., Inc.*,

857 F.2d 742, 747 (11th Cir. 1988) ("In fact, when the arbitrators do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law."); *but see Advest, Inc. v. McCarthy*, 914 F.2d 6, 10 (1st Cir. 1990) ("In certain circumstances, the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug."). Notably, here, the Arbitrator was not required to go into such detail. *See United Steelworkers of Am. v. Enter. Wheel & Car. Corp*., 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."). While the parties were free to contract for the level of explanation required, there is no evidence before the Court that the parties requested a reasoned award in writing prior to the appointment of the Arbitrator. *See* AAA Rule 48(b) ("The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.") Moreover, to the extent Famulus is seeking vacatur based on the Arbitrator's failure to discuss all the evidence she relied upon to award injunctive relief, the Court notes that courts within the Fourth Circuit have not recognized a failure to do so as a ground for vacating an arbitrator's award. *See, e.g., MCI Constructors, Inc. v. Hazen & Sawyer, P.C*., No. 1:02CV396, 2009 WL 632930, at *7 (M.D.N.C. Mar. 9, 2009) ("An award being unreasoned is not a basis for vacatur under § 10(a)(4).") (citations omitted); *U.S. ex rel. Coastal Roofing Co. v. P. Browne & Assocs., Inc*., 771 F. Supp. 2d 576, 583 (D.S.C. 2010) (same).

The record reflects that the Arbitrator admitted into evidence several Prime-related documents and heard testimony from Famulus's founder and president, Michael

Szwajkos, regarding Famulus's relationship with Prime and documents reflecting communications between Famulus and Prime. She also considered comprehensive briefs submitted by both parties regarding the issue of whether or not GoodRX was entitled to injunctive relief. (Exs. 54, 55 to Opp. Memo to Am. Petition.) Upon review of the Final Award, the Arbitrator's grounds for awarding injunctive relief to GoodRX can be inferred from the facts and evidence presented at the hearing. Accordingly, the Court holds that the Arbitrator did not manifestly disregard the law in this case.

In sum, for all the reasons just discussed, the Court finds that Famulus has not carried its burden of proving that any of the grounds enumerated in § 10(a) for vacating the Arbitration Award exist, or that the Arbitrator acted in manifest disregard of law. Thus, the Court denies Famulus's amended petition to vacate.

## APPLICATION TO MODIFY OR CORRECT

In the alternative, Famulus asks the Court to modify or correct the Arbitration Award under § 11 of the FAA. (ECF No. 49, hereinafter "Application".)

If a district court finds that vacatur is inappropriate under § 10, it may modify or correct an arbitrator's award under § 11, which authorizes a district court to modify or correct an arbitration award under any of the following circumstances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. The statute further provides that "[t]he order may modify and correct the award, so as to affect the intent thereof and promote justice between the parties." 9 U.S.C.

§ 11. Section 11(c) does not allow the district court to substitute its judgment for that of the arbitrators, *see Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980), but allows the court to modify arbitration awards to reflect the clear intent of the arbitrator. *See Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1282-84 (5th Cir.1994).

In its Application, Famulus asks the Court to modify or correct the Arbitration Award under §§ 11(a) and (b) of the FAA. (*See* Memo to Modify or Correct.) At the heart of its arguments in support of modification is Famulus's complaint that GoodRX submitted to the Arbitrator a proposed order granting injunctive relief as part of GoodRX's post-hearing briefing and that the Arbitrator signed it without modification. (*Id.*) Flowing from this decision by the Arbitrator, Famulus argues that the Injunction Order is overbroad and punitive, thereby "serv[ing] as a death sentence for the entirety of Famulus'[s] business," and thus "requires modification or correction." (*Id.* at 9.) Its second argument is that the Injunction Order improperly binds innocent non-party individuals and thus requires modification because the Arbitrator exceeded her authority. (*Id.*) Both arguments appear to be based on Famulus's contention that the Arbitrator "awarded upon [] matter[s] not submitted to [her]." 9 U.S.C. § 11(b). The Court disagrees.

As noted above in addressing Famulus's claim that the Arbitrator exceeded her powers under § 10(a)(4), given the fact that the arbitration clause is broad and provides that "[a]ny dispute hereunder that cannot be resolved by and between the Parties shall be submitted to binding arbitration," the issue of remedies for breach of confidentiality obligations was submitted to arbitration. GoodRX asked for an injunction in its demand for arbitration, as well as for "[s]uch other relief as the Arbitrator may deem just and

equitable." (Ex. 8 to Am. Petition.) The parties also briefed this issue and put forth evidence of whether GoodRX was entitled to this relief, and, at the conclusion of the hearing, GoodRX submitted to the Arbitrator a proposed order granting an injunction. (*See* Ex. C to Memo to Modify or Correct at Ex. A.) Thus, the Court finds that the question of whether and to what extent Famulus should be enjoined from continuing to breach the confidentiality obligations of the agreement with GoodRX was "submitted" to the Arbitrator as that term is used in § 11(b). Accordingly, the Court finds that Famulus's substantive challenges to certain provisions of the Injunction Order fall outside the narrow confines of § 11.[12]

Famulus also states in a footnote[13] that two definitions in the Injunction Order – "Solution" and "Prohibited Business" – constitute a "material mistake in the description of a[] person, thing, or property referred to in the [Injunction Order]." 9 U.S.C. § 11(a). However, its contention is necessarily intertwined with its merit-based arguments above, which the Court has already found unpersuasive. Indeed, Famulus argues that these definitions were crafted out of whole cloth by GoodRX and, thus, were never a "matter" submitted to the Arbitrator. (Memo to Modify or Correct at 7.) Notably, Famulus has not argued nor pointed to contradictory definitions in the record that may support a finding

---

[12] As noted by GoodRX, Famulus had the opportunity to raise merit-based objections to its proposed injunction order or to provide the Arbitrator with an alternative proposed order, and it chose to do neither. (Opp. Memo to Application.) Famulus does not address in its memorandum to modify or correct why it did not raise substantive arguments to the Arbitrator; rather, it claims – without authority – that the submission of a proposed injunction order by GoodRX was improper. (Memo to Modify or Correct.) GoodRX counters this claim, stating that a submission of proposed order to articulate already-requested relief is common practice that occurred throughout arbitration and citing to *Cline v. HSBC Bank USA, N.A.*, wherein the court noted that "the practice of parties submitting proposed orders is typical and accepted practice in certain circumstances." No. 3:17-CV-02975, 2018 WL 1518358, at *7 (S.D. W.Va. Mar. 28, 2018). (Opp. Memo to Application at 9 n.5.) The Court is not convinced that such conduct by GoodRX was improper here.
[13] *See* Memo to Modify or Correct at 7 n.10.

that these definitions are an "evident material mistake" warranting modification or correction pursuant to § 11(a).

Lastly, Famulus requests modification or correction under § 11 to remedy the following issue: "The Injunction Order extends the exclusivity provision of the Services Agreement until June 19, 2025 (from February 15, 2024), but the Final Award finds that GoodRx's request for such an extension was "overreaching." (Am. Petition at 25. *See also* Memo to Modify or Correct at 1.) GoodRx does not dispute that this inconsistency exists between the Injunction Order and the Final Award and, subsequent to filing its petition to confirm, it has represented to the Court both in writing and orally that it does ***not*** seek to confirm or enforce paragraph 1 of the Injunction. (*See* Opp. Memo to Am. Petition at 15; *id.* at Ex. 1, Hr'g Tr. at 30:4-11.) To ensure the record is clear, paragraph 1 of the Injunction Order reads as follows:

> . . . it is now, therefore, ORDERED
> **1. The Exclusivity Obligations outlined in sections 2.1(d) and 3.3 of the Agreement, as amended, shall apply to Famulus until June 19, 2025;**
> 2. . . .

(Ex. 2 to Am. Petition at 2-3) (emphasis added.) However, in the Final Award, the Arbitrator concluded that granting GoodRX's request to extend the exclusivity period from August 18, 2022, to the date of the injunction, July 14, 2025, was overreaching. (Ex. 1 to Am. Petition at 33.) In its opposition memorandum to Famulus's Application, GoodRX states that "the Court could modify the Injunction to delete th[is] one sentence. Such a modification would be consistent with section 11 of the FAA." (Opp. Memo to Application at 6 n.2.)

The Court finds that it is evident upon the face of the Arbitration Award that paragraph 1 of the Injunction Order contains a material mistake as to the ending date of the exclusivity period given the Arbitrator's findings as to the exclusivity period set forth in the Final Award. *Wells Fargo Clearing Servs., LLC v. Polun*, No. CV ELH-20 3787, 2021 WL 5040335, at *7 (D. Md. Oct. 29, 2021) ("A miscalculation . . . is not "evident" unless it appears on the face of the award.") The Fourth Circuit has said that a district court has the power under § 11 "to do equity and justice," even when an "evident material mistake" is attributable to one or both parties to the arbitration. *Transnitro, Inc. v. M/V Wave*, 943 F.2d 471, 474 (4th Cir. 1991). There is no dispute that GoodRX authored the Injunction Order, and that the Arbitrator signed it, without modification. Further, GoodRX does not object to correcting its error by deleting paragraph 1 of the Injunction Order. There is also no dispute that the Final Award reflects the Arbitrator's ruling on the exclusivity period even though there is an evident material mistake in the description of this period in the Injunction Order. Presented with such a situation, the Court finds it would be neither just nor equitable to leave the Injunction Order uncorrected in favor of GoodRX when even GoodRX acknowledges its error and does not object to modification in favor of Famulus.

Accordingly, for the reasons set forth above, the Court declines to grant Famulus's request to modify or correct the Arbitration Award based on the two arguments discussed above. However, the Court grants Famulus's request to modify or correct the Arbitration Award in order to "promote justice between the parties" by deleting paragraph 1 of the Injunction Order. (Memo to Modify or Correct at 1.) Thus, the Court exercises its authority under § 11 and orders that the Arbitration Award be modified to delete paragraph 1 of the

Injunction Order to reflect the Arbitrator's ruling with regard to the exclusivity period as set forth in the Final Award.

## PETITION TO CONFIRM

Section 9 of the FAA provides that at any time within one year after an arbitration award is made, a party to the arbitration may apply to a federal district court for an order confirming the award. 9 U.S.C. § 9.  There is no dispute that GoodRX timely filed a petition to confirm. (ECF No. 1 in member case 9:24-mc-126-BHH.) As already discussed, a court's review of an arbitration award is substantially circumscribed, *see, e.g., Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91(1978) (per curiam) (stating that the scope of review of arbitration award is "among the narrowest known to the law" (internal quotation marks omitted)); *Upshur Coals Corp. v. United Mine Workers.  Dist. 31*, 933 F.2d 225, 229 (4th Cir.1991) (noting that arbitration awards are "accorded great deference"), and a court must confirm the arbitration award unless the award is vacated, modified, or corrected pursuant to sections 10 or 11 of the FAA. 9 U.S.C. § 9. The Court has denied Famulus's petition to vacate and has granted in part Famulus's Application to modify or correct, as set forth above. Accordingly, with this modification, the Court grants GoodRx's petition to confirm and confirms the Arbitration Award as modified.[14]

## MOTIONS TO SEAL

As noted at the outset, the parties filed several motions to seal in this case.

As to Famulus's first motion to seal filed on February 21, 2024, the parties dispute whether the following two documents should be sealed: the Injunction Order and the

---

[14] *Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors LLC*, No. 21-CV-8330 (LAK), 2022 WL 815273, at *6 (S.D.N.Y. Mar. 17, 2022) ("[R]emand to an arbitrator is not appropriate where the court can resolve any alleged ambiguities in the award by modification."), *aff'd in part, vacated in part, remanded,* 102 F.4th 572 (2d Cir. 2024).

Costs Order. (ECF Nos. 5, 6, 16.)[15] Famulus argues that these orders should be sealed because they contain confidential, commercial, and proprietary information subject to the Consent Protective Order ("CPO") dated July 18, 2023, that the parties entered into in the underlying arbitration. According to Famulus, disclosure of these orders would subject the parties and other non-party businesses whose information is referred to therein to considerable business and financial harm. GoodRX counters that neither order discusses highly confidential, commercially sensitive information or proprietary business information of either party. Rather, it argues that these orders direct a result and, as for the Injunction Order, it states that the Arbitrator envisioned that it would be made known to third parties. Thus, GoodRX states that no harm would come to Famulus or others if these orders are made public. Further, it contends that these orders are not subject to the CPO, as the CPO is silent with regard to orders from the Arbitrator.

On March 27, 2024, Famulus filed a second motion to seal. (ECF Nos. 29, 29-1). Therein, Famulus seeks to seal its memorandum in support of its amended petition to vacate, (ECF No. 29-2), and all 63 of its exhibits, which Famulus identified by name in an index of confidential documents attached to its motion. (*See* ECF No. 29-3.) On April 10, 2024, GoodRX partially opposed this motion. (ECF No. 34.) Specifically, with regard to the 63 exhibits identified, GoodRX opposed the sealing of the following: Exhibits 2-4, 11-12, 20-22, 31, 37-40, 42, 46 and 48. (*Id.*) However, at the hearing on this motion to seal, GoodRX represented to the Court that it **only** disputes the sealing of Exhibit 2, the Injunction Order, and Exhibit 3, the Costs Order, and that it no longer objects to sealing

---

[15] The Court notes that these orders are Exhibits B and C to Famulus's petition to vacate, (ECF No. 1), and Exhibits 2 and 3 to its amended petition to vacate. (ECF No. 30.)

the other exhibits listed on Famulus's index. (ECF No. 54, Hr'g Tr. at 75:21-79:6.)[16] Thus, the current dispute before the Court is whether the Injunction Order and the Costs Order issued by the Arbitrator should be sealed, with Famulus bearing the burden to prove that sealing is proper.

### Legal Standards

Although the district court's authority and discretion to seal judicial records or documents is well established in the Fourth Circuit, the court may do so only "if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (quotations omitted). Because public access advances judicial integrity and serves the public interest, access "may be abrogated only in unusual circumstances." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988). *See also Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). The party seeking the sealing of documents bears the burden of overcoming the right of access to the documents. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 578 (4th Cir. 2004).

There are two sources for the public's right of access to court documents – the common law and the First Amendment. *Id.* at 575. "The common law presumes a right to inspect and copy judicial records and documents." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F2d 178, 180 (4th Cir. 1988) (citing *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589,

---

[16] The Court notes that, on March 28, 2024, it entered a text order granting GoodRX's motion to seal its memorandum in opposition to Famulus's petition to vacate and exhibits attached thereto (ECF No. 18) while it took Famulus's first motion to seal (ECF No. 5) under advisement. (ECF No. 31.) In GoodRX's motion to seal it stated that it filed this motion to seal "out of abundance of caution" given the "live dispute" over the sealing of documents and "to minimize any claw-back of documents if the Court agrees with Famulus on the sealing matter." (ECF No. 18.) Notably, neither the Injunction Order nor the Costs Order were exhibits attached to GoodRX's memorandum in opposition to Famulus's petition to vacate. (*See* ECF No. 18 at 2-7).

597 (1978)). This presumptive right to judicial documents can be "rebutted only by showing that countervailing interests heavily outweigh the public interests in access." *Doe v. Public Citizen*, 749 F.3d 246, 264 (4th Cir. 2014). Likewise, the First Amendment guarantees access but only "to particular judicial records and documents." *Id.* at 266. *See, e.g., In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (stating that First Amendment right of access applies to criminal plea and sentencing hearings); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252–53 (4th Cir. 1988) (providing the same as to filings related to summary judgment). In the civil context, there is very little caselaw about application of the First Amendment right of access other than summary judgment motions. When the First Amendment provides a right of access to records, that right may only be overcome by a "compelling government interest" and only if the denial of access is "narrowly tailored to serve that interest." *Doe*, 749 F.3d at 266.

Usually, the distinction between the rights of access afforded by the common law and the First Amendment is "significant" because the common law "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *In re Baltimore Sun Co.*, 886 F.2d 60, 64 (4th Cir. 1989); *Rushford*, 846 F.2d at 253. Because of this distinction, the district court is generally directed to first "determine the source of the right of access with respect to each document . . . [so it] then can it accurately weigh the competing interests at stake." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988).

Upon determining the source of the right of access, a district court may seal court documents once it has "(1) provided public notice of the request to seal and allow[ed] interested parties a reasonable opportunity to object, (2) consider[ed] less drastic

alternatives to sealing the documents, and (3) provide[ed] specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft*, 218 F.3d at 302.

### Source of the Right of Access and Arguments

At the hearing, the Court asked each party its position with regard to the source of right of access that applies to these two documents and for their arguments on sealing.

GoodRX stated that the common law right of access applies and argued that Famulus failed to carry its burden to show that these two orders contain confidential information, that disclosure would harm Famulus, and that that harm outweighs the public interest in access to these orders. (ECF No. 54, Hr'g Tr. at 79:7-82:191:9-12.) According to GoodRX, the CPO entered into between the parties in the underlying arbitration applies to records of information designated pursuant to the CPO during the arbitration, not subsequent orders issued by the Arbitrator. (*Id.*) GoodRX further noted that the parties did not agree in the CPO to seal these subsequent orders issued by the Arbitrator. (*Id.*) Lastly, as to the Injunction Order, GoodRX claimed that the injunction by its own terms envisions that it will be made public, as the order directs Famulus to notify certain third parties that it has been prohibited from offering certain services. (*Id.*) When asked whether GoodRX would agree, as a less drastic alternative to sealing, to redact the third-party names named in paragraph 8 of the Injunction, counsel indicated that this alternative would seem to be adequate under the circumstances, as it would still allow GoodRX to enforce paragraph 8 given the language therein. (*Id.*)

In response, Famulus argued that the Injunction Order contains commercially sensitive information, including Famulus's confidential business practices and business

relationships with a variety of third parties who are identified by name and played no role in the underlying arbitration. (*Id.* at 84:10-19.) It also noted that the arbitration was a confidential proceeding and, if Famulus is successful on its petition to vacate the Final Award, which includes these two orders, then "there is no reason whatsoever to inject disinformation into the public domain." (*Id.* at 84:20-86:14.) As for redacting third-party names listed in the Injunction Order, Famulus stated that was not agreeable to this less drastic remedy. (*Id.* at 87:7-88:12.) Lastly, when asked about the source of right of access that it contends applies to these documents, Famulus did not provide the Court with a clear answer. (*Id.* at 86:15-87:6.)

### Discussion

The Court holds, first, that the common law standard, rather than the First Amendment, applies to these two documents. To determine if the First Amendment applies, the Fourth Circuit uses the "experience and logic" test," which asks: "(1) 'whether the place and process have historically been open to the press and general public,' and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 291 (4th Cir. 2013) (quoting *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)).

Arbitration proceedings have not historically been open to the press or the public, and public access does not play a significant role in arbitration proceedings. Further, unlike judicial opinions, arbitration awards are often not public if the parties agree to keep them secret. Although attaching an arbitration award to a motion to confirm such an award might be similar to attaching a document to a motion for summary judgment, which is

afforded First Amendment protection, *Rushford*, 855 F.2d at 252, the Court's role in confirming an arbitration award that has already been decided by an arbitration panel is vastly different from its role at summary judgment, when the Court must evaluate the facts and applicable legal standards to determine whether there is a genuine dispute of any material fact. Fed. R. Civ. p. 56. Thus, in the Court's view, the common law standard, rather than the First Amendment standard, applies to these two documents.

The Court further holds that, even under the common law standard, Famulus has not met its burden of showing that the public's right of access is "***heavily*** outweigh[ed]" by competing interests or that "unusual circumstances" require abrogating the public's right to access. *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (emphasis added).

The Court first notes that confidentiality agreements do not on their own justify closure. *Benchmark Elecs., Inc. v. Myers*, No. GJH-19-242, 2019 WL 6528587, at *8 (D. Md. Dec. 3, 2019). Thus, while the arbitration proceeding was confidential and the parties agreed pursuant to a CPO to protect the confidentiality of documents disclosed during arbitration, neither the confidential nature of the proceeding nor the CPO itself supports sealing two orders issued by the Arbitrator after the arbitration hearing was closed.

Moreover, the Court is not convinced that the Injunction Order contains Famulus's confidential and proprietary business information. Famulus's generalized description of alleged confidential commercial information fails to provide a sufficient basis for the Court to overcome the common law presumption of access to documents.  Upon its own review, the Court does not find, as argued by Famulus, that paragraphs 1 and 2 of the Injunction

Order contain Famulus's "confidential business practices." (ECF No. 54, Hr'g Tr. at 87:22-88:3.)[17]

However, as noted above and also argued by Famulus, paragraph 8 of the Injunction Order identifies by name third parties with whom Famulus has a commercial business relationship. These third parties were not involved in the arbitration proceeding. The Court finds it appropriate, as a less drastic means than sealing, to redact said names from paragraph 8 of the Injunction Order. GoodRx does not object to this redaction.

Accordingly, for these reasons, the Court denies Famulus's first and second motions to seal, (ECF Nos. 5, 29), with regard to sealing the Arbitrator's Injunction Order and Costs Order,[18] but otherwise grants said motions. The Court orders that the parties redact all third-party names identified in paragraph 8 of the Injunction Order prior to filing.

## CONCLUSION

Having found for all the reasons set forth above that vacatur is inappropriate under § 10 of the FAA and that the Arbitrator did not "manifestly disregard" the law, but that modification of the Arbitration Award is warranted, the Court **denies** Famulus's amended petition to vacate the Arbitration Award (ECF No. 30); **grants in part** Famulus's application to modify or correct the Arbitration Award (ECF No. 49); and **grants as modified by the Court**, GoodRX's petition to confirm the Arbitration Award (ECF No. 1 in member case 9:24-mc-126-BHH). The Arbitration Award, as modified, is confirmed.

Further, for the reasons stated herein, the Court **denies** Prime's motion to intervene (ECF No. 33); **grants in part and denies** Famulus's first motion to seal (ECF

---

[17] Moreover, the Court notes that paragraph 1 of the Injunction Order is no longer at issue based on its ruling above.
[18] S*ee* ECF No. 5-1 at 1, Exhibits B & C; 29-3 at 2, Exhibits 2 & 3.

No. 5); **grants in part and denies in part** Famulus's second motion to seal (ECF No. 29); **grants** GoodRX's motion to seal its memorandum and exhibit in support of its opposition to Famulus's amended petition to vacate (ECF No. 35); **grants** GoodRX's motion to seal the Prime Agreement (ECF No. 43.); **grants** Prime's motion to seal (ECF No. 46); **grants in part and denies in part** Famulus's motion to seal its memorandum and exhibits in support of its Application, namely, Exhibit H, Injunction Order, should not be sealed (ECF No. 52); and **grants** GoodRX's motion to seal its memorandum and exhibits in support of its opposition to Famulus's Application. (ECF No. 53.)

     **IT IS SO ORDERED.**

                  /s/ Bruce Howe Hendricks
                  United States District Judge

September 11, 2024
Charleston, South Carolina