**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Famulus Health LLC, | |
| Petitioner, | C/A No. 9:24-cv-00886 |
| v. | C/A No. 9:24-mc-00126 |
| | (consolidated) |
| GoodRx, Inc., | |
| Respondent. | |
| GoodRx, Inc., | |
| Petitioner, | |
| v. | |
| Famulus Health LLC, | |
| Respondent. | |

**GOODRX, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
SUPPLEMENTARY PROCEEDINGS, ATTACHMENT, THE APPOINTMENT OF A
RECEIVER, AND RELATED RELIEF IN CONNECTION WITH ITS JUDGMENT
<u>AGAINST FAMULUS HEALTH LLC</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................................... 4

A.    Confirmation of the Arbitration Award .............................................................. 4

B.    Famulus's Detour Into Bankruptcy ..................................................................... 5

C.    This Court Confirms The Award and Injunction ................................................ 7

III.   ARGUMENT AND AUTHORITIES ....................................................................... 8

A.    Supplemental Proceedings Are Necessary To Protect GoodRx's Valid Judgment and Ensure Execution ....................................................................................................... 8

B.    Appointment of a Receiver Is Proper to Protect GoodRx's Valid Judgment and Execution 12

     1.   The Security Is Inadequate to Satisfy the Debt ........................................ 14

     2.   Famulus's Financial Position Warrants the Appointment of a Receiver .................... 15

     3.   Famulus Has Engaged in Fraudulent Conduct and Has a History of Resisting Disclosure ................................................................................. 15

     4.   Legal Remedies Would Be Inadequate to Protect GoodRx's Interest in Famulus's Assets ................................................................................. 17

     5.   There Is Imminent Danger of Famulus's Assets Being Lost, Concealed, Diminished in Value, or Squandered ............................................................. 17

     6.   The Harm to GoodRx by Denial of Appointment of a Receiver Would Outweigh Any Harm to Famulus by Appointment ................................................ 18

     7.   The Court Has Confirmed GoodRx's Award ............................................. 19

     8.   GoodRx's Interests Will Be Well Served By the Appointment of a Receiver ........... 19

C.    There Is Good Cause to Permit Registration of The Judgment for Enforcement in Other Districts 20

D.    An Injunction Is Necessary to Protect GoodRx's Valid Judgment and Ensure Execution ..................................................................................................................... 21

IV.   CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ag-Chem Equip. Co. v. Daggerhart*,
    281 S.C. 380 (Ct. App. 1984) ...............................................13

*Am. Bank & Tr. Co. v. Bond Int'l Ltd.*,
    No. 06-CV-0317-CVE-FMH, 2006 WL 2385309 (N.D. Okla. Aug. 17, 2006) .....................18

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*,
    999 F.2d 314 (8th Cir.1993).................................................13

*Ballard v. Combis*,
    No. CV 0:14-1839-JFA, 2017 WL 11687554 (D.S.C. Jan. 12, 2017) ....................................21

*Brill & Harrington Invs. v. Vernon Sav. & Loan Ass'n*,
    787 F. Supp. 250 (D.D.C. 1992) .................................................14

*Britton v. Green*,
    325 F.2d 377 (10th Cir.1963).................................................13

*Caisson Corp. v. Cnty. W. Bldg. Corp.*,
    62 F.R.D. 331 (E.D. Pa. 1974) .................................................11

*Chesapeake Bank v. Berger*,
    No. 4:14CV66, 2014 WL 5500872 (E.D. Va. Oct. 30, 2014) .................................................18

*Countybank v. EM1 Labs, LLC*,
    No. CV 6:18-1523-TMC, 2019 WL 7905809 (D.S.C. Dec. 20, 2019).................12, 14, 17, 19

*First United Bank & Tr. v. Square at Falling Run, LLC*,
    No. CIV.A. 1:11CV31, 2011 WL 1563108 (N.D. W. Va. Mar. 31, 2011)............................20

*Genesis Cap., LLC v. Lauravin Luxury Apts. Homes, LLC*,
    No. 23-795 (JEB), 2023 WL 4314151 (D.D.C. July 3, 2023) .................................................15

*Grupo Mexicano De Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999).................................................22

*Johnson v. Serv. Mgmt., Inc.*,
    319 S.C. 165 (Ct. App. 1995), *aff'd*, 324 S.C. 198 (1996) .................................................17

*Leone Indus. v. Associated Packaging, Inc.*,
    795 F. Supp. 117 (D.N.J. 1992) .................................................13

*Liberte Cap. Grp., LLC v. Capwill*,
    462 F.3d 543 (6th Cir. 2006)................................................................20

*Myles v. Sapta*,
    139 F.3d 912 (10th Cir. 1998)..............................................................13

*Nelson v. Beaufort Liquidation Ctr., LLC*,
    No. 9:07-811-PMD, 2007 WL 9747705 (D.S.C. Apr. 2, 2007) ...............23

*Owen v. Soundview Fin. Grp., Inc.*,
    71 F. Supp. 2d 278 (S.D.N.Y. 1999) ....................................................21

*Sky Cable, LLC v. Coley*,
    No. 5:11CV00048, 2016 WL 3926492 (W.D. Va. July 18, 2016), *aff'd in part,*
    *appeal dismissed in part*, 886 F.3d 375 (4th Cir. 2018) ..........................12

*Soc'y of Lloyd's v. Est. of McMurray*,
    274 F.3d 1133 (7th Cir. 2001).................................................................9

*Spray Drift Task Force v. Burlington Bio-Med. Corp.*,
    429 F. Supp. 2d 49 (D.D.C. 2006) ........................................................21

*Stooksbury v. Ross*,
    No. 3:09-CV-498, 2012 WL 12842528 (E.D. Tenn. May 23, 2012).......17

*Synovus Bank v. Hyatt*,
    No. 2:18-CV-3052-BHH-BM, 2019 WL 13269933 (D.S.C. June 4, 2019) ..........................13

*Travelers Indem. Co. v. Hash Mgmt., Inc.*,
    173 F.R.D. 150 (M.D.N.C. 1997) ...........................................................9

*Ultimate Combustion Co. v. Fuecotech, Inc*.,
    No. 12-60545-CIV, 2015 WL 11622426 (S.D. Fla. Apr. 28, 2015) ..................12, 14

*United States v. D'Elegance Mgmt. Ltd.*,
    217 F.3d 843 (4th Cir. 2000)..................................................................21

*United States v. Feldman*,
    324 F. Supp. 2d 1112 (C.D. Cal. 2004) ..................................................11

*U.S. Dep't of Labor v. Wolf Run Mining Co.* ,
    452 F.3d 275 (4th Cir. 2006)..................................................................23

*Williams v. Ests. LLC*,
    No. 1:19-CV-1076, 2022 WL 17490729 (M.D.N.C. Dec. 7, 2022) .................12, 14

**Statutes**

9 U.S.C. § 13 ..............................................................................................1

18 U.S.C. § 152 ................................................................................................................16

28 U.S.C. § 1963 ......................................................................................................... *passim*

S.C. Code § 15-39-310 .................................................................................................2, 8, 9

S.C. Code § 15-39-330 ....................................................................................................2, 8

S.C. Code § 15-39-410 .............................................................................................2, 8, 9, 17

S.C. Code § 15-39-430 ...............................................................................................2, 8, 13

S.C. Code § 15-39-440 ...............................................................................................2, 8, 22

S.C. Code § 15-65-10 .....................................................................................................2, 8

**Court Rules**

Fed. R. Civ. P. 65 .......................................................................................................3, 22, 25

Fed. R. Civ. P. 66 ....................................................................................................2, 8, 12

Fed. R. Civ. P. 69 ......................................................................................................... *passim*

S.C. R. Civ. P. 69 ............................................................................................................9

**Other Authorities**

12 Federal Practice & Procedure Civil § 3012, Westlaw (3d ed. updated June
    2024) ........................................................................................................................12

Shawn M. Grady, *To the Victor Belong the Spoils? Turnover Receivership As A
    Post-Judgment Remedy*, 57-FEB Hous. Law. 14, January/February 2020 ............................10

iv

Petitioner GoodRx, Inc. ("**GoodRx**"), by and through its undersigned attorneys, moves for supplementary proceedings, attachment, the appointment of a receiver, and related relief in connection with its judgment against Respondent Famulus Health LLC ("**Famulus**" and, together with GoodRx, the "**Parties**") and, in support thereof, sets forth as follows:

## I.    <u>INTRODUCTION</u>

On September 11, 2024, the Honorable Bruce Howe Hendricks entered a judgment (the "**Judgment**")[1] in favor of GoodRx against Famulus pursuant to 9 U.S.C. § 13, confirming an arbitration award (the "**Award**") in favor of GoodRx rendered in an arbitration before the American Arbitration Association ("**AAA**") with Judge Elizabeth Ray presiding as the Arbitrator. The Award (and now Judgment) consists of (i) damages in the amount of $55,485,483; (ii) costs and fees in the amount of $104,420.20; (iii) reimbursement of AAA fees in the amount of $82,461.89; and (iii) and a permanent injunction issued against Famulus. Interest began to run on the Award as of March 16, 2024 (30 days after the issuance of the Award) at a rate of 5% per annum.

On October 11, 2024, GoodRx obtained a writ of execution on the Judgment; the writ was retuned *nulla bona* on November 6, 2024. By Famulus's own admission, it will be unable to satisfy the monetary portion of the Judgment. Moreover, Famulus contends that certain services it offers are not subject to the Injunction. As set forth more fully below, commencing supplemental proceedings, appointing a receiver, and enjoining Famulus from dissipating its assets are essential

---

[1] Dist. Ct. (-126) ECF No. 55. "Bky. ECF No. ___," as used herein, are references to docket entries in Case No. 24-02019-EG in the United States Bankruptcy Court for the District of South Carolina; "Dist. Ct. (-126) ECF No. ___," as used herein, are references to docket entries in Case No. 9:24-mc-00126-BHH in this Court ("**Confirmation Action**"); and "Dist. Ct. (-886) ECF No. ___," as used herein, are references to docket entries in Case No. 9:24-cv-00886-BHH in this Court ("**Vacatur Action**").

to the fair and equitable enforcement of this Court's Judgment. Accordingly, GoodRx moves the Court, pursuant to Rules 66 and 69 of the Federal Rules of Civil Procedure and S.C. Code §§ 15-39-310 (order for discovery), 15-39-330 (examination of witness), 15-39-410 (property applied to execution), 15-39-430 (appointment of receiver), 15-39-440 (prohibition of transfer or of interference with property), and 15-65-10 (appointment of receiver), to permit supplementary proceedings against Famulus, including the issuance of an order:[2]

(i) appointing a receiver to take charge of Famulus and its assets for the purpose of continuing and/or winding up the business, as necessary and appropriate, and taking charge of any assets or property belonging to Famulus and applying them towards the satisfaction of the Judgment and to take any action as necessary and appropriate, including seeking discovery, in connection with that effort;

(ii) directing Famulus, its members, and employees to respond to post-judgment discovery issued by this Court and/or the receiver;[3]

(iii) requiring Famulus to appear before this Court and/or the receiver to answer questions under oath and, so that a meaningful examination may be had, allowing the receiver to obtain discovery from Famulus and/or any other person or entity and/or to examine them under oath, in the manner provided by the Federal Rules of Civil Procedure, concerning the property, assets, funds, holdings, and/or financial status of Famulus and any transfers or disposition of same;

(iv) enjoining and restraining Famulus, until the Judgment is satisfied or unless otherwise directed by the receiver, from changing, altering, destroying and defacing any

---

[2] GoodRx will email a proposed order consistent with its requested relief to chambers and counsel for Famulus.

[3] Proposed discovery requests are attached hereto as **Exhibit A**.

documents, records, and/or instruments relating to its property, assets, funds, holdings, and/or financial status, whether held individually or jointly, unless authorized by the receiver;

(v) enjoining and restraining Famulus, until the Judgment is satisfied, from damaging, concealing, encumbering, granting a security interest in, hypothecating, transferring, selling, disposing, alienating, and/or removing from the jurisdiction of this Court, and/or otherwise interfering with any property, assets, funds, accounts, and/or holdings, whether held individually and/or jointly (including, but not limited to, any interest in any limited liability company, corporation, or partnership and any cash on hand or in any bank and any funds due to Famulus), which are not exempt by law from execution, unless authorized by the receiver; and

(vi) directing that any property or assets belonging to Famulus not exempt from execution be taken possession of by the receiver and—if determined by the receiver to be subject to the Injunction—turned over to GoodRx or, otherwise, sold or liquidated and the proceeds applied towards the satisfaction of GoodRx's monetary judgment in accordance with the directives of the Receiver.

GoodRx also moves the Court, pursuant to 28 U.S.C. § 1963, to order that the final Judgment in this case be permitted to be registered for satisfaction in any judicial district in the United States.

In addition to the foregoing remedies, pending resolution of this motion, GoodRx seeks an order from this Court for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure preventing Famulus from disposing of, moving, transferring, trading, assigning, conveying, transporting, or draining any property, assets, funds, accounts, and/or holdings (including, but not limited to, any interest in any limited liability company, corporation, or partnership and any cash on hand or in any bank and any funds due to Famulus), now or

subsequently in its possession or control, whether held individually and/or jointly, to avert satisfying the Judgment.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     Confirmation of the Arbitration Award

In or around June 2020, the Parties entered into the *GoodRx Services Agreement* effective as of July 1, 2020 (the "**Services Agreement**"). Because of Famulus's breaches of the Services Agreement, on February 10, 2023, GoodRx filed a Demand for Arbitration against Famulus seeking to recover damages and injunctive relief. *See* Dist. Ct. (-126) ECF No. 1 (Petition to Confirm) ¶¶ 7-8. Following a five-day, in-person hearing and post-hearing briefing, Judge Elizabeth Ray, presiding as the duly appointed arbitrator, issued the Award. The Award provides:

> [A]. Claimant, GoodRx, Inc., shall recover from Respondent, Famulus Health, LLC, the sum of $55,485,483 as damages for the breach of the Agreement/Amendment between the Parties.
>
> …
>
> [C]. A permanent injunction against Famulus Health, LLC shall issue simultaneously with this Final Award. Attached as Exhibit A to this Final Award is a copy the executed permanent injunction [("**Injunction**")].
>
> [D]. An Order Granting, as amended, GoodRx's Motion for Costs against Famulus Health, LLC shall issue simultaneously with this Final Award in the amount of $81,500 with an additional amount of $2920.20 in costs plus an additional $20,000 for reasonable and necessary costs in deposing Famulus's late disclosed witnesses.
>
> [E]. The fees and expenses of the American Arbitration Association totaling $56,248.20, as well as the compensation and expenses of the Arbitrator totaling $105,203.78, shall be borne by Respondent, Famulus Health, LLC. Therefore, Famulus Health LLC has to reimburse GoodRx, Inc., an amount of $82,461.89.
>
> [F]. The above sums are to be paid on or before thirty days from the date of this award and shall bear interest at the rate of 5% per annum beginning 30 days from the date of this Award until paid in full.

*Id.* ¶ 10.

On February 21, 2024, Famulus filed the Vacatur Action, seeking to vacate the Award, and on February 22, 2024—before GoodRx was aware of the Vacatur Action—GoodRx filed the Confirmation Action, seeking to confirm the Award. Famulus filed an Amended Petition to Vacate in the Vacatur Action on March 27, 2024. Oral argument was held on April 30, 2024. Following oral argument, Famulus filed an application to modify or correct the Award, which GoodRx opposed. *See generally* Dist. Ct. (-886) ECF No. 52 (Confirmation Opinion and Order).

### B. Famulus's Detour Into Bankruptcy

While the Vacatur and Confirmation Actions were pending, on June 3, 2024, Famulus filed for bankruptcy. *See* Bky. ECF No. 1 (Petition). In order to get into bankruptcy, Famulus represented that its financial condition was dire: it had less than $3.7 million in assets and more than $62 million in liabilities, including the more than $55 million owed to GoodRx. Bky. ECF No. 48 (Summary of Assets and Liabilities) at 1, 15. The majority of Famulus's assets are in the form of accounts receivable. Bky. ECF No. 48 (Summary of Assets and Liabilities) at 9. Famulus further represented that it owned only "two unique technologies – 'Echo' and 'FAST,'" *see* Bky. ECF No. 7 (Szwajkos Declaration in support of Chapter 11 Petition and First Day Pleadings) ("**Szwajkos Decl.**") ¶¶ 4-6, that were worth approximately $1.5 million, *see* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 7. Famulus also represented that, if the Court confirmed the Award, Famulus would have to cease operations. Bky. ECF No. 7 (Szwajkos Decl.) ¶ 12.

But less than a month after it filed for bankruptcy, Famulus moved to dismiss its chapter 11 case. *See generally* Bky. ECF No. 73 (Motion to Dismiss). GoodRx opposed the Motion to Dismiss, arguing, among other things, that (i) Famulus was insolvent, and "its only material income stream [was] derived exclusively from misusing GoodRx's confidential information;" (ii) Famulus had "no going concern operation, no assets of material value, and no prospect of financial rehabilitation;" (iii) the appointment of a "disinterested chapter 7 trustee . . . to liquidate

[Famulus's] remaining assets, investigate and pursue estate claims and causes of action, . . . and distribute any remaining cash and proceeds to creditors" was "the only viable option for winding up [Famulus's] affairs;" and (iv) Famulus's "insolvency, flagrant disregard for the Injunction, daily incurrence of administrative expenses (including postpetition damages in favor of GoodRx), and inability to restructure provide[d] clear 'cause' to convert [Famulus's] chapter 11 case." *See* Bky. ECF No. 84 (Response to Motion to Dismiss Case and Motion to Convert Case to Chapter 7) ¶¶ 2-4.

In response to GoodRx's opposition, Famulus painted a different picture than the one it had presented in prior pleadings. For example, Famulus represented that it had developed and owned a third and "incredibly super exciting" technology—a "business intelligence tool" that it provided to CVS Pharmacy, Inc. pursuant to a contract with the retail pharmacy chain. *See* Bky. ECF No. 99 (Reply in Support of Motion to Dismiss) at 2; Ex. B (Deposition of Michael Szwajkos dated Aug. 1, 2024 ("**Szwajkos Dep.**")) 122:14-125:11, 126:14-16.[4] Famulus admitted that it had entered into the contract with CVS in the fall of 2023 and that the technology "went live" in December 2023—long before Famulus had filed its Petition. Ex. B (Szwajkos Dep.) 126:19-127:14. Famulus further claimed that the revenues generated under the CVS contract accounted for approximately thirty-five to forty percent of Famulus's gross monthly revenue. Bky. ECF No. 99 (Reply in Support of Motion to Dismiss) at 2; Ex. B (Szwajkos Dep.) 135:25-136:16.

Furthermore, Famulus denied that, if the Court confirmed the Award, Famulus would have to cease operations—claiming that the revenues from the business intelligence tool would keep it afloat in a post-confirmation world. Ex. B (Szwajkos Dep.) 115:12-21. Famulus also claimed that

---

[4] GoodRx deposed Famulus on August 1, 2024, in connection with the Motion to Dismiss Famulus's chapter 11 case. A true and correct copy of excerpts from that deposition are attached hereto as **Exhibit B**.

the business intelligence tool falls outside the scope of the Injunction. *Id.* at 122:14-123:23; 128:10-129:5. Famulus, however, would not provide further details of this business intelligence tool, citing confidentiality restrictions. *Id.* at 124:7-20; 125:12-126:13. Accordingly, other than Famulus's conclusory statements, GoodRx has no way to know if Famulus's business intelligence tool falls within the scope of the Injunction and, if it does, how valuable the asset is. However, even if not subject to the Injunction, the tool is still an asset that can be used to satisfy at least part of GoodRx's Judgment.

On August 20, 2024, following an August 16, 2024 hearing on the Motion to Dismiss, the Bankruptcy Court delivered a bench ruling granting the Motion to Dismiss and dismissing Famulus's chapter 11 case, in part on the grounds that GoodRx's more than $55 million claim against Famulus was merely a "contingent debt" because the Court had not yet ruled on the pending Vacatur and Confirmation Actions. *See* Ex. C (Aug. 20, 2024 Bky. Hr'g Tr.) 11:3-24, 19:25-20:18.

### C. This Court Confirms The Award and Injunction

On September 11, 2024, the Court issued an Opinion and Order resolving the Vacatur and Confirmation Actions. *See* Dist. Ct. (-126) ECF No. 52; Dist. Ct. (-886) ECF No. 72. As relevant here, the Court (i) denied Famulus's Petition to Vacate, (ii) granted GoodRx's Petition to Confirm, and (iii) modified the Injunction to remove the first paragraph, which GoodRx had advised it would not enforce.[5] Dist. Ct. (-126) ECF No. 52; Dist. Ct. (-886) ECF No. 72. The Court issued a judgment confirming the Award on the same day. Dist. Ct. (-126) ECF No. 55 (Judgment); Dist.

---

[5] The Court also held that references to certain entities must be redacted if the Injunction is publicly filed ("**Injunction**"). A modified version of the Injunction, which complies with the Court's rulings, is attached hereto as **Exhibit D**.

Ct. (-886) ECF No. 75 (same).[6] The Writ of Execution on the Judgment was returned on November 6, 2024. Dist. Ct. (-126) ECF No. 60; Dist. Ct. (-886) ECF No. 80.

## III.  ARGUMENT AND AUTHORITIES

GoodRx now moves this Court (a) to commence supplementary proceedings pursuant to Fed. R. Civ. P. 69 and S.C. Code §§ 15-39-310, -330, -430 & -440, including directing Famulus, its members, and employees to respond to post-judgment discovery and questioning; (b) for an order, pursuant to Fed. R. Civ. P. 66 and S.C. Code §§ 15-39-430, -440 & -65-10, appointing Michael M. Beal as a receiver to control the management of Famulus in a manner consistent with the Judgment including the Injunction, to cause Famulus to, if deemed appropriate by the Receiver, turn over to GoodRx or liquidate or sell its assets, to distribute the net sales proceeds towards the payment of the Judgment, and to take any other steps necessary in collecting on the judgment and enforcing the Injunction; (c) for registration of the judgment in other districts pursuant to 28 U.S.C. § 1963; and (d) for an order, pursuant to Fed. R. Civ. P. 69 and S.C. Code §§ 15-39-410 & -440, enjoining and restraining Famulus from moving, transferring, trading, assigning, conveying, transporting, or draining any funds, accounts, or assets, now or subsequently in its possession or control, whether held individually and/or jointly, to avert satisfying the Judgment unless directed by the receiver.

### A.  Supplemental Proceedings Are Necessary To Protect GoodRx's Valid Judgment and Ensure Execution

Pursuant to Rule 69, in the absence of a contrary federal statute, the procedure upon "execution [of a money judgment]—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R.

---

[6] The Court also denied as moot GoodRx's motion for a Temporary Restraining Order and the Appointment of a Pre-Judgment Receiver. Dist. Ct. (-126) ECF No. 53 (Receiver Opinion and Order); Dist. Ct. (-886) ECF No. 73 (same).

Civ. P. 69(a)(1). Under South Carolina law, a "judge may order any property of the judgment debtor, not exempt from execution, in the hands either of himself or any other person or due to the judgment debtor, to be applied toward the satisfaction of the judgment." S.C. Code § 15-39-410. Additionally, after an execution has been issued against a judgment debtor's property, the judgment creditor (here, GoodRx) is entitled "at any time . . . to an order from a judge of the circuit court requiring such judgment debtor to appear and answer concerning his property." *See* S.C. Code § 15-39-310.

Accordingly, the South Carolina statute and the state and federal rules grant the Court broad powers to compel the application of discovered assets to satisfy the judgment. *See* S.C. Code §15-39-410; Fed. R. Civ. P. 69(a). A district court may summarily compel the application of discovered assets to satisfy a judgment. *Soc'y of Lloyd's v. Est. of McMurray*, 274 F.3d 1133, 1135-36 (7th Cir. 2001); *see* S.C. Code §15-39-410. And "[s]upplementary proceedings in aid of judgment enforcement [can] include garnishment, arrest, mandamus, contempt, appointment of a receiver, and discovery proceedings." *Travelers Indem. Co. v. Hash Mgmt., Inc.*, 173 F.R.D. 150, 152 (M.D.N.C. 1997). Additionally, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2); *see also* S.C. R. Civ. P. 69 ("In the aid of the judgment or execution, the judgment creditor . . . may examine any person, including the judgment debtor, in the manner provided in these rules for obtaining discovery."). The South Carolina rule "is substantially the Federal Rule" and "brings to the assistance of the judgment creditor the right to obtain discovery under Rules 26 through 37." S.C. R. Civ. P. Ann. 69 notes.

A writ of execution was issued against Famulus on October 11, 2024, and returned *nulla bona* on November 6, 2024. Dist. Ct. (-126) ECF No. 60; Dist. Ct. (-886) ECF No. 80. There is no dispute that Famulus does not currently have sufficient assets to pay GoodRx's monetary Judgment, which continues to accrue interest. *See* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 1 (listing total assets as $3,679,312.86); Bky. ECF No. 49 (Statement of Financial Affairs) at 1 (listing gross revenue to for the first six months of 2024 as $5,092,611).

But Famulus has an ever-changing narrative regarding its financial viability. *Compare* Bky. ECF No. 7 (Szwajkos Decl.) ¶¶ 4-6 (listing two technologies: 'Echo' and 'FAST') *with* Bky. ECF No. 99 (Reply in Support of Motion to Dismiss) at 2 and Ex. B (Szwajkos Dep.) 122:14-125:11, 126:14-16 (discussing a third technology, a business intelligence tool); *compare* Bky. ECF No. 7 (Szwajkos Decl.) ¶ 12 (stating if the Award was confirmed, Famulus would have to cease operations) *with* Ex. B (Szwajkos Dep.) 115:12-21 (stating that Famulus could continue as a business post-confirmation of the Award due to the revenues from the business intelligence tool). Indeed, more than half of Famulus's assets are in the form of accounts receivable, *see* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 9, which might never be collected. Additionally, accounts receivable by nature can easily be lost, squandered, concealed, diminished in value, or otherwise lost. *See* Shawn M. Grady, *To the Victor Belong the Spoils? Turnover Receivership As A Post-Judgment Remedy*, 57-FEB Hous. Law. 14, January/February 2020, at 14 (noting that accounts receivables "were easily concealed" prior to the enactment of the Texas Turnover Statute).

There is also evidence that Famulus will prioritize other creditors over the Judgment. For example, Goodroot, LLC; MJSAJH and Associates LLC; and Michelle Frank—all members of Famulus—were listed as creditors in the bankruptcy. *See* Bky. ECF No. 48 (Summary of Assets

and Liabilities) at 15-16. And Famulus asserted that, upon dismissal from bankruptcy, its "plan would be to immediately move forward and . . . pay 100 percent in full within 90 days [to] all other [c]reditors [than GoodRx] and settle all debts." Ex. E (Aug. 16, 2024 Bky. Hr'g Tr.) 25:11-17; *see also* Bky. ECF No. 99 (Reply in Support of Motion to Dismiss) at 2. There is also evidence that Famulus has not observed corporate formalities; for example, the majority of the fees paid in connection with the arbitration were not paid by Famulus but rather Michael Szwajkos or MJSAJH and Associates LLC. *See* Ex. F (AAA Financial History for Famulus) (noting one payment, on December 15, 2023, from Famulus; one payment, on March 22, 2023 from Michael Szwajkos; and three payments from MJSAJH and Associates LLC).

Finally, Famulus has a long history of dodging discovery sought to understand its business. It was sanctioned for its discovery abuses by the Arbitrator. *See* Dist. Ct. (-126) ECF No. 52 (Confirmation Opinion and Order) at 25. And, more recently, Famulus's corporate representative refused to answer questions about its business development tool. Ex. B (Szwajkos Dep.) 124:7-20; 125:12-126:13.

Accordingly, supplemental proceedings, including post-judgment discovery in conjunction with the other remedies sought by GoodRx, are necessary and appropriate here in aid of execution of the Court's judgment including collecting assets to satisfy GoodRx's monetary Judgment and ensure compliance with the Injunction. The purpose of discovery under Rule 69 is to allow the judgment creditor to identify assets from which the judgment may be satisfied and, therefore, a broad inquiry to uncover any hidden or concealed assets of the judgment debtor is warranted. *See Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974); *see also United States v. Feldman*, 324 F. Supp. 2d 1112, 1116 (C.D. Cal. 2004) ("Debtor examinations are intended 'to allow the judgment creditor a wide scope of inquiry concerning property and business affairs of

the judgment debtor' and 'to leave no stone unturned in the search for assets which might be used to satisfy the judgment.'") (citations omitted).

B.     **Appointment of a Receiver Is Proper to Protect GoodRx's Valid Judgment and Execution**

Appointment of a receiver is permitted under state and federal law.  Federal Rule of Civil Procedure 69 provides that state law generally governs procedures on execution of a judgment and directs the district court to look to state rules, but a federal statute governs to the extent it applies. Fed. R. Civ. P. 69.  And Federal Rule of Civil Procedure 66 governs the appointment of a receiver in federal court and provides that "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued.  But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."  Fed. R. Civ. P. 66.  Some courts have concluded that Rule 66 is merely a "general procedural rule" and, thus, state statutes govern the appointment of a receiver "when such action is taken in aid of execution of a judgment."   *Sky Cable, LLC v. Cole*y, No. 5:11CV00048, 2016 WL 3926492, at *20 (W.D. Va. July 18, 2016), *aff'd in part, appeal dismissed in part*, 886 F.3d 375 (4th Cir. 2018) (collecting cases); *see also* 12 Federal Practice & Procedure Civil § 3012, Westlaw (3d ed. updated June 2024).

Other courts, however, have held that the "appointment of a receiver in federal court is a matter of federal law." *Ultimate Combustion Co. v. Fuecotech, Inc*., No. 12-60545-CIV, 2015 WL 11622426, at *2 (S.D. Fla. Apr. 28, 2015), *report and recommendation adopted*, No. 12-60545-CV, 2015 WL 11622422 (S.D. Fla. May 18, 2015); *see also Williams v. Ests. LLC*, No. 1:19-CV-1076, 2022 WL 17490729, at *7 (M.D.N.C. Dec. 7, 2022) (applying federal law to post-judgment appointment of a receiver); *Countybank v. EM1 Labs, LLC*, No. CV 6:18-1523-TMC, 2019 WL 7905809, at *1 (D.S.C. Dec. 20, 2019) (same), *report and recommendation adopted*, No. 6:18-

CV-1523-TMC, 2020 WL 502638 (D.S.C. Jan. 31, 2020); *Synovus Bank v. Hyatt*, No. 2:18-CV-3052-BHH-BM, 2019 WL 13269933, at *1 (D.S.C. June 4, 2019) (same). Although some courts of appeals have agreed—holding "the appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles," *Myles v. Sapta*, 139 F.3d 912 (10th Cir. 1998) (unpublished table decision, text available at 1998 WL 45494, at *3); *see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir.1993); *Britton v. Green,* 325 F.2d 377, 382 (10th Cir.1963)—the Fourth Circuit does not appear to have spoken on this issue.

In any event, both South Carolina law and federal law weigh heavily in favor of the appointment of a receiver in these circumstances. Under South Carolina law, a court may "appoint a receiver of the property of the judgment debtor in the same manner and with the like authority as if appointment was made by the court, according to [S.C. Code] § 15-65-10." S.C. Code § 15-39-430. South Carolina courts do not consider post-judgment receivers a drastic remedy. *See Ag-Chem Equip. Co. v. Daggerhart*, 281 S.C. 380, 383 (Ct. App. 1984). Indeed, post-judgment appointment of a receiver in South Carolina "is commonly made almost as a matter of course where it appears that the judgment debtor has property which ought to be applied to the satisfaction of the judgment." *Id.* Here, Famulus has property which should be applied to the satisfaction of the Judgment; accordingly, the Court should appoint a receiver to marshal and liquidate that property.

Under federal law, "[a] receiver may be appointed 'to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment.'" *Aviation Supply Corp.*, 999 F.2d at 317 (quoting *Leone Indus. v. Associated*

*Packaging, Inc.,* 795 F. Supp. 117, 120 (D.N.J. 1992)). Federal courts generally consider a number of factors in determining whether they should appoint a receiver, including:

(a) inadequacy of the security to satisfy the debt;

(b) financial position of the debtor;

(c) fraudulent conduct on defendant's part;

(d) inadequacy of legal remedies;

(e) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

(f) probability that harm to moving party by denial of appointment would outweigh injury to parties opposing appointment;

(g) probability of moving party's success in the action and the possibility of irreparable injury to its interest in the property; and

(h) whether moving party's interests sought to be protected will in fact be well-served by receivership.

*Countybank*, 2019 WL 7905809, at *1 (citing *Brill & Harrington Invs. v. Vernon Sav. & Loan Ass'n*, 787 F. Supp. 250, 253-54 (D.D.C. 1992)). "Pre-judgment standards for the appointment of a receiver are stricter than post-judgment standards." *Ultimate Combustion*, 2015 WL 11622426, at *2. If applicable, these factors support the Court exercising its discretion to appoint a receiver to protect GoodRx's interest in Famulus's assets. *Williams*, 2022 WL 17490729, at *9 (appointing receiver to protect plaintiff's interest in defendant's assets).

### 1.      The Security Is Inadequate to Satisfy the Debt

As outlined above, the value of Famulus's assets—as represented by Famulus under penalty of perjury in connection with its bankruptcy petition—barely scratch the surface of GoodRx's monetary judgment. *See supra* Section II.B, III.A. Thus, even if Famulus does not lose, conceal, or squander assets, it will already be difficult for GoodRx to collect in full on its Judgment against Famulus. This factor therefore weighs in favor of the appointment of a receiver

who can safeguard GoodRx's interest in what little of Famulus's property appears to exist. *See, e.g.*, *Genesis Cap., LLC v. Lauravin Luxury Apts. Homes, LLC*, No. 23-795 (JEB), 2023 WL 4314151, at *3 (D.D.C. July 3, 2023) (Boasberg, C.J.) (holding that, where the plaintiff showed "that there [were] questions about the value of the [defendant's] property relative to the debt it carrie[d]," this factor "weigh[ed] in favor of a receivership").

### 2. Famulus's Financial Position Warrants the Appointment of a Receiver

Even before the Court confirmed the Award, Famulus was insolvent. It represented to the bankruptcy court that its liabilities were nearly twice its assets, *see* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 1, 15-19 (representing that Famulus has approximately $3.7 million in assets and approximately $62 million in liabilities, inclusive of its debt to GoodRx), and it could not pay its debts as they came due, *see* Ex. B (Szwajkos Dep.) 97:17-100:8. Indeed, setting aside the Judgment, Famulus had $6.5 million in debt (not including the Judgment) *after* it paid various creditors over $2 million in the 90-day preference period leading up to its bankruptcy. *Compare* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 15-16 (approximately $6.5 million in liabilities, exclusive of its debt to GoodRx) *with* Bky. ECF No. 49 (Statement of Financial Affairs) at 15 (noting over $2 million in payments 90 days prior to filing for bankruptcy). This factor therefore weighs in favor of the appointment of a receiver. *See, e.g.*, *Genesis Cap.*, 2023 WL 4314151, at *3 (holding that, where the defendant's "financial condition [was] suspect," including because "[i]t ha[d] not made any payments on its outstanding debt in months," this factor "weigh[ed] in favor of a receivership").

### 3. Famulus Has Engaged in Fraudulent Conduct and Has a History of Resisting Disclosure

In order to get into bankruptcy, Famulus represented that its financial condition was dire. *See generally, e.g.*, Bky. ECF No. 1 (Petition); Bky. ECF No. 7 (Szwajkos Decl.); Bky. ECF No. 48

(Summary of Assets and Liabilities); Bky. ECF No. 49 (Statement of Financial Affairs). But less than a month later, Famulus moved to dismiss its bankruptcy, asserting that it could pay its creditors. *See generally* Bky. ECF No. 73 (Motion to Dismiss); Bky. ECF No. 99 (Reply in Support of Motion to Dismiss). Instead of owning only two technologies worth approximately $1.5 million, Bky. ECF No. 7 (Szwajkos Decl.) ¶¶ 4-6 (describing two technologies); Bky. ECF No. 48 (Summary of Assets and Liabilities) at 7 (listing value of capitalized software costs), Famulus apparently owned (and has owned since the fall of 2023), Famulus claimed it also owned a third technology that would allow Famulus to generate additional revenue, *see* Bky. ECF No. 99 (Reply in Support of Motion to Dismiss) at 2; Ex. B (Szwajkos Dep.) 122:14-125:3, 126:14-16. And instead of claiming that Famulus would have to cease operations if the Court confirmed the Award, *see* Bky. ECF No. 7 (Szwajkos Decl.) ¶ 12, Famulus claimed that it could now continue operating based on the revenues generated under a profitable contract with CVS, even with a $55 million (and growing) Judgment against it, *see* Ex. B (Szwajkos Dep.) 115:12-21.[7] In short, Famulus said one thing to get into bankruptcy and another to get out, which could be considered fraudulent conduct supporting the appointment of a receiver. And, as discussed above, Famulus has a history of failing to be forthcoming in discovery, *see supra* Section III.A, which suggests it may be challenging to identify assets available to satisfy the Judgment[8] or ascertain if Famulus is complying with the Injunction. At a minimum, Mr. Szwajkos cannot be trusted as a responsible steward of Famulus, which is yet another basis upon which to appoint a receiver in this case. *See*

---

[7] Of course, those revenues and that third technology should be applied to satisfy at least part of the Judgment, to the extent they are not prohibited by the Injunction.

[8] The assets available to satisfy the Judgment may be in the hands of an entity other than Famulus. *See* S.C. Code § 15-39-410; *see also Johnson v. Serv. Mgmt., Inc.*, 319 S.C. 165, 168 (Ct. App. 1995) (stating that "[a]fter conducting supplementary proceedings, the trial court may order non-exempt property of the judgment debtor in the hands of a third party or owed to the judgment debtor to be applied toward satisfaction of the judgment"), *aff'd*, 324 S.C. 198 (1996).

*Stooksbury v. Ross*, No. 3:09-CV-498, 2012 WL 12842528, at *4 (E.D. Tenn. May 23, 2012) (appointing a receiver where the court concluded "fraudulent conduct has likely occurred in an effort to frustrate the Plaintiff's claim, and such conduct likely will continue to occur if the Court declines to appoint a receiver").

### 4. Legal Remedies Would Be Inadequate to Protect GoodRx's Interest in Famulus's Assets

As outlined above, *see supra* II.B, III.A, Famulus does not have enough assets to make GoodRx whole. If Famulus proceeds to lose, conceal, squander, mismanage, or otherwise dispose of its assets (which, as set forth below, is likely), GoodRx will recover even less of the damages to which it is entitled. Moreover, the Court confirmed an Injunction that enjoins Famulus from, among other things, continuing to use, market, offer, or sell particular technologies. Ex. D (Injunction) at 3. If Famulus were to dispose of any of its technology without the direction of the receiver and prior to an assessment concerning whether the technology is subject to the Injunction—e.g., by selling it to Prime or another pharmacy-benefit manager—the resulting irreparable damage to GoodRx could be exacerbated. This factor therefore weighs in favor of receivership. *See Countybank*, 2019 WL 7905809, at *3 (appointing a receiver upon finding that judgment creditor would be more harmed than the defendant); *Chesapeake Bank v. Berger*, No. 4:14CV66, 2014 WL 5500872, at *6 (E.D. Va. Oct. 30, 2014) (appointing a receiver to "prevent irreparable harm"); *Am. Bank & Tr. Co. v. Bond Int'l Ltd.*, No. 06-CV-0317-CVE-FMH, 2006 WL 2385309, at *9 (N.D. Okla. Aug. 17, 2006) (appointing a receiver where the benefits outweigh any potential harm).

### 5. There Is Imminent Danger of Famulus's Assets Being Lost, Concealed, Diminished in Value, or Squandered

Famulus has admitted that it intends to transfer its assets to other creditors, including insiders. Specifically, in its reply in further support of its Motion to Dismiss the bankruptcy case,

Famulus argued that the Bankruptcy Court should dismiss its chapter 11 case because, "within a relatively short period of time, [Famulus would] be able to pay all creditors, ***other than the disputed claim GoodRx***, in full from its current operations." Bky. ECF No. 99 (Reply in Support of Motion to Dismiss) at 2 (emphasis added). And, during the hearing on the Motion to Dismiss, Famulus testified that, if the Court dismissed its chapter 11 case, it would proceed "immediately" to pay creditors other than GoodRx. Ex. E (Aug. 16, 2024 Bky. Hr'g Tr.) 25:11-17. One of those creditors is Famulus insider Michelle Frank, who marketed the Famulus technology to Prime in violation of the Services Agreement. *See* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 15; *see also* Bky. ECF No. 49 (Statement of Financial Affairs) at 2 (identifying Ms. Frank as an "insider"). Another is software engineer Avizva, who developed the Famulus technology based upon GoodRx's confidential information in violation of the Services Agreement. *See* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 15. Notably, Avizva received $1 million in payments in the 90 days prior to Famulus's bankruptcy. Bky. ECF No. 49 (Statement of Financial Affairs) at 15. Taking Famulus at its word, it already has begun paying its creditors other than GoodRx, thereby dissipating the assets available to satisfy the Judgment—perhaps entirely. *See* Bky. ECF No. 48 (Summary of Assets and Liabilities) at 1, 15-19 (showing that Famulus has approximately $3.7 million in assets and $6.5 million in liabilities, exclusive of its debt to GoodRx). The appointment of a receiver would assist the district court in achieving an equitable distribution of Famulus's assets and prevent Famulus from rushing to pay those creditors whose interests in Famulus's assets are subordinate to GoodRx's.

### 6. The Harm to GoodRx by Denial of Appointment of a Receiver Would Outweigh Any Harm to Famulus by Appointment

As discussed above, the harm to GoodRx by denial of the appointment of a receiver would be irreparable: (i) Famulus does not have adequate assets to satisfy its debt to GoodRx;

(ii) Famulus's financial position is weak; (iii) Famulus has engaged in and is therefore likely to continue to engage in fraudulent conduct and evasive discovery tactics and further frustrate GoodRx's ability to collect on its judgment; (iv) there is imminent danger of Famulus losing, concealing, mismanaging, or otherwise disposing of its assets; and (v) legal remedies would be inadequate to compensate GoodRx for such loss, concealment, mismanagement, or disposition. On the other hand, there would be ***no harm*** to Famulus should the Court appoint a receiver. Thus, this factor weighs in favor of appointing a receiver. *See Countybank*, 2019 WL 7905809, at *3 (appointing a receiver upon finding that judgment creditor would be more harmed than the defendant).

### 7. The Court Has Confirmed GoodRx's Award

GoodRx has a valid, enforceable judgment against Famulus. Dist. Ct. (-126) ECF No. 55 (Judgment); Dist. Ct. (-886) ECF No. 75 (same). The Judgment includes over $55 million dollars in monetary damages (which is collecting interest) plus an Injunction against Famulus, its use and offering of certain technology, and employees. *See* Dist. Ct. (-126) ECF No. 1 (Petition to Confirm) at ¶ 10; Ex. D (Injunction). Therefore, this factor weighs in favor of receivership.

### 8. GoodRx's Interests Will Be Well Served By the Appointment of a Receiver

Absent the appointment of a receiver, there is imminent danger that Famulus will proceed to lose, conceal, mismanage, or otherwise dispose of assets to which GoodRx has a right. Indeed, given Famulus's admission that, upon the dismissal of its chapter 11 case, it intended to pay all of its creditors ***other than GoodRx*** (some of which are insiders), Bky. ECF No. 99 (Reply in Support of Motion to Dismiss) at 2 (emphasis added), there is a significant likelihood that there will be few, if any, assets left for GoodRx to recover. And the majority of the assets are in the form of accounts receivable, which can be easily converted to cash and deposited for use by Famulus. A

receiver would act to "safeguard the disputed assets, administer the property as suitable, and [] assist the [C]ourt in achieving a final, equitable distribution of the assets." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Accordingly, GoodRx's interests will be well served by the appointment of a receiver, and this factor likewise weighs in favor of receivership.

Given that all factors weigh in favor of appointing a receiver, appointment of a receiver is warranted. *See First United Bank & Tr. v. Square at Falling Run, LLC*, No. CIV.A. 1:11CV31, 2011 WL 1563108, at *12 (N.D. W. Va. Mar. 31, 2011). GoodRx proposes Michael M. Beal, Esq., whose curriculum vitae is attached hereto as **Exhibit G**, as an appropriate receiver for Famulus. Mr. Beal has served as a receiver and as counsel to receivers in numerous matters. *See* Ex. G. Mr. Beal is willing and ready to serve as a receiver.

## C. There Is Good Cause to Permit Registration of The Judgment for Enforcement in Other Districts

Federal law allows "[a] judgment in an action for the recovery of money . . . [to] be registered by filing a certified copy of the judgment in any other district . . . when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. § 1963. This procedure "is in addition to other procedures provided by law for the enforcement of judgments." *Id.* Under this statute, "[g]ood cause exists when the defendant has substantial property in the foreign district and insufficient property in the rendering district to satisfy the judgment." *Ballard v. Combis,* No. CV 0:14-1839-JFA, 2017 WL 11687554, at *1 (D.S.C. Jan. 12, 2017) (quoting *United States v. D'Elegance Mgmt. Ltd.*, 217 F.3d 843 (4th Cir. 2000) (unpublished table decision, text available at 2000 WL 966034, at *8)).

District courts are not required to specify one foreign district under this statute; it is within the Court's power to issue an order permitting a petitioner to register the judgment in any United States District Court. *See, e.g.*, *Spray Drift Task Force v. Burlington Bio-Med. Corp.*, 429 F. Supp.

2d 49, 51-52 (D.D.C. 2006) (finding that the plaintiff's "showing that [the defendant] lacks assets in the District of Columbia but possesses assets elsewhere is good cause to authorize the registration of this judgment in other U.S. District Courts"). "Judgment creditors . . . need not show exact evidence of assets and registration may be granted upon a lesser showing." *Owen v. Soundview Fin. Grp., Inc.*, 71 F. Supp. 2d 278, 279 (S.D.N.Y. 1999) (internal quotation marks and citations omitted) (holding that sufficient "good cause" was established under 28 U.S.C. § 1963 where the judgment creditor issued an affidavit stating that the debtor had sold his home in the district and moved to another state and the creditor, in response, "failed to submit any evidence to the contrary"). As shown above, Famulus, through its own admission, lacks sufficient assets to fulfill the judgment rendered against it. To the extent Famulus has assets that are currently in the possession of third parties, it is entirely possible that those assets are outside of South Carolina because Famulus conducts business across the United States. Famulus made payments in the 90 days prior to bankruptcy that may need to be clawed back from entities that are not located in South Carolina. *See* Bky. ECF No. 49 (Statement of Financial Affairs) at 15. And Famulus represented that it would make payments to creditors who are likewise not located in South Carolina. Finally, should it be necessary and appropriate to pierce the corporate veil of Famulus to access the assets of Famulus's members, many of its members reside in Connecticut. Thus, the Court has "good cause" to order registration of the Judgment in other districts pursuant to 28 U.S.C. § 1963.

### D. An Injunction Is Necessary to Protect GoodRx's Valid Judgment and Ensure Execution

GoodRx further requests an order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining and restraining Famulus, unless otherwise instructed by the receiver and until the Judgment is satisfied, from transferring, disposing of, or otherwise interfering with any interest

he may have in all non-exempt property, assets, funds, and/or holdings, whether held singly or jointly, and further prohibiting him from altering, destroying or defacing any documents, records, and/or instruments relating to his property, assets, funds, holdings, and/or financial status. *See* Fed. R. Civ. P. 65, 69; S.C. Code § 15-39-440.

Such injunctive relief is well within this Court's power. Under South Carolina law, a "judge may also, by order, forbid a transfer or other disposition of the property of the judgment debtor not exempt from execution and any interference therewith." S.C. Code § 15-39-440. "[T]he well-established general rule [is] that a judgment establishing the debt [is] necessary before a court of equity [will] interfere with the debtor's use of his property." *Grupo Mexicano De Desarrollo S.A. v. Alliance Bond Fund, Inc*., 527 U.S. 308, 321 (1999). Since GoodRx has a valid and enforceable judgment against Famulus, the court may use its equitable powers to effectuate that judgment.

"A court should consider four factors . . . in determining whether to enter a TRO or preliminary injunction:

> (1) the likelihood of irreparable harm to the plaintiff if the [TRO] is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest."

*Nelson v. Beaufort Liquidation Ctr., LLC*, No. 9:07-811-PMD, 2007 WL 9747705, at *2 (D.S.C. Apr. 2, 2007) (quoting *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 280 (4th Cir. 2006)).

All four of these factors are satisfied in this case and favor enjoining Famulus from transferring assets that would otherwise satisfy the Judgment. As discussed above, GoodRx has a valid and enforceable judgment—it has already succeeded on the merits. Second, there is a significant likelihood of irreparable harm to GoodRx without an injunction. *See supra* Sections

III.B.4-6.   Third, any harm the entry of an injunction would cause to Famulus is outweighed by the harm to GoodRx if no injunction is issued and Famulus is permitted to freely dissipate its assets.  *See supra* Sections III.B.4-6.   And, finally, the public interest weighs in favor of the entry of an injunction here, because the public has a profound interest in, among other things: (i) parties to contracts complying with the terms of those contracts; (ii) breaching parties making non-breaching parties whole; (iii) parties to binding arbitrations complying with the terms of binding arbitration awards and injunctions; (iv) parties subject to confidentiality or nondisclosure agreements complying with the terms of those agreements; (v) safeguarding innovators' intellectual property from misuse, misappropriation, and dissemination; (vi) furthering the strong federal policy in favor of arbitration—i.e., assisting parties in avoiding the expense and delay associated with litigation; and (vii) ensuring that judgment debtors satisfy the judgments against them.  Famulus's conduct over the course of the last several months has contravened each and every one of these public interests.

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, GoodRx respectfully requests that this Court:

a.    Permit supplementary proceedings against Famulus, including the issuance of an order:

(i)  appointing Michael M. Beal as a receiver to take charge of Famulus and its assets for the purpose of continuing and/or winding up the business, as necessary and appropriate, and taking charge of assets or property belonging to Famulus and applying them towards the satisfaction of the Judgment and to take any action as necessary and appropriate, including seeking discovery, in that effort;

(ii) directing Famulus, its members, and employees to respond to post-judgment discovery issued by this Court and/or the receiver;

(iii) requiring Famulus to appear before this Court and/or the receiver to answer questions under oath and, so that a meaningful examination may be had, allowing the receiver to obtain discovery from Famulus and/or any other person or entity and/or to examine them under oath, in the manner provided by the Federal Rules of Civil Procedure, concerning the property, assets, funds, holdings, and/or financial status of Famulus and any transfers or disposition of same;

(iv) enjoining and restraining Famulus, until the Judgment is satisfied or unless otherwise directed by the receiver, from changing, altering, destroying, and defacing any documents, records, and/or instruments relating to his property, assets, funds, holdings, and/or financial status, whether held individually or jointly, unless authorized by the receiver;

(v) enjoining and restraining Famulus, until the Judgment is satisfied, from damaging, concealing, encumbering, granting a security interest in, hypothecating, transferring, selling, disposing, alienating, and/or removing from the jurisdiction of this Court, and/or otherwise interfering with any property, assets, funds, accounts, and/or holdings, whether held individually and/or jointly (including, but not limited to, any interest in any limited liability company, corporation, or partnership and any cash on hand or in any bank and any funds due to Famulus), which are not exempt by law from execution, unless authorized by the receiver; and

(vi) directing that any property or assets belonging to Famulus not exempt from execution be taken possession of by the Receiver and either turned over to GoodRx or sold or liquidated and the proceeds applied towards the satisfaction of GoodRx's monetary judgment in accordance with the directives of the receiver;

b. Pursuant to 28 U.S.C. § 1963, order that the final judgment in this case be permitted to be registered for satisfaction in any judicial district in the United States; and

c.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoin Famulus from disposing of, moving, transferring, trading, assigning, conveying, transporting, or draining any property, assets, funds, accounts, and/or holdings (including, but not limited to, any interest in any limited liability company, corporation, or partnership and any cash on hand or in any bank and any funds due to Famulus), now or subsequently in his possession or control, whether held individually and/or jointly, to avert satisfying the Judgment; and

d.     Any other relief the Court deems appropriate.

This the 11th day of November 2024, in Columbia, South Carolina.

MURPHY & GRANTLAND, P.A.

s/ *J. Thomas McBratney, III*
J. Thomas McBratney, III, Esq.
Federal Bar No. 10517
Anthony W. Livoti, Esquire
Federal Bar No. 6952
4406-B Forest Drive
Post Office Box 6648
Columbia, SC  29260
Tel.: (803) 782-4100
Fax: (803) 782-4140

*Attorneys for GoodRx, Inc.*

David J. Lender, Esquire
Jennifer Brooks Crozier, Esquire
Alexandra Rose, Esquire
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for GoodRx, Inc.- admitted pro hac vice*