# EXHIBIT D

1  UNITED STATES BANKRUPTCY COURT

2  DISTRICT OF SOUTH CAROLINA

3  Case No. 24-02019-EG

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6

7  FAMULUS HEALTH, LLC,

8

9        Debtor.

10 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11               United States Bankruptcy Court

12               King and Queen Building

13               145 King Street, Room 225

14               Charleston, SC 29401

15

16               August 20, 2024

17               2:05 PM

18

19

20

21 B E F O R E :

22 HON ELISABETTA GASPARINI

23 U.S. BANKRUPTCY JUDGE

24

25 ECRO: UNKNOWN

1 HEARING re Continued Motion to Dismiss Case Filed by Michael
2 Conrady on behalf of Famulus Health, LLC. (07/01/2024) (Doc.
3 73)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 Transcribed by: Sonya Ledanski Hyde

1 UNITED STATES DEPARTMENT OF JUSTICE
2   Attorneys for The United States Trustee
3   Strom Thurmond Federal Building
4   1835 Assembly Street
5   Columbia, SC 29201
6
7 BY: KEITH POSTON (TELEPHONICALLY)
8
9 FOX ROTHSCHILD LLP
10   Attorneys for Prime Therapeutics, LLC
11   33 S. Sixth Street, Suite 3600
12   Minneapolis, MN 55402
13
14 BY: ELLIE J. BARRAGRY (TELEPHONICALLY)
15
16 FOX ROTHSCHILD LLP
17   Attorneys for Prime Therapeutics, LLC
18   2 W. Washington Street, Suite 1100
19   Greenville, SC 29601
20
21 BY: M. KEVIN McCARRELL (TELEPHONICALLY)
22
23 ALSO PRESENT TELEPHONICALLY:
24 MICHAEL SZWAJKOS, Debtor's Representative
25

1 A P P E A R A N C E S :
2
3 CAMPBELL LAW FIRM, PA
4   Attorneys for Debtor
5   PO Box 684
6   Mount Pleasant, SC 29465
7
8 BY: KEVIN CAMPBELL (TELEPHONICALLY)
9
10 WEIL GOTSHAL & MANGES LLP
11   Attorneys for GoodRx
12   767 Fifth Avenue
13   New York, NY 10153
14
15 BY: DAVID COHEN (TELEPHONICALLY)
16     DAVID LENDER (TELEPHONICALLY)
17
18 ROGERS TOWNSEND, LLC
19   Attorneys for GoodRx
20   1221 Main Street
21   Columbia, SC 29201
22
23 BY: MICHAEL WEAVER (TELEPHONICALLY)
24
25

1           P R O C E E D I N G S
2       CLERK: All, rise. The United States Bankruptcy
3 Court for the District of South Carolina is now in session.
4 The Honorable Elisabetta G.M. Gasparini presiding.
5       THE COURT: Good afternoon. We're here this
6 afternoon on the case of Famulus Health, LLC. It's a
7 Chapter 11 case and it is Case Number 24-02019, and it's a
8 Motion to Dismiss the case. The Court held an evidentiary
9 hearing on August 16th, which was Friday, and the Court is
10 ready to rule on the matter orally on the docket -- on the -
11 - at today's hearing.
12       I know that the courtroom deputy had asked for
13 appearances. I'm going to read the names of who, we
14 believe, is on. And if there's anyone I don't call, please
15 state your name. Kevin Campbell for Debtor, Mr. Szwajkos
16 for the Debtor's representative, Mr. David Lender, Mr. David
17 Cohen and Mr. Michael Weaver for GoodRx. Also, Kevin
18 McCarrell and Ellie Barragry. I believe they're with Prime.
19 Keith Poston from the United States Trustee's Office. First
20 of all, can anyone not hear me okay? All right. I assume
21 everybody can hear, and anyone whose name I have not called
22 who is on the line? All right.
23       The Court is now ready to read into the record the
24 ruling. This matter is before the Court on the Motion to
25 Dismiss the case filed by the Debtor, Famulus Health, LLC,

1 breach at United Healthcare. Mr. Szwajkos testified that
2 the data breach required them to shut down operations for a
3 couple of months. In the months following this brief shut
4 down and the entry of the arbitration award, Debtor has
5 operated its business as usual, as directed by its counsel,
6 and has continued to use both the Echo and Fast technologies
7 and offer those technologies to new customers. Mr. Szwajkos
8 testified the bankruptcy case was filed for two purposes,
9 (1) to address debts resulting from the shutdown, and (2) to
10 attempt to reach a resolution with GoodRx regarding the
11 arbitration award through a Chapter 11 reorganization.
12 After the filings of the Stay Relief Motion, Mr.
13 Szwajkos stated that it became apparent that GoodRx was not
14 willing to work out a resolution in the bankruptcy case and
15 would not agree to a plan of reorganization. Mr. Szwajkos
16 further explained that Debtor's income is derived from two
17 primary business contracts, the first with Prime,
18 representing approximately 65 percent of its business, and
19 the second with CVS, representing approximately 35 percent
20 of its business. He further testified that the business
21 with CVS launched in December of 2023 and is growing
22 rapidly. CVS is playing a pivotal role in Debtor's going
23 forward strategy. He further stated that the CVS technology
24 is unrelated to the Fast technology used by Prime.
25 According to Mr. Szwajkos, even without the Prime contract,

1 Debtor is still a healthy and successful technology company
2 moving forward with its CVS contract.
3 If the case were dismissed, Mr. Szwajkos testified
4 that Debtor has sufficient funds in its operating account
5 and from operational income using both technologies to pay
6 all its creditors except the contingent debt of GoodRx in
7 full, outside of bankruptcy within 90 days, or at least by
8 the end of the year. GoodRx's claim currently remains
9 contingent and will not become liquidated until the District
10 Court affirms the arbitration award. It is not entirely
11 clear to the Court whether there is a further appellate
12 process the Debtor would be entitled to if the District
13 Court were to affirm the arbitration award. Regardless, if
14 the case was converted to a Chapter 7, Mr. Szwajkos stated
15 that Debtor would be required to shut down all operations
16 which would lead to the termination of even the revenue
17 generating CVS contract. Mr. Szwajkos believes that there
18 would be no value to Debtor's technology if the case was
19 converted, and further, that consumers would be adversely
20 affected. No other entity could step in and operate that
21 technology, as he testified. In addition, there would be a
22 security risk for patient healthcare information currently
23 under Debtor's control and the Chapter 7 Trustee would have
24 to take measures to protect that information.
25 Debtor seeks voluntary dismissal of its case

1 pursuant to Section 1112 of the Bankruptcy Code on the
2 grounds that it will not be able to formulate a confirmable
3 plan. Debtor argues that continuing with the Chapter 11
4 process is not in its best interests or in the best
5 interests of the Creditors. Debtor believes that dismissing
6 the case and allowing it to resume business operations as
7 the existed pre-petition is the best interest of the estate
8 and all its creditors. Two of Debtor's Unsecured Creditors,
9 as I stated, have indicated their support for dismissal and
10 its customer, Prime, also filed a response in support of
11 dismissal.
12 GoodRx opposes dismissal and argues in favor of
13 converting the case to Chapter 7. GoodRx argues that the
14 Court should continue the preference of creditors,
15 especially its preference, excuse me, given that it is the
16 largest creditor in the case. GoodRx contends that this
17 case was filed for the sole purpose of frustrating the
18 efforts of the District Court to confirm the arbitration
19 award so that Debtor could continue to use its confidential
20 information. It asserts that Debtor has engaged and
21 continues to engage in knowing misconduct. By continuing to
22 operate using its confidential information, GoodRx argues
23 that Debtor continues to violate the injunction and incur
24 post-petition damages. Thus, GoodRx posits that conversion
25 is appropriate because (1) Debtor is deeply insolvent and

1 has no going concern operations, no assets and material
2 value and no prospect of financial rehabilitation, (2)
3 Debtor's only material income stream is derived exclusively
4 from misusing GoodRx's confidential information, and (3)
5 this case needs a trustee to pursue a state claims and
6 causes of action and distribute any remaining cash and
7 proceeds to creditor, including possible avoidable transfers
8 of approximately $2 million made within the preference
9 periods. It further argues that conversion is appropriate
10 to ensure that the Debtor isn't able to sidestep the
11 absolute priority rule by distributing preferential payments
12 to a select group of preferred creditors outside of Chapter
13 11. GoodRx claims it would be prejudiced by dismissal of
14 the case because no independent body would be monitoring
15 Debtor's activities and Debtor would likely continue to
16 violate the injunction and incur more claims against it.
17 Finally, it argues that conversion will maximize
18 recoveries for creditors by allowing the Chapter 7 Trustee
19 to liquidate the assets and make distributions to creditors
20 in an efficient manner. In its reply, Debtor states that it
21 has two main sources of income used to fund its operation,
22 Prime and CVS. Debtor asserts that it would be able to
23 continue to operate with just the proceeds from its contract
24 with CVS, even if the injunction was confirmed and would be
25 able to pay its creditors, in full, from current operations

Page 18

1 evidence that some creditors in this case receive
2 preferential payments. If the case was converted, the
3 Chapter 7 Trustee could pursue those preferential transfers
4 and proceed -- excuse me, and proceeds from any of these
5 actions to the extent they prove successful, would be
6 distributed pro rata, with GoodRx as the largest Unsecured
7 Creditor, receiving the highest percentage of the amounts
8 recovered. According to Debtor's Statement of Financial
9 Affairs, there were transfers of approximately $2 million
10 made within the preference periods that could potentially be
11 avoided. However, the Court notes that some of those
12 transfers, $693,236.00 to be exact, according to the
13 Statement of Financial Affairs, were made to CloudHesive
14 within the 90 days prior to the bankruptcy case.
15 CloudHesive is a creditor listed on Debtor's Schedule F, and
16 therefore, any recovery against it in this case may be
17 subject to claims for setoff.
18      Moreover, as the Court decided in the In Re Ashley
19 Oaks Development Corp. case at 558 B.R. 280, Bankruptcy
20 District of South Carolina (2011), the costs associated with
21 pursuing preference actions and collectability must also be
22 considered. The Chapter 7 Trustee wouldn't necessarily
23 incur administrative expenses to pursue this action, which
24 would, in itself, decrease the funds available for
25 distribution for creditors. The downside, however, is that

Page 19

1 upon conversion, Debtor would be required to cease
2 operations, and it is unlikely that a Chapter 7 Trustee
3 would opt to seek relief to continue operations for a short
4 period of time while liquidating. Such cessation of
5 operations would benefit GoodRx because Debtor would no
6 longer be using the disputed technology, and the Chapter 7
7 Trustee would proceed to liquidate Debtor's assets.
8 However, upon conversion, there may be additional claims
9 arising from the cessations of Debtor's business operations,
10 including potential breach of contract claims by Prime and
11 other executory contract holders.
12      Moreover, at this juncture, the Court does not
13 know how the District Court will rule. While acknowledging
14 that the bar to vacate or modify an arbitration award is one
15 of the highest hurdles to surpass, the Court cautiously
16 notes that to convert the case would be tantamount to
17 shutting down the entire company and the evidence indicates
18 that all technology software assets would, in essence,
19 become worthless. The testimony indicated that there would
20 not even be a market for the technology use for the CVS
21 contract, which does not appear to be in violation of the
22 arbitrator's injunction if the case were to cease its
23 operations because no other entity, but the Debtor could
24 step in and operate that technology.
25      If the case were dismissed, on the other hand,

Page 20

1 Debtor asserts that all creditors, except possibly GoodRx,
2 would be paid in full through ongoing operations. The
3 testimony showed that Debtor has funds available from its
4 operation to pay the remaining creditors other than GoodRx.
5 Nevertheless, GoodRx would still have options available to
6 pursue repayment of its claim once determined by the
7 District Court. GoodRx could pursue repayment outside of
8 bankruptcy through the normal mechanisms available to
9 judgment lien creditors. GoodRx and Debtor could reach an
10 agreement regarding the repayment plan from the ongoing
11 revenue stream from the technology now subject to a possible
12 injunction -- or excuse me, to the injunction that is to be
13 affirmed or vacated. While dismissal would appear to not be
14 as beneficial to GoodRx as conversion would be, it is
15 important to note that GoodRx's claim, as stated, remains
16 contingent at this time and all other creditors would
17 clearly benefit from the dismissal. Accordingly, this
18 factor weighs in favor of dismissal.
19      The second factor is whether there would be a loss
20 of rights granted in the case if it were dismissed rather
21 than converted. If the case was dismissed, no independent
22 body would be regularly monitoring Debtor's activities and
23 Debtor would continue to, possibly, violate the injunction
24 currently in place through its operation until the District
25 Court confirms the arbitration award, unless the arbitration

Page 21

1 award were vacated. GoodRx would have to pursue further
2 litigation to enforce its injunction, and it is unclear how
3 or when GoodRx would receive any recovery. Nevertheless,
4 GoodRx's rights under the arbitration award would be
5 preserved unless the District Court vacated the arbitration
6 award. If the District Court were to modify or vacate the
7 arbitration award, then Debtor's business would continue as
8 usual. If the District Court were, on the other hand,
9 affirm the arbitration award, GoodRx would have options
10 available to it, under state law, to pursue recovery of any
11 final judgment determined by the District Court, federal or
12 state law, I should add, including seeking emergency relief
13 to ensure that the injunction is complied with or possibly
14 even the appointment of a receiver or an independent party
15 or may even seek to put the Debtor into an involuntary
16 Chapter 7 case if the light hurdles were met.
17      If the Court dismisses a case and the District
18 Court subsequently affirms the arbitration, then GoodRx's
19 claim for damages would have continued to increase as post-
20 petition damages would have accrued and that claim could
21 possibly dwarf any remaining creditors' claims. However,
22 Debtor would have the benefit of its continued revenue
23 stream from the technology which does not appear to be in
24 violation of the injunction, including the CVS contract
25 which would ultimately be used to pay creditors and benefit

6 (Pages 18 - 21)